MICHAEL A. JACOBS (CA SBN 111664)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
mjacobs@mofo.com

BENJAMIN J. FOX (CA SBN 193374)
SOO J. PARK (CA SBN 300988)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
bfox@mofo.com; spark@mofo.com

Attorneys for Plaintiff,
QUIBI HOLDINGS, LLC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUIBI HOLDINGS, LLC. <br><br>               Plaintiff, <br><br>     v. <br><br> INTERLUDE US, INC. d/b/a EKO, <br><br>            Defendant. | Case No. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT OF (1) NON-INFRINGEMENT OF U.S. PATENT NO. 10,460,765; AND (2) NO MISAPPROPRIATION OF TRADE SECRETS** <br><br> **DEMAND FOR JURY TRIAL** |

## **PRELIMINARY STATEMENT**

1.      Plaintiff Quibi Holdings, LLC ("Quibi") has developed a new digital platform for delivering premium entertainment content to consumers — using innovative technology that for the first time makes video beautiful on your phone. Quibi's streaming service features top talent and extraordinary storytelling, designed for the small screen and delivered in episodes of 10 minutes or less.

2.      Set to launch on April 6, 2020, Quibi's mobile app is the product of many months of tireless work by Quibi's talented team of engineers, who designed, engineered, tested, and refined the app.  Quibi demonstrated key features of its app, including its new Turnstyle technology, in a keynote address at the Consumer Electronics Show ("CES") on January 8, 2020.  Unfortunately, with the advertised launch of a high-profile new service, Quibi has already been targeted by a company looking to make a name for itself and to capitalize on Quibi's early acclaim by making demonstrably false claims of intellectual property infringement.

3.      Defendant Interlude US, Inc., d/b/a Eko ("Eko") is a company that promotes interactive video.  After seeing Quibi's keynote address at CES, Eko embarked on a campaign of threats and harassment to coerce money or a licensing deal from Quibi.  Eko's activities include wrongfully (1) accusing Quibi of infringing an Eko patent, U.S. Patent No. 10,460,765 ("the '765 patent"), and of misappropriating trade secrets; (2) submitting a Notice of Complaint to the Apple App Store in an attempt to derail the scheduled launch of Quibi's app; and (3) pitching to the *Wall Street Journal* and at least one other news outlet the false narrative that Quibi infringes the '765 patent and has misappropriated Eko's trade secrets.

4.      As a result, an actual case and controversy exists between Quibi and Eko, requiring Quibi to seek a declaratory judgment addressing the parties' rights and obligations, and to enjoin Eko from taking any further steps to improperly tarnish Quibi's brand or to interfere with Quibi's highly anticipated launch.

## NATURE OF THE ACTION

5.      This is an action for declaratory judgment of non-infringement of all claims of U.S. Patent No. 10,460,765 under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1, et seq., and for a declaratory judgment of no misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839, and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.1.

## PARTIES

6.      Plaintiff Quibi is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 6555 Barton Avenue, Los Angeles, California 90038.  Quibi is the creator and owner of its Turnstyle technology, which is incorporated in its app, available for pre-order at the Apple App Store and Google Play store.

7.      Defendant Eko is a corporation formed under the laws of Delaware. Eko promotes itself as selling interactive video content, where users select the plot and endings of videos, and an associated platform for the delivery and viewing of such content.  Eko's principal place of business in the United States is 235 Park Avenue South, New York, New York 10003.  Eko or its affiliate maintains its corporate headquarters at HaBarzel St 21, Tel Aviv, Yafo, Israel.

8.      Eko claims to be the assignee and owner of the '765 patent.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 because the claims in this Complaint here are based on Quibi's non-infringement of the '765 patent and lack of trade secret misappropriation under the DTSA.

10.      The Court has personal jurisdiction over Eko by virtue of its contacts with this District, which include at least (a) conducting business meetings in the District, including an informational meeting with Quibi, (b) sending an

3

infringement demand letter to Quibi, a resident of this District, (c) causing a Notice of Complaint alleging patent infringement and misappropriation of trade secrets to be sent to Quibi through the Apple App Store, and (d) promoting, selling, and offering to sell content available on its digital platform to residents in this District.

11.    Venue in this District is proper under 28 U.S.C. §§ 1391(b) and 1391(c).  Eko is subject to suit in this District by virtue of its commercial activities in this District, and based on its specific contacts with Quibi that give rise to the claims alleged in this complaint.  Venue in this District also is proper because a substantial part of the events giving rise to the claims in this action occurred in this District.  Quibi has its principal place of business in this District, its development activities took place here, and Quibi sells and offers for sale the service targeted by Eko from Quibi's corporate headquarters and place of business in Los Angeles.

## THE PATENT-IN-SUIT

12.    The '765 patent, entitled "Systems and Methods for Adaptive and Responsive Video," states on its face that it issued on October 29, 2019.  A true and correct copy of the '765 patent is attached as Exhibit A.

## STATEMENT OF FACTS

### A.    BACKGROUND RE: QUIBI'S DEVELOPMENT

13.    Founded in 2018 by Jeffrey Katzenberg, Quibi was created to deliver exclusive short-form premium video content to subscribers on a single-purpose mobile platform.  Quibi has engaged with top talent and directors to develop content to be launched through the Quibi app.

14.    Early in Quibi's development, Quibi's team of product designers and engineers knew that it was important to enhance and optimize the customer-viewing experience regardless of whether the phone was being held in "portrait" or "landscape" mode, and that an opportunity existed to create new technology that delivered a more elegant means of streaming video content that seamlessly adapted to those changes in orientation.

15.     With that task in mind, beginning in September 2018, Quibi undertook development of an app feature known as Turnstyle for determining the orientation of a user's phone and seamlessly switching content and displaying it based on orientation.  This is one of the features Quibi displayed at CES, and the feature that Eko's letters and false statements to the press now target.  As explained in the following sections, Eko's allegations are entirely without merit.

**B.     QUIBI AND ITS FOUNDER'S LIMITED CONTACTS WITH EKO**

16.     In late March 2017, Quibi's founder, Mr. Katzenberg, held an informational meeting with Eko's CEO, Yoni Bloch.  The purpose of the meeting was for Eko to pitch Mr. Katzenberg for an investment in Eko, which by then had a publicly available digital platform and content that was being actively marketed by Eko.[1]  The meeting was not conducted under a non-disclosure agreement or any other expectation of confidentiality.  No confidential information was requested or provided to Mr. Katzenberg.

17.     While Mr. Katzenberg barely remembers the meeting, an email sent on March 23, 2017, by Mr. Bloch to Mr. Katzenberg reflects that Eko's focus was in pitching its choice-driven, interactive entertainment model, as discussed in an article published in *The New Yorker* that Mr. Bloch forwarded via a link in his email. Mr. Katzenberg ultimately thanked Mr. Bloch for his visit and decided not to invest.

18.     In July 2018, Mr. Katzenberg formed Quibi based on an idea he had generated several years earlier for a "quick bites" entertainment service.  Quibi developed its service and technology during 2018 and 2019 entirely independently — without any input, reference to, or materials or information from Eko.

19.     In February 2019, well after development of Quibi's app was underway, two Quibi employees held a breakfast meeting with Eko at a Beverly

---

[1] As noted below, by that point, the U.S. Patent and Trademark office had published the application for the Eko patent at issue in this lawsuit, mooting any claim of confidentiality in that application's material as a matter of law.

1   Hills restaurant.  The purpose of the meeting was to get reacquainted and for Eko to

2   pitch unscripted video content to Quibi.  The meeting was not conducted under a

3   NDA or other expectation of confidentiality, and no proprietary information or trade

4   secrets were exchanged.  The participants indicated that they would keep in touch.

5        20.     On March 28, 2019, two Quibi employees visited Eko's offices in New

6   York and demonstrated features of Quibi's platform.  Again, no nondisclosure

7   agreement was in place, and no proprietary information or trade secrets were

8   exchanged.  Following the New York meeting, on April 1, 2019, an Eko employee

9   emailed Quibi, "Loved your demo, and excited to see where you guys are headed."

10       21.     Eko's recent demand letter to Quibi alleges that certain employees of

11  Quibi who previously worked at Snap obtained unspecified "trade secrets" and

12  "source code" for Eko's service while working at Snap.  (Ex. B.)  These allegations

13  are untrue and implausible on their face:  The employees referenced by Eko are not

14  engineers or computer programmers, do not read source code, and would have had

15  no reason to request or obtain Eko code.  In any event, no Quibi employee brought

16  or used any Eko trade secrets, computer code, or proprietary information to Quibi.

17       **C.     QUIBI'S PUBLIC UNVEILING OF TURNSTYLE**

18       22.     As stated above, Quibi's team of engineers designed, developed,

19  tested, and refined Quibi's app over many months starting in September 2018.  On

20  March 8, 2019, Quibi applied for a patent for various aspects of its technology,

21  which has issued as U.S. Patent No. 10,554,926 ("Quibi's '926 patent").

22       23.     Mr. Katzenberg and his team demonstrated key features of Quibi's app

23  to the world during the keynote address at CES on January 8, 2020.  As the

24  presentation showed, Quibi's app presents an elegant delivery of content that is

25  responsive to changes in the orientation of a user's phone.  The images excerpted

26  below from the CES keynote address show streaming content that changes based on

27  a change in the orientation of a user's phone:

28

 

### D.    EKO'S MERITLESS ACCUSATIONS OF INFRINGEMENT

24.    Two weeks after CES, on January 28, 2020, Eko's attorneys sent a demand letter to Quibi, asserting that Quibi's Turnstyle feature employs the technology claimed and disclosed in the '765 patent.  The letter demanded that "Quibi immediately stop the use of its Turnstyle technology . . . ." A copy of Eko's January 28 letter is attached as <u>Exhibit B</u>.

25.    On February 10, 2020, Quibi responded to the January 28 letter, explaining that Quibi's Turnstyle feature does not use any invention claimed in the '765 patent, and that Quibi's technology was developed independently and not using any Eko trade secret.  A copy of Quibi's February 10 letter is attached as <u>Exhibit C</u>.

26.    Also in early February 2020, Eko contacted a technology reporter for Recode.net and reiterated the false allegations that Quibi's Turnstyle feature infringes Eko's '765 patent and was created using misappropriated trade secrets.

27.    On or about March 2, 2020, Eko sent a notice to Apple Inc. alleging that Quibi's app infringes Eko's '765 patent and was created using misappropriated trade secrets.  A copy of the Notice of Complaint transmitted to Quibi by the Apple App Store is attached as <u>Exhibit D</u>.

1      28.    The following day, Quibi responded to the Apple App Store

2  complaint, explaining that Quibi's app does not infringe the '765 patent and that the

3  app was not developed using any Eko trade secrets.  A copy of Quibi's response to

4  the App Store complaint is attached as <u>Exhibit E</u>.

5      29.    Recently, Eko has repeated its allegations of infringement and

6  misappropriation by Quibi to a reporter and editor of the *Wall Street Journal*.

7  Eko's statements reiterated its frivolous allegations that Quibi infringes the

8  '765 patent and had misappropriated Eko's trade secrets.

9      30.    By virtue of these acts, an actual and justiciable controversy exists

10  between the parties concerning Quibi's liability for alleged infringement of the

11  '765 patent and misappropriation of trade secrets.  Eko has also created a

12  reasonable apprehension of suit against Quibi for alleged infringement of the

13  '765 patent and misappropriation of trade secrets that could wrongfully impact

14  Quibi's ability to make, use, sell, or offer to sell Quibi's products.  Quibi seeks a

15  declaratory judgment that its Turnstyle feature does not infringe the '765 patent and

16  that Quibi has not misappropriated any Eko trade secrets.

17                           **<u>FIRST CLAIM FOR RELIEF</u>**

18           **(Declaratory Judgment of Non-Infringement of the '765 Patent)**

19      31.    Quibi incorporates the allegations in paragraphs 1 through 30 above as

20  if set forth fully herein.

21      32.    The scope of a patent is determined by its claims.  For a product to

22  infringe a patent, every limitation of a patent's claim must be met.  The claims of

23  the '765 patent and the patent's path through the U.S. Patent Office make clear that

24  Eko has obtained a narrow patent that Quibi does not infringe.  Among many

25  reasons, the '765 patent's claims require transitioning between video presentations

26  in response to determining whether a window of a media player has been resized

27  and whether the resized window is within particular height and width ranges —

28  which Quibi does not do.

33.    Claim 1 of the '765 patent recites in part:

receiving video from a first video presentation;

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation;

. . .

providing a mapping of video presentations to media player window height ranges and media player window width ranges; and

during playback of the video from the first video presentation:

determining that a media player window in which the video is playing has been resized to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width;

determining that the second height is included in a particular one of the media player window height ranges;

determining that the second width is included in a particular one of the media player window width ranges;

evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range; and

in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

34.    The patent application that became the '765 patent initially began without these limitations.  Eko sought broad claims that would cover transitioning videos in response to changing the orientation of a smartphone, such as shown in FIG. 2 of the '765 patent (illustrating a mobile device that is rotated).

35.    But Eko's broad claims were repeatedly rejected by the U.S. Patent Office.  Eko then changed course and focused on transitioning video presentations

9

in response to resizable media player windows.  This is a different embodiment from FIG. 2 of the '765 patent, as the patent makes clear:  "[R]ather than physically rotating or repositioning the user device, the user changes the window size or state (e.g., minimized, maximized, thumbnailed) of the media player **300** using an input device (e.g., mouse, keyboard, touchscreen, etc.)."  (Col. 5, lines 50-54.)

36.     It is clear from the '765 patent and its path through the U.S. Patent Office that the '765 patent's claims are inapplicable to Quibi's app and its Turnstyle functionality.  For example, Quibi's app does not determine whether a media player window has been resized from first dimensions to second, different dimensions, dimensions; evaluate a mapping to determine whether the second, different dimensions are included within particular height and width ranges; and transition between two different video presentations in response to evaluating the mapping, as required by the claims of the '765 patent.

37.     The Quibi app receives in a single stream a first video asset in portrait mode and a second video asset in landscape mode, and selectively presents one of those two video assets based on the orientation of the user's device.  Quibi's app does not provide a mapping of video presentations to media player window height/width ranges, such as required by the '765 patent's claims.

38.     These features of Turnstyle were displayed at CES and should have been plain to Eko.  Quibi's keynote presentation included a video demonstration in which a user was shown rotating a mobile device, and the Quibi app was shown transitioning from full-screen portrait-mode video to full-screen landscape-mode video in response to the rotating of the device — not in response to any resizing of a media player window.

39.     In addition to the video shown during the keynote address, a demo version of Quibi's app was made available to CES attendees.  Users of the demo version could personally rotate a mobile device running Quibi's app and observe that the app transitions from full-screen portrait-mode video to full-screen

landscape-mode video in response to the rotating, not in response to any "resizing" of a media player window.  Because Eko claims to have attended CES and seen Quibi's presentation of features of Quibi's app, there is no good-faith basis for Eko to allege that Quibi infringes the claims of the '765 patent.

40.     Quibi's app also does not infringe other limitations of the '765 patent claims stemming from determining whether a media player window has been resized.

41.     For example, Quibi's app does not perform "during playback of the video from the first video presentation", "determining that the second height [or second width] is included in a particular one of the media player window height [or width] ranges", or an equivalent thereto.  The Quibi app features no such determination.

42.     Quibi's app also does not perform "during playback of the video from the first video presentation", "evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range", or an equivalent thereto.  No such evaluating occurs in Quibi's.  Instead, the Quibi app queries the orientation of a mobile device to determine which of two video assets to present.

43.     Quibi's app also does not perform "during playback of the video from the first video presentation", "in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change", or an equivalent thereto.  In the Quibi app, a single stream is received; and, as was obvious from Quibi's CES demonstration, transitioning from presenting a first video asset to presenting a second video asset occurs in response to a *change in orientation* of a mobile device.  It does not occur in response to any "evaluating the mapping".  No such evaluating ever occurs.

44.     For at least the reasons above, Quibi has not infringed and does not infringe any claim of the '765 patent.

45.     An actual and justiciable controversy has arisen and exists between Quibi and Eko.  A judicial determination and declaration that Quibi has not infringed and does not infringe any claim of the '765 patent is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '765 patent.

**SECOND CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS)**

46.     Quibi incorporates the allegations in paragraphs 1 through 45 above, as if set forth fully herein.

47.     The DTSA defines a trade secret as "financial, business, scientific, technical, economic, or engineering information" that "(A) the owner thereof has taken reasonable measures to keep . . . secret; and (B) . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).

48.     Similarly, the CUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

49.     Under both the DTSA and the CUTSA, "misappropriation" is (1) the "[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;" or (2) the "[d]isclosure or use of a trade secret of another without express or implied consent."  18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

50.   Contrary to Eko's allegations, Quibi has not used or misappropriated any Eko trade secret.  Quibi's app was developed independently by Quibi's engineers without reference to or use of any trade secret of Eko.  Quibi's app is the product of many months of effort in designing, engineering, testing and refining the app.  In contrast to the baseless allegations in Eko's January 28 letter, the development of Quibi's app was well underway at the time Quibi's employees agreed to an informational meeting with Eko.

51.   Also contrary to the unsubstantiated allegations in the January 28 letter, no former employee of Snap brought documents or confidential information about Eko to Quibi.  And no Quibi employee or executive received trade secrets from Eko or other proprietary information that would support a claim for misappropriation of trade secrets under the DSTA or CUTSA.

52.   The DTSA and CUTSA require Eko to identify with specificity the alleged trade secrets that it claims Quibi has misappropriated.  Eko has not done so.  Instead, Eko has alleged generally that Quibi employees received unspecified "proprietary information" from Eko while at Quibi.  Eko further alleges that, years before joining Quibi, two Quibi employees received unidentified "source code" from Eko, an allegation that is implausible on its face because, among other reasons, the identified employees are not engineers or computer programmers, do not have technical backgrounds, and do not read code.

53.   The '765 patent was published on March 2, 2017, at which time the alleged invention claimed in the patent and its associated background disclosures became publicly known (to the extent they were not already publicly known) and therefore could not be a trade secret.  The Eko media player and promotional materials about it also were publicly available, and not a trade secret.  Nothing in Eko's letter demands or statements to the media suggests that any of the information that Eko claims was "disclosed" to Quibi was a trade secret.

54.     An actual and justiciable controversy has arisen and exists between Quibi and Eko concerning Eko's allegations of trade secret misappropriation. Accordingly, a judicial determination and declaration that Plaintiff has not misappropriated any Eko trade secret is necessary and appropriate at this time.

## PRAYER FOR RELIEF

WHEREFORE, Quibi requests that the Court enter judgment in Quibi's favor and against Eko as follows:

A.     Declaring that Quibi has not and does not infringe, directly or indirectly, literally or by equivalents, any claim of the '765 patent;

B.     Declaring that Quibi's Turnstyle feature does not infringe any claim of the '765 patent;

C.     Enjoining Eko, its subsidiaries, affiliates, parent, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from asserting any claim of the '765 patent against Quibi;

D.     Declaring that Quibi has not misappropriated any trade secret from Eko;

E.     Enjoining Eko, its subsidiaries, affiliates, parent, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from asserting any claim for misappropriation of trade secrets under the DTSA, CUTSA, or other state law governing the disclosure or use of trade secrets;

F.     Ordering Eko to withdraw its Notice of Complaint of infringement to the Apple App Store dated March 2, 2020;

G.     Denying any request by Eko for injunctive relief;

H.     Awarding Quibi its attorney's fees and costs incurred in responding to Eko's bad faith allegations of trade secret misappropriation, pursuant

14

to 18 U.S.C. § 1836(b)(3)(D) and Cal. Civ. Code § 3426.4.

I.    Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Quibi its costs and reasonable attorney fees; and

J.    Awarding Quibi any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Quibi hereby demands trial by jury on all issues raised by the Complaint.

Dated:    March 9, 2020        MORRISON & FOERSTER LLP

By:   /s/ Michael A. Jacobs
Michael A. Jacobs

Attorneys for Plaintiff
QUIBI HOLDINGS, LLC

1427777