MICHAEL A. JACOBS (CA SBN 111664)
THOMAS J. PARDINI (CA SBN 313401)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
mjacobs@mofo.com; tpardini@mofo.com

BENJAMIN J. FOX (CA SBN 193374)
RYAN J. MALLOY (CA SBN 253512)
SOO J. PARK (CA SBN 300988)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
bfox@mofo.com; rmalloy@mofo.com;
spark@mofo.com

Attorneys for Defendants
QUIBI HOLDINGS, LLC, WNDRCO HOLDINGS, LLC, QBI HOLDINGS, LLC, NEW QBI, LLC, JEFFREY KATZENBERG, CLIFTON L. SMITH, JR., JOSEPH BURFITT, ROBERT A. POST, JR., ERIC BUEHL, and BLAKE BARNES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| QUIBI HOLDINGS, LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>INTERLUDE US, INC. d/b/a EKO;<br>and JBF INTERLUDE 2009 LTD. –<br>ISRAEL,<br><br>          Defendants, | Case No.:  2:20-CV-02250-CAS-SK<br><br>**JOINT STIPULATION REGARDING QUIBI'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**[Discovery Document: Referred to Magistrate Judge Steve Kim]**<br><br>Judge:    Hon. Steve Kim<br>Date:     March 10, 2021<br>Time:    10:00 AM<br>Crtrm:   540 |

| | |
|---|---|
| JBF INTERLUDE 2009 LTD – ISRAEL, and INTERLUDE U.S., INC., d/b/a eko, | Case No.: 2:20-CV-02299-CAS-SK (CONSOLIDATED) |
| Plaintiffs, | Fact Discovery Cutoff: Sept. 14, 2021 Expert Discovery Cutoff:  Jan. 11, 2022 Pretrial Conference:  March 28, 2022 Trial:  April 19, 2022 |
| v. | |
| QUIBI HOLDINGS, LLC, WNDRCO HOLDINGS, LLC, QBI HOLDINGS, LLC, NEW QBI, LLC, CLIFTON J. SMITH, JOSEPH BURFITT, ROBERT A. POST, JR., BLAKE BARNES, ERIC BUEHL, AND JEFFREY KATZENBERG, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   QUIBI'S INTRODUCTORY STATEMENT ................................................. 1

   A.   Summary of Arguments ................................................. 1

   B.   Quibi's Repeated Efforts to Obtain Discovery ................................. 2

   C.   Quibi's Requested Relief ................................................. 3

II.  EKO'S INTRODUCTORY STATEMENT ................................................. 4

III. ISSUES IN DISPUTE ................................................. 6

   A.   Dicovery Related to Eko's Financial Backer, Elliot Mangement,
       Including Their Discussions of the Merits of Eko's Claims ................. 6

      1.   Quibi's Request for Production No. 14 ................................... 6

         a.   Quibi's Arguments Regarding RFP No. 14 ..................... 7

         b.   Eko's Arguments Regarding RFP No. 14 ....................... 9

      2.   Quibi's Request for Production No. 15 ................................. 11

         a.   Quibi's Arguments Regarding RFP No. 15 ................... 13

         b.   Eko's Arguments Regarding RFP No. 15 ..................... 15

      3.   Quibi's Request for Production No. 16 ................................. 17

         a.   Quibi's Arguments Regarding RFP No. 16 ................... 18

         b.   Eko's Arguments Regarding RFP No. 16 ..................... 19

   B.   Discovery Concerning Other Non-Privileged Evaluations of
       Eko's Claims and the Technology at Issue ................................. 20

      1.   Quibi's Request For Production No. 104 ............................... 20

         a.   Quibi's Arguments Regarding RFP No. 104 ................. 21

         b.   Eko's Arguments Regarding RFP No. 104 ................... 21

   C.   Discovery as to Other Products That Allegedly Practice Eko's
       Invention ................................................. 23

      1.   Quibi's Request For Production No. 124 ............................... 23

         a.   Quibi's Arguments Regarding RFP No. 124 ................. 24

         b.   Eko's Arguments Regarding RFP No. 124 ................... 25

## I.      QUIBI'S INTRODUCTORY STATEMENT

Quibi seeks discovery that Eko has withheld related to the merits and value of its trade secret misappropriation and patent infringement claims.  Quibi has sought relevant documents since August 2020, and the parties have held numerous meet and confers.  The parties were able to resolve many issues, but are at an impasse as to three "buckets" of requests for production of documents.  Quibi has exhausted all other options and now seeks a Court order to enforce Eko's discovery obligations.

### A.      Summary of Arguments

Eko refuses to provide documents and communications with its financer and backer, Elliott Management, responsive to Requests for Production Nos. 14-16. These documents, including Eko's non-privileged communications concerning the merits of Eko's claims, are relevant to the value of the lawsuit and Eko's underlying technology as well as the extent to which Elliott is controlling the litigation, which in turn will be relevant to Quibi's attorney's fee and cost claim.  Before the hearing on Eko's first motion for preliminary injunction, Eko pitched to the *Wall Street Journal* and *Deadline* stories that described Elliot Management's equity stake in Eko and its front-seat role in driving Eko's unusual litgation strategies.  (Fox Decl., Exs. A and B.)  Elliott proclaimed its familiarity with the merits, with the media reporting that Elliott's "agreement with Eko *reflects its belief in Eko's legal case and in the company's technology.*"  (Ex. A at 7.)  The numerous press stories could only have been placed by Eko or Elliott—yet both have steadfastly refused to provide any discovery as to the communications between them concerning the merits of the litigation or Eko and Elliott's relationship.[1]

Eko and Elliott's use of the media to boast about Elliott's involvement and to

---

[1] Elliott has pending before this Court a motion to quash subpoenas to Elliott, its principal, Paul Singer, and Terry Kassel, seeking substantially similar information to that at issue here.  (Case No. 2:21-mc-00016 CAS(SKx).)

seek to pressure and embarrass Quibi has been extraordinary.  For example, a reporter contacted Quibi CEO Meg Whitman during the middle of her deposition for comment on a story which declared that Eko's lawsuit was "being financed by Elliott Management, whose founder and president, PAUL SINGER, is one of the most influential powerbrokers in the Republican Party."  (Ex. C.)  The article asserted that the lawsuit, if it "isn't settled in the coming months," could "imperil" a potential political appointment in the Biden Administration.  (*Id.*)  The date of Ms. Whitman's deposition had not been made public, yet the Politico article reported on it that same day—apparently based on Eko's belief that the deposition and Mr. Singer's involvement in the case would embarrass Ms. Whitman.

Eko's public statements about Elliott's involvement—and the threat it allegedly poses to Quibi's executives—suggest Elliott's role goes beyond a typical litigation funder.  In any event, Eko's disclosures to Elliott concerning the merits are discoverable, just like Eko's statements about the case to any other third party.

Eko also has refused to produce other categories of documents related to its investigation and analysis of Quibi's alleged infringement or Eko's practice of the asserted patents.  (Quibi's Request Nos. 104 and 124.)  These requested documents are relevant to the scope of Eko's asserted patents and Eko's decision to file the litigation.  As discussed in the following sections, no valid basis exists for Eko to hide documents that are responsive to these requests.

**B.**     **Quibi's Repeated Efforts to Obtain Discovery**

Pursuant to this Court's orders instructing increased cooperation in light of the judicial emergency caused by the pandemic (2299 Dkt. 315 and 332), Quibi made every effort to obtain this discovery before filing this motion:

a.     <u>Meet and Confer Efforts</u>.  Quibi has sought proper discovery responses from Eko since October 20, 2020.  (Ex. D.)  Eko subsequently agreed to supplement its written responses, but its November 17 supplemental responses remained deficient.  Quibi again tried to elicit proper responses and responsive

productions on December 22, 23, and 31.  (Exs. E-G.)  On January 8, Eko agreed to
amend its responses again, but did not indicate it would withdraw its objections to
requests for which it refused to produce any documents.  (Ex. H.)  Quibi sent a
letter on January 15, 2021 to address Eko's refusal to produce any documents
responsive to Quibi's Requests for Production Nos. 11, 14-16, 42, 101, 104, and
124.  (Ex. I.)  Quibi not only explained the relevance of the documents these
Requests seek, but also offered modifications to Request Nos. 14 and 15 as a
compromise.  (*Id.* at 58.)  Eko responded on January 22, 2021, but did not withdraw
its objections.  (Ex. J.)  The parties held a final meet and confer on January 26,
2021.  Parties were able to reach a compromise as to Request Nos. 11, 42, and 101,
but Eko maintained relevance and privilege objections to Request Nos. 14-16, 104,
and 124 despite Quibi's explanations.  (Ex. K.)

      b.    <u>ESI Production Discussions.</u>  Quibi proposed the following ESI search
term, specifically designed to locate documents related to Requests for Production
Nos. 14-16: "Elliott Management" OR *@elliott* OR (Elliott* w/50 (Paul* OR
Singer* OR Jon* OR Pollock* OR Terry* OR Kassel*)).  (Ex. L.)  During a meet
and confer on January 11, 2021, Eko reiterated that it would not produce any
documents responsive Request Nos. 14-16.  (Ex. M.)

      c.    <u>Third Party Discovery.</u>  Quibi sought discovery directly from Elliott
Management and its executives Paul Singer and Terry Kassel, negotiating a
subpoena return date of January 19, 2021.  (Ex. N.)  Elliott filed a motion to quash,
and that motion has been transferred from S.D.N.Y. to this district.  Quibi will
oppose Elliott's motion by February 18, 2021, pursuant to the Court's scheduling
order.

**C.**    **Quibi's Requested Relief**

      Eko's refusals to produce documents responsive to Requests Nos. 14–16,
104, and 124 are improper.  Quibi asks that the Court overrule Eko's objections to
these Requests and order Eko to produce all responsive documents within ten days.

## II.    EKO'S INTRODUCTORY STATEMENT

Quibi's Motion seeks discovery plainly not relevant to prove any claim or defense in this action.  Purportedly, the discovery may support of an anticipated fees motion.  However, Quibi provides no explanation as to why the discovery is relevant to a future fees motion to which it may be entitled to file only if it is the prevailing party.  Nor does Quibi address eko's privilege objections.  In fact, Quibi's introduction predominantly consists of bluster about third party media speculation and Quibi's beliefs about eko's motives, which merely reveals Quibi's true motives for seeking discovery regarding litigation funding – Quibi seeks only to harass eko and its litigation funder.

The only reason Quibi has advanced for the relevance of documents related to litigation funding is "Quibi's attorney's fee and cost claim."  ButQuibi has not provided any explanation as to how these documents could be relevant to a claim to attorneys' fees, nor does Quibi cite any cases that even suggest such relevance.  Indeed, Quibi has cited to not a single case in which discovery of documents related to litigation funding was allowed.  In each, discovery was denied because the court found the requested discovery either privileged or not relevant.

Quibi also purports to seek to compel eko to produce "documents related to its investigation and analysis of Quibi's alleged infringement or Eko's practice of the asserted patents."  This is false.  The Requests Quibi moves on (Request Nos. 104 and 124) relate not to Quibi's infringement or eko's practice of the asserted patents, but to possible infringement by unrelated third parties.  In fact, Quibi has served other Requests seeking the details of eko's investigation of Quibi's infringement, and, in response to those Requests, eko has agreed to produce documents providing "evidence supporting the factual bases for eko's allegations" of Quibi's infringement.  *See, e.g.*, Request Nos. 72 (documents related to eko's investigation into Quibi's misappropriation of eko's trade secret), 106 (documents related to eko's investigation into Quibi's infringement of the '765 patent), 107

1   (documents related to eko's investigation into Quibi's infringement of the '220 and

2   '066 patents), and 108 (documents related to eko's investigation into Quibi's

3   infringement of the '220 patent).  In addition, Quibi has served other Requests on

4   eko seeking information about eko's practice of the asserted patents and, again, eko

5   has agreed to provide the requested documents.  *See, e.g.*, Request No. 118

6   (documents related to whether the eko products practice eko's patents).  But eko's

7   investigation as to whether unrelated third parties are or may be infringing eko's

8   patents is work product, subject to attorney-client privilege, and not relevant to

9   claims and defenses in this action,

10        Furthermore, despite Quibi's protestations to the contrary, Quibi has not

11  engaged in repeated efforts to obtain responses to the Requests it presents in this

12  Motion.  In fact, the first mention Quibi made of any substantive issue with eko's

13  refusal to produce documents in response to these Requests was in Quibi's January

14  15, 2021 letter.  Fox Decl., Ex. J.  Prior communications were limited to Quibi's

15  unsubstantiated assertion that eko relied on general objections and its equally

16  unsubstantiated position that eko failed to comply with the Federal Rules of Civil

17  Procedure by not stating with specificity whether it was withholding any

18  documents.  *Id.*, Exs. H, I.  Eko disagrees with those positions, but, more to the

19  point, Quibi has been in possession of eko's responses and objections to the

20  Requests that are the subject of this Motion since September 8, 2020.  Yet Quibi

21  first raised an issue with eko's refusal to produce documents in response to these

22  Requests on January 15, 2021.  To the extent Quibi seeks to paint eko's

23  participation in the discovery process as less than cooperative, eko respectfully

24  disagrees.  The record of communications between the parties speaks for itself.

25        Quibi's Motion seeks to compel the production of irrelevant, privileged and

26  work product documents.  Quibi's Motion also misrepresents the scope of the

27  Requests it moves on and fails to inform the Court that eko has already agreed to

28  produce documents that are responsive to what Quibi misleadingly represents to the

Court it is seeking.  Quibi's Motion should be denied.

## III.   ISSUES IN DISPUTE

### A.   Dicovery Related to Eko's Financial Backer, Elliot Mangement, Including Their Discussions of the Merits of Eko's Claims

#### 1.   Quibi's Request for Production No. 14

**QUIBI'S REQUEST FOR PRODUCTION NO. 14:**

All documents relating to any financing Eko is receiving or considered receiving in connection with the Litigation.

**EKO'S RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Eko objects to this Request to the extent it seeks the production, identification, or disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Eko objects to this Request on the ground that it is overly broad and/or unduly burdensome because it seeks production of "all" documents relating to the subject matter of the Request. Eko objects to this Request because the term "relating to" is overbroad and not limited to documents and information relevant to, and reasonably and proportionally directed to, the claims and defenses at issue in this case. Eko objects to this Request as overly broad and unduly burdensome to the extent it is not relevant to any claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, and/or not proportional to the needs of the case. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (same); *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or

contributions from the union is not relevant to any claim or defense at issue."). Eko objects to this Request to the extent it is duplicative of other Requests.

Subject to and without waiver of the foregoing general and specific objections, eko will not produce documents in response to this Request.

**EKO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Eko further responds that it will not produce documents in response to this Request because it is disproportionate to the needs of the case and the documents requested are not relevant to any party's claims or defenses. *See*, *e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc*., No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (same); *VHT, Inc. v. Zillow Grp., Inc*., No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc*., No. C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue.").

### a.    Quibi's Arguments Regarding RFP No. 14

Eko's documents relating to any financing it is receiving in connection with the litigation are relevant to establish the value of the litigation and the technology at issue, and therefore discoverable.  District courts in the Ninth Circuit have ordered productions of such documents.  In *Impact Engine*, the court concluded that documents related to litigation funding were relevant to "(1) establish the value of the patents at issue; (2) obtain statements made by Impact Engine regarding the patents at issue; and (3) refute potential trial themes."  *Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, at *4 (S.D. Cal. Aug. 12, 2020). Similarly, in *Continental Circuits*, the court found that litigation funding agreement

7

are relevant and discoverable because it "likely contain[s] financial information related to the value of the litigation, and therefore to the value of the allegedly infringed patents." *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020).

Eko's financial arrangement with Elliott is also discoverable because Eko and Elliott have put it squarely in the public eye. Eko has made it clear in the press that Elliott Management is financing the litigation, and that in doing so, Elliott's executive Paul Singer "will be taking on Mr. Katzenberg, one of Hollywood's biggest names and fiercest competitors." (Ex. A at 7 [The Wall Street Journal].) In *Nelson*, the court ordered production of the plaintiff's fee agreements when a market competitor was funding plaintiff's litigation. *Nelson v. Millennium Labs, Inc.*, 2013 WL 11687684, at *5-6 (D. Ariz. May 17, 2013). Here, too, Quibi is entitled to discovery related to financing that Mr. Singer provided to Eko.

Eko's cited cases support Quibi's position. In *MLC*, the court found that litigation funding agreements could be discoverable in some contexts, such as "when there was a specific, articulated reason to suspect bias or conflicts of interest." *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019). In *Yousefi*, the court found that evidence of financial interest "may be relevant to determining the credibility and potential bias" of the third party's witnesses. *Yousefi v. Delta Elec. Motors, Inc.*, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015).

Quibi's Request No. 14 seeks relevant documents, and Eko's complete refusal to produce any responsive documents is improper. In the spirit of cooperation, Quibi offered to modify Request No. 14 and limit its scope to "Documents sufficient to show any financing Eko is receiving in connection with the Litigation." (Ex. I at 58.) Eko still refused. An order compelling production is warranted.

**b.     Eko's Arguments Regarding RFP No. 14**

Quibi's Requests for documents relating to litigation funding represent nothing more than harassment.  Quibi has not made a plausible argument that the documents it seeks are relevant to the issues in this case.  Furthermore, even if it could make a plausible case for relevance, Quibi has not even attempted to address eko's privilege claim.  Indeed, that Quibi's Motion to Compel is objectively baseless is obvious from simply reading the cases Quibi cites in support of its harassment campaign – in not one of those cases did the court order a party to produce the types of documents Quibi seeks here.

Quibi cites *Impact Engine* as establishing that certain documents related to litigation funding may be relevant to specific issues in the case.  What Quibi has failed to tell the court, however, is that the court ultimately denied production of all of the documents sought by defendant, finding that all of the documents were protected by the work-product privilege.  *Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 194517, at *3 (S.D. Cal. Oct. 20, 2020) (finding documents related to litigation funding protected as work product because they "were created because of the litigation they will fund").

Quibi's citation to *Continental Circuits* is similarly misplaced.  As an initial matter, the court in *Continental Circuits* found the litigation funding agreement potentially relevant as to "Plaintiff's financial resources" in order "to refute any David vs. Goliath narrative at trial," noting that there was evidence to suggest such a narrative would be in play.  *Continental Circuits*, 435 F. Supp. 3d at 1019.  Quibi has not made any argument that eko may pursue such a narrative here, nor has eko thus far pursued one.  Furthermore, the litigation funding agreement at issue in *Continental Circuits* was never produced because, as in *Impact Engine*, the court found it to be protected work product.  *Id.* at 1021.

Finally, Quibi cites to *Nelson* for the proposition that fee agreements are discoverable if a market competitor is funding the litigation.  *Nelson*, 2013 WL

11687684, at *5-6.  The court's concern was about potential bias.  *Id.*  *Nelson* has no relevance to the instant case.  First, Quibi is no longer in operation, so it cannot possibly be considered to have any competitors at all.  Second, even if Quibi could and did have competitors, it is inconceivable that Elliott Management, a fund manager, could be considered a competitor of Quibi, a video content provider.[2]

Quibi's suggestion that eko's cited cases support Quibi's position is equally without merit.  The court in *MLC* did not hold that litigation funding agreements might be discoverable "when there was a specific, articulated reason to suspect bias or conflicts of interest," as Quibi asserts, but rather acknowledged merely that *other* courts had held as much.  *MLC Intellectual Prop.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019).  In contrast, the *MLC* court found that because plaintiff had disclosed all persons with a financial interest in the case, potential jurors could be questioned about potential relationships with the funders and sources of potential bias.  *Id.*  Similarly, eko has disclosed the existence of its litigation funder and Quibi has not made any suggestion of bias that would warrant the discovery it seeks.  *See id.* ("As such, Micron's assertions of potential bias and conflicts of interest are speculative.")

Similarly, Quibi misrepresents the holding of *Yousefi*, suggesting that the court held that documents concerning litigation funding "may be relevant to determining the credibility and potential bias" of the third party's witnesses. *Yousefi*, 2015 WL 11217257, at *2.  This is a blatantly misleading representation of what the court said in *Yousefi*.  In context, the court explained that, in general, the

---

[2] Quibi appears to rely on a quote from a Wall Street Journal article as support for its suggestion that Quibi and Elliott Management are competitors.  Ex. A at 7 ("By financing the lawsuit against Quibi, Mr. Singer will be taking on Mr. Katzenberg, one of Hollywood's biggest names and fiercest competitors.")  This quote, which was not uttered by Mr. Singer or Elliott Management, but is an opinion of the article's author, even if it were reliable evidence of Elliott Management's business activities, does not suggest that Quibi and Elliott Management are market competitors.

source of plaintiff's funding was "not relevant to any claim or defense at issue." *Id.* Rather, if the union funding the lawsuit "has not merely donated funds or expertise to pursue these claims but has an expectation of payment if and only if plaintiff prevails, evidence of that financial interest may be relevant to determining the credibility and potential bias of" the union witnesses who would testify at trial. *Id.* In contrast, there are no witnesses from Elliott Management who are expected to testify at trial as no one at Elliott Management has information relevant to any party's claims or defenses. Therefore, there is no potential issue of credibility or potential bias to be explored that would justify requiring production of documents related to eko's litigation funding.

Eko provided Quibi with numerous case citations in its initial RFP responses on September 8, 2020 supporting its position that litigation funding documents are not generally discoverable. Five months later, Quibi has not been able to either articulate a plausible reason why such documents are relevant to the parties' claims or defenses, nor has it managed to locate a single case that supports its position. Instead, Quibi resorts to misrepresenting the case law, and presenting misleading quotes taken out of context, in order to harass both eko and Elliott Management by moving to compel unwarranted discovery of irrelevant and privileged material.

Eko maintains its objection that Request No. 14 seeks documents that are not relevant to any party's claim and defenses, or constitute attorney work product or privileged communications that are not waived by being shared with a third party litigation funder. *See, e.g.*, *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. EDCV 17-1388-AB, 2018 WL 8193374, at *8 (C.D. Cal. May 14, 2018). Quibi's motion should be denied.

## 2. Quibi's Request for Production No. 15

### QUIBI'S REQUEST FOR PRODUCTION NO. 15:

All documents concerning Paul Singer, Elliott Management Corporation, Elliott Associates L.P., or Elliott International Limited, concerning any investment

1 in Eko or involvement in the Litigation.

2 **EKO'S RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

3     Eko objects to this Request to the extent it seeks the production,

4 identification, or disclosure of information protected by the attorney-client

5 privilege, work-product doctrine, or any other applicable privilege or immunity.

6 Eko objects to this Request on the ground that it is overly broad and/or unduly

7 burdensome because it seeks production of "all" documents relating to the subject

8 matter of the Request. Eko objects to this Request because the term "concerning" is

9 overbroad and not limited to documents and information relevant to, and reasonably

10 and proportionally directed to, the claims and defenses at issue in this case. Eko

11 objects to this Request as overly broad and unduly burdensome to the extent it is

12 not relevant to any claim or defense of any party, not reasonably calculated to lead

13 to the discovery of admissible evidence, and/or not proportional to the needs of the

14 case. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc*., No. 14-CV-03657-SI,

15 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third

16 party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-

17 SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (same); *VHT, Inc. v.

18 Zillow Grp., Inc*., No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept.

19 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc*., No. C13-1632RSL, 2015 WL

20 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this

21 litigation through savings, insurance proceeds, a kickstarter campaign, or

22 contributions from the union is not relevant to any claim or defense at issue."). Eko

23 objects to this Request to the extent it is duplicative of other Requests.

24     Subject to and without waiver of the foregoing general and specific

25 objections, eko will not produce documents in response to this Request.

26 **EKO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION**

27 **NO. 15:**

28     Eko further responds that it will not produce documents in response to this

Request because it is disproportionate to the needs of the case and the documents requested are not relevant to any party's claims or defenses. *See*, *e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc*., No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (same); *VHT, Inc. v. Zillow Grp., Inc*., No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc*., No. C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue.").

### a.    Quibi's Arguments Regarding RFP No. 15

Eko's documents related to Elliott and Mr. Singer concerning its investment and any involvement in the litigation are highly relevant to the "value" of Eko's claims and sought-after "reasonable royalty," as well as Eko's underlying technology, and the extent to which Elliott is controlling the litigation.

Discovery related to Elliott's involvement is warranted, especially in light of Elliott's proclaimed familiarity with the claims at issue.  The Wall Street Journal reported that Elliott's "agreement with Eko reflects its belief in Eko's legal case and in the company's technology."  (Ex. A at 7.)  A few months later, DealBreaker alluded to Elliott and its executive Paul Singer's understanding of Eko's claims, specifically Mr. Singer's belief that Quibi's "Turnstyle technology that allowed the videos to work seamlessly well in either portrait or landscape . . . already belonged to [Eko], someone in which Elliott holds a stake and someone whose legal bills Elliott is paying."  (Ex. O at 112.)

Documents related to Elliott's involvement in the litigation that gave rise to its understanding of the case's merits are likely to inform the purported value of the technology that Eko claims Quibi misappropriated, and therefore is discoverable.

(*See* Quibi's Arguments Regarding RFP No. 14, *supra.*)  Other decisions support

this conclusion.  In *Fulton*, the court found that documents provided to a litigation

funder "would be relevant information that could expand on the allegations of the

Complaint, identify witnesses, and potentially be used for impeachment." *Fulton v.*

*Foley*, 2019 WL 6609298, at *4 (N.D. Ill Dec. 5, 2019).  In *Miller*, the court found

that documents provided to a litigation funder are relevant to plaintiff's trade secret

claims.  *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 730 (N.D. Ill.

2014).

These documents also are relevant to understanding the extent to which

Elliott is controlling the litigation, which in turn will be relevant to Quibi's

attorney's fee and cost claim.  Eko states that Elliott is not controlling the litigation,

but this is contrary to what is reported in the media.  Throughout this litigation, Eko

and its representatives have touted Elliott's involvement in funding the litigation

against Quibi and taking an ownership interest in Eko.  (Exs. C & P.)  Courts have

found that a litigation funder relationship is relevant to determining who the real

party-in-interest is, which affects standing.  *Uniloc USA, Inc. v. Apple, Inc.*, 2020

WL 7122617 , at *8 (N.D. Cal. Dec. 4, 2020) (holding plaintiff that defaulted on

litigation funder's loan and thus ceded rights in patent had lost standing); *Uniloc*

*USA, Inc. v. Motorola Mobility, LLC*, 2020 WL 7771219 , at *1 (D. Del. Dec. 30,

2020) (same) (*appeal filed*, No. 21-1555 (Fed. Cir. *filed* Jan, 19, 2021)).  Moreover,

Elliott's involvement and direction of the case are relevant to Quibi's anticipated

request for attorney's fees and the reasonableness of Eko continuing to pursue

claims that the Court has ruled are unlikely to succeed.

Quibi's Request No. 15 concerning Elliott's involvement in the litigation

seek relevant documents subject to discovery under Rule 34.  During the meet and

confer process, Quibi offered to modify Request No. 15 to "Documents sufficient to

show any financing of Eko by Paul Singer, Elliott Management Corporation, Elliott

Associates L.P., or Elliott International Limited, or their involvement related to the

decision-making process or control of the Litigation." (Ex. I at 58.) Eko still refused to produce any responsive documents. An order overruling Eko's objections is appropriate.

### b.    Eko's Arguments Regarding RFP No. 15

Similar to Request No. 14, this Request seeks documents that are not relevant to any party's claims or defense or that are privileged. Quibi's Motion to compel production of these documents should be denied for the same reasons explained above.

As it did in its argument regarding Request No. 14, Quibi misstates the holdings of each of the cases it cites. For example, Quibi suggests that the court in *Fulton* held that documents provided to a litigation funder are discoverable. In fact, the *Fulton* court held that almost all of the litigation funding related discovery was either not relevant or privileged. *Fulton*, 2019 WL 6609298, at *2-3 (litigation funding related documents not relevant to damages, settlement, or bias and documents provided to funder comprising attorney mental impressions privileged). The only types of documents the court ordered to be produced, to the extent they existed, were "non-opinion, fact-based materials that do not involve the mental impressions of counsel." *Id.* at *4. This is a far narrower scope of documents than what Quibi has requested.

Quibi further hypothesizes that Elliot is controlling this litigation and it needs discovery to determine the extent of that control. Quibi acknowledges that eko has informed Quibi that Elliott is not controlling the litigation, but Quibi, it seems, is not satisfied with eko's representations. Instead, Quibi would have this Court believe that eko is misrepresenting the extent of Elliott's involvement in this litigation because it found two news articles mentioning Elliott's funding of the suit; however, neither of these articles even hint that Elliott is controlling the

litigation, and certainly none contains any quotes from eko or Elliott to that effect.[3] Elliott does not have control over the litigation, as eko has repeatedly explained to Quibi.

Quibi further suggests that discovery into the litigation funder relationship is necessary in order to determine the real-party-in-interest and confirm standing to bring this suit. Quibi fails to inform the Court, however, that it has requested documents relating to ownership of the patents-in-suit in Request No. 102, and eko has agreed to produce "documents sufficient to show eko has standing to file and pursue this litigation."

Yet again, Quibi cites inapplicable case law and misstates the holdings. First, in both *Uniloc v. Apple* and *Uniloc v. Motorola*, the patent owner had taken out a loan from Fortress, using a license to the patents as a security interest. 2020 WL 7122617, at *1; 2020 WL 7771219, at *1. After the patentee defaulted, Fortress acquired the right to use and sublicense the patents, depriving the patent owner of standing. *Id.* at *8. Here, Elliott does not own the patents-in-suit and has not taken any license to the patents whether as security or otherwise. Thus, there is simply no parallel between *Uniloc* and the instant case.

Quibi provides no plausible explanation for why the documents it requests are relevant to any issue in this litigation. As noted, eko has already agreed to produce documents sufficient to establish standing to bring suit.

Eko maintains its objection that Request No. 15 seeks privileged documents that are not relevant to any party's claim and defenses. Quibi's motion should be denied.

---

[3] The Politico article notes that "[t]he legal challenge to Quibi is being financed by Elliott Management, whose founder and president, PAUL SINGER, is one of the most influential powerbrokers in the Republican Party." Ex. C at 12. The Variety article states "Elliott Management . . . has made an investment in interactive-video company Eko to fund its litigation against Quibi." Ex. P at 113.

### 3.   Quibi's Request for Production No. 16

**QUIBI'S REQUEST FOR PRODUCTION NO. 16**

Documents sufficient to show any financial interest by any person or entity in the outcome of this Litigation, including any agreements relating to such an interest.

**EKO'S RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Eko objects to this Request to the extent it seeks the production, identification, or disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Eko objects to this Request as overly broad and unduly burdensome to the extent it is not relevant to any claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, and/or not proportional to the needs of the case. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc*., No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (same); *VHT, Inc. v. Zillow Grp., Inc*., No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc*., No. C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue."). Eko objects to this Request to the extent it is duplicative of other Requests.

Subject to and without waiver of the foregoing general and specific objections, eko will not produce documents in response to this Request.

**EKO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Eko further responds that it will not produce documents in response to this Request because it is disproportionate to the needs of the case and the documents

requested are not relevant to any party's claims or defenses. *See*, *e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (same); *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue.").

### a.    Quibi's Arguments Regarding RFP No. 16

Eko's documents related to a third party's financial interest in the litigation are discoverable. As discussed above, documents related to a third party's financing agreement, potential bias, or involvement in the litigation are relevant and subject to discovery. (*See* Quibi's Arguments Regarding RFP Nos. 14 & 15, *supra.*)

Quibi is entitled to this discovery, especially as it relates to Elliott. As early as May, there were news reports on Elliott's financial interest over Eko's litigation and its hand at managing that financial interest. Deadline reported on May 12, 2020 that Eko's decision to file an amended complaint naming Jeffrey Katzenberg and five additional individuals as defendants was "a pretty clear effort to up the ante" "from the now Elliott Management-backed interactive-video company." (Ex. B at 10.) On June 2, 2020, Above the Law reiterated the "unusual posture" of naming individual defendants, "coupled with the specter of Elliott looming large over settlement negotiations, considering it has already been reported to have taken an equity stake in Eko." (Ex. Q at 117.) Backed by Elliott, "Eko has embraced an escalation-at-every-turn approach, clearly designed to force Quibi to the negotiating table hat-in-hand." (*Id*.) But it was not until January 11, 2021, more than eight

months after the Wall Street Journal reported that Elliott and Mr. Singer were financing Eko's lawsuit for "an equity stake" (Ex. A at 5), that Eko disclosed Elliott as a party with a pecuniary interest in the outcome of the case.  (2299 Dkt. 419.)

Eko shirked its obligations under Fed. R. Civ. P. 7.1 for more than eight months.  It now seeks to overlook its obligations under Fed. R. Civ. P. 34.  Eko's objections should be overruled and the documents produced.

### b.    Eko's Arguments Regarding RFP No. 16

As with the Request Nos. 14 and 15, Quibi's request for discovery into the litigation funding relationship should be denied.  Quibi makes no substantial argument as to why these documents are relevant, stating only that it "is entitled to this discovery."  Not so.  For all the reasons explained above, Quibi is *not* entitled to this discovery as the requested documents are either not relevant to any claims or defenses in this case or are privileged.

Notably, Quibi does not make any rational argument for relevance as to this Request, nor does it cite a single case in support of production of these documents.

Instead, Quibi resorts to quoting media sources such as Above the Law, cherry-picking what it apparently deems to be the most inflammatory phrases in the articles, none of which have anything to do with whether the discovery Quibi seeks is relevant.  In fact, all these quotes establish is that Elliott has invested in eko.  This is not, and has never been, a secret.  And again, the quotes reveal only the articles' authors' speculation and conclusions.  None quote statements made by eko or Elliott.  And the fact that Elliott has taken an equity stake in eko does not establish the relevance of any of the documents Quibi seeks.

None of the cases Quibi cites in support of compelling production of documents in response to Request Nos. 14-16 actually support Quibi's position.  In addition, Quibi has utterly failed to provide any plausible reason why the documents it seeks are relevant.  Finally, even assuming a relevance argument could be made, Quibi did not even bother to address eko's privilege claim with

19

respect to these documents.

Eko maintains its objection that Request No. 16 seeks privileged documents and those that are not relevant to any party's claim and defenses. Quibi's motion should be denied.

**B.**     **Discovery Concerning Other Non-Privileged Evaluations of Eko's Claims and the Technology at Issue**

**1.     Quibi's Request For Production No. 104**

**QUIBI'S REQUEST FOR PRODUCTION NO. 104:**

All documents relating to any investigation, analysis or assessment by Eko regarding whether any entity has infringed the Asserted Eko Patents or Related Eko Patents.

**EKO'S RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Eko objects to this Request to the extent it seeks the production, identification, or disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Eko objects to this Request on the ground that it is overly broad and/or unduly burdensome because it seeks production of "all" documents relating to the subject matter of the Request. Eko objects to this Request because the term "relating to" is overbroad and not limited to documents and information relevant to, and reasonably and proportionally directed to, the claims and defenses at issue in this case. Eko objects to this Request to the extent it seeks a legal conclusion, including as to "infringement."

Subject to and without waiver of the foregoing general and specific objections, eko will not produce documents in response to this Request.

**EKO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Eko further responds that it will not produce documents in response to this Request because it is disproportionate to the needs of the case and the documents

1    requested include those that are not relevant to any party's claims or defenses.

2                    **a.      Quibi's Arguments Regarding RFP No. 104**

3          Eko's documents related to its investigation, analysis, or assessment on

4    whether any entity has infringed the asserted patents are relevant to the merits of

5    Eko's patent claims.  Courts have found that a patentee's infringement analysis of

6    third parties not involved in the current litigation are relevant and discoverable.

7    In *Kajeet*, the court found that plaintiff's demand letters to third parties asserting

8    claims of infringement of any asserted patent are relevant.  *Kajeet, Inc. v. Qustodio,*

9    *LLC*, 2019 WL 8060078, at *7 (C.D. Cal. Oct. 22, 2019).  Specifically, "the

10   communications could contain admissions against interest if plaintiff made

11   infringement assertions to third parties that contradict those made to defendant," or

12   "reveal evidence of prior art, as well as help an accused infringer ascertain the

13   extent of liability."  *Id.*  In *Finjan*, the court found that a patentee's expert reports

14   from other cases are relevant when they contained infringement analysis of third

15   parties related to the asserted patents.  *Finjan, Inc. v. Qualys Inc.*, 2020 WL

16   4923964, at *3 (N.D. Cal. Aug. 21, 2020).

17         Quibi's Request No. 104 seeks documents relevant to understanding the

18   scope of Eko's patents and claims, potential prior art, and potential liability.  Eko's

19   complete refusal to produce documents does not comply with the federal rules.  The

20   requested documents are particularly relevant because this Court has raised serious

21   doubt about the merits of Eko's patent infringement theories, and any analysis of

22   potential infringement is relevant to the scope of Eko's claims regarding its patents.

23   (2250 Dkt. 260 [order dated Dec. 30, 2020, denying Eko's requested injunction].)

24         Eko hides behind its boilerplate objections to withhold relevant documents.

25   Yet Eko provides no specific objections justifying its refusal to produce responsive

26   documents.  Eko should be ordered to comply with the rules of discovery.

27                    **b.      Eko's Arguments Regarding RFP No. 104**

28         Quibi's Request No. 104 seeks documents that are not only privileged, but

                                          21

1    also not relevant to any party's claims or defenses in this action. Quibi has not

2    cited any case law that supports its argument that eko's analysis of a *third party's*

3    potential infringement of eko's patents is in any way relevant to Quibi's

4    infringement of eko's patents, or that such materials are discoverable. Nor could it.

5    Eko's investigative analysis of unrelated potential third party infringers' activities

6    in anticipation of litigation is plainly work product and involving its counsel,

7    subject to the attorney-client privilege. *Navajo Nation v. Confederated Tribes &*

8    *Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir.2003);

9    *Alzheimer's Inst. of Am. v. Elan Corp. PLC*, No. C-10-482-EDL, 2011 WL

10   13153282, at *2-3 (N.D. Cal. Sept. 19, 2011) (finding inventorship analysis created

11   prior to litigation was protected as work product).

12       Quibi cites two cases in support of its demand that eko produce documents

13   related to any investigation into potential infringement of eko's patents by third

14   parties. First, Quibi cites *Kajeet* for the proposition that demand letters sent to third

15   parties are discoverable. *Kajeet*, 2019 WL 8060078, at *7. What Quibi fails to

16   mention, however, is that Quibi requested demand letters to third parties in its

17   Request No. 105. Eko responded to Request No. 105 by offering to meet and

18   confer regarding scope. Quibi did not respond or object to eko's response to

19   Request No. 105 and that Request is not the subject of this Motion. *Kajeet* does not

20   stand for the proposition that work product and privileged investigative analyses,

21   which are entirely different from demand letters sent to third parties, are

22   discoverable.

23       Second, Quibi cites *Finjan* for the proposition that a patentee's expert reports

24   from other cases might be relevant. Specifically, *Finjan* holds that "infringement

25   analysis also typically describes how the expert interprets the scope of the patents

26   and claims" and that it is "relevant to see an expert's prior opinions about the same

27   patents." *Finjan, Inc.*, 2020 WL 4923964, at *3. But Quibi has never requested

28   expert reports from other cases in the context of this Request. Rather, its focus here

is privileged work product analyses, and again, Quibi fails to mention that it specifically requested litigation materials in a different Request, No. 147, which is not at issue in this Motion.  Indeed, as Quibi is well aware, there are no other cases where eko has asserted its patents against third parties, so there are no such expert reports to produce.  Thus, the holding in *Finjan* has no relevance to the instant dispute.

In fact, what Quibi seeks by this Request is *not* demand letters or expert reports.  Quibi seeks documents related to analyses of products not at issue in this lawsuit, that are not owned by any party to the suit, and that have nothing to do with any of the claims or defenses at issue in this suit.  Quibi argues, without support, that such documents may be "relevant to the merits of Eko's patent claims."  But Quibi provides no explanation whatsoever as to how a privileged, work product analysis of a *third party's* potential infringement could possibly be relevant to the merits of eko's infringement claim against Quibi.  Quibi has not cited a single case that would support a finding that such analyses would be relevant and non-privileged, and eko is unaware of any case that so holds.

Eko maintains its objection that Request No. 104 seeks documents that are not relevant to any party's claim and defenses.  Quibi's motion should be denied as to this Request.

## C. Discovery as to Other Products That Allegedly Practice Eko's Invention

### 1. Quibi's Request For Production No. 124

**QUIBI'S REQUEST FOR PRODUCTION NO. 124**

Documents sufficient to identify any third party product that Eko believes to practice the Asserted Eko Patents.

**EKO'S RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Eko objects to this Request to the extent it seeks the production, identification, or disclosure of information protected by the attorney-client

privilege, work-product doctrine, or any other applicable privilege or immunity. Eko objects to this Request as overly broad and unduly burdensome to the extent it is not relevant to any claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, and/or not proportional to the needs of the case. Eko objects to this Request as premature as it seeks information that is properly the subject of expert reports and expert discovery. Eko objects to the extent this Request calls for the production of documents or information beyond the scope of permissible discovery under Rule 26. Eko objects to this Request as premature to the extent it requires a response premised on a construction and understanding of the meaning of certain patent claim terms before Quibi has identified its proposed claim constructions and before the Court has construed the meaning and scope of the asserted claims.

Subject to and without waiver of the foregoing general and specific objections, eko will not produce documents in response to this Request.

**EKO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Eko further responds that it will not produce documents in response to this Request because it is disproportionate to the needs of the case.

### a.     Quibi's Arguments Regarding RFP No. 124

Quibi's Request No. 124 seeks Eko's identification of third party products that may practice the asserted patents, which is relevant to the merits of Eko's patent claims.  A patentee's analysis of third parties is still relevant and discoverable when it may reveal contradicting admissions, evidence of prior art, and extent of liability.  (*See* Quibi's Arguments Regarding RFP No. 104, *supra.*)  In addition, an identification of other products that Eko contends practices the asserted patents is highly relevant to Quibi's understanding of Eko's patent claims.  In *Phoenix*, the court found that plaintiff's correspondence with third parties related to license negotiations were relevant to the defendant "ascertain[ing] the extent" of its

1  liability and "formulat[ing] an appropriate litigation strategy." *Phoenix Sols. Inc. v.*
2  *Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008).

3  These documents also may be probative of any use or disclosures of Eko's
4  alleged trade secret.  The Court has acknowledged the thin line that Eko has drawn
5  between its alleged ORTS trade secret and the disclosures in its '765 patent—that
6  the '765 discloses the idea of seamlessly transitioning video from portrait to
7  landscape, and that the ORTS trade secret is a particular implementation of that
8  idea.  (2299 Dkt. 193 at 3-4; 201 at 14-15; 409 at 4-5.)  In light of the overlap, an
9  identification of third party products that may practice Eko's asserted patents,
10  including the '765 patent, may reveal highly relevant information on whether third
11  parties or competitors may have used or received Eko's alleged trade secret in
12  practicing Eko's asserted patents.  This, in turn, will be relevant to whether Eko has
13  a protectable trade secret.  In *SPS Techs.*, the Court ordered plaintiff to produce
14  documents related to third parties that had access to the alleged trade secret at issue.
15  *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 2619646, at *3 (C.D. Cal.
16  June 6, 2019).

17  Eko's boilerplate objections and outright refusal to produce documents are
18  inappropriate.  Eko should be ordered to comply with its discovery obligations and
19  produce these highly relevant documents.

20  **b.  Eko's Arguments Regarding RFP No. 124**

21  As with Request No. 104, Quibi's Request No. 124 seeks documents that are
22  not relevant to eko's claims or Quibi's defenses.  And, again, Quibi's argument
23  misrepresents the nature of the documents it seeks and cites to case law that is not
24  applicable to this Request.

25  Quibi cites *Phoenix* in support of the proposition that correspondence with
26  third parties related to licensing negotiations is relevant and discoverable.  What
27  Quibi again fails to recognize is that Request No. 104 does not seek such
28  documents.  And, again, Quibi fails to inform the Court that licenses and documents

related to licenses are covered by other Requests not at issue in this Motion.  For example, Request Nos. 7 seeks "All documents that relate to any proposed or actual joint venture or business relationship between Eko and any third party related in any way to the Covered Eko Products or Asserted Eko Patents."  In response, eko agreed to produce "licenses and joint venture agreements under which any or all of the patents-in-suit or ORTS trade secret are licensed."  In addition, Request No. 137 seeks documents relating to revenues from licenses, Request No. 141 seeks documents related to "Eko's licensing policies or strategies," Request No. 142 seeks documents "documents constituting or relating to . . . [*inter alia*] license agreements," and Request No. 145 seeks communications with "third parties regarding actual or potential licensing activities."  Thus, to the extent Quibi seeks documents related to license negotiations with third parties, such documents will be produced in response to this multitude of duplicative Requests.

Quibi's citation to *SPS Technologies* fares no better.  The documents at issue in *SPS Technolgogies* were specifically related to third parties' access to plaintiffs' trade secret.  As the court noted, these documents were relevant to whether plaintiff used reasonable efforts to maintain the secrecy of its trade secrets.  *Id.*  Again, these types of documents are covered by other Requests not the subject of this Motion, including, but not limited to, Request No. 44 (seeking eko's "non-disclosure agreements with third-parties).  And again, these are not the categories of documents Quibi actually seeks in Request No. 124, which is directed to the identification of "any third party product that Eko believes to practice the Asserted Eko Patents."  Indeed, documents related to third-party access to eko's trade secrets are not related in any way to, and would not be responsive to, this Request.

Quibi has not cited any cases that stand for the proposition that what Quibi actually seeks in this RFP is relevant to any of the claims or defenses in this case.  Indeed, this is because it could not – there is no case law that supports Quibi's position, as revealed by Quibi's obfuscation.  The case law Quibi cites supports

only the relevance of documents Quibi has sought in, and eko has agreed to produce in response to, other Requests.

Eko maintains its objection that Request No. 124 seeks documents that are not relevant to any party's claim and defenses.  Therefore, as with the other Requests Quibi has no basis for moving to compel and this Motion should be denied.

Dated:   February 16, 2021

MORRISON & FOERSTER LLP

GOODWIN PROCTER LLP

By:   */s/ Benjamin J. Fox*
    Benjamin J. Fox

By:   */s/ Darryl M. Woo*
    Darryl M. Woo

Michael A. Jacobs (CA SBN 111664)
mjacobs@mofo.com
Thomas J. Pardini (CA SBN 313401)
tpardini@mofo.com
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

I. Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
Elizabeth J. Low (SBN 308098)
elow@goodwinlaw.com
601 Marshall Street
Redwood City, CA  94063
Telephone: (650) 752-3100
Facsimile: (650) 853-1038

Benjamin J. Fox (CA SBN 193374)
bfox@mofo.com
Ryan J. Malloy (CA SBN 253512)
rmalloy@mofo.com
Soo J. Park (CA SBN 300988)
spark@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Darryl M. Woo (SBN 100513)
dwoo@goodwinlaw.com
Three Embarcadero Center
San Francisco, CA  94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041

Cindy Chang (pro hac vice)
(cindychang@goodwinlaw.com)
620 8th Avenue
New York, New York 10018
Telephone: (212) 813 8800
Facsimile: (212) 355-3333

*Attorneys for Defendants*
QUIBI HOLDINGS, LLC, WNDRCO
HOLDINGS, LLC, QBI HOLDINGS,
LLC, NEW QBI, LLC, JEFFREY
KATZENBERG, CLIFTON L.
SMITH, JR., JOSEPH BURFITT,
ROBERT A. POST, JR., ERIC
BUEHL, and BLAKE BARNES

Christie Larochelle (pro hac vice)
(clarochelle@goodwinlaw.com)
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

*Attorneys for Plaintiffs*
JBF INTERLUDE 2009 LTD.
and INTERLUDE US, INC.
d/b/a EKO

**Attestation of Concurrence of Signatories**

I, Benjamin J. Fox, in accordance with Local Rule 5-4.3.4(a)(2)(i), hereby attest that all signatories listed above, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.


　　　　　　　　　　　　　　　　　　 */s/ Benjamin J. Fox*
　　　　　　　　　　　　　　　　　　 BENJAMIN J. FOX

sf-4428845