1   MICHAEL A. JACOBS (CA SBN 111664)
    THOMAS J. PARDINI (CA SBN 313401)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, CA  94105-2482
    Telephone:  (415) 268-7000
4   Facsimile:  (415) 268-7522
    mjacobs@mofo.com; tpardini@mofo.com
5
    BENJAMIN J. FOX (CA SBN 193374)
6   RYAN J. MALLOY (CA SBN 253512)
    SOO J. PARK (CA SBN 300988)
7   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
8   Los Angeles, CA  90017-3543
    Telephone:  (213) 892-5200
9   Facsimile:  (213) 892-5454
    bfox@mofo.com; rmalloy@mofo.com;
10  spark@mofo.com

11  Attorneys for Plaintiff/Defendants
    QUIBI HOLDINGS, LLC, WNDRCO
12  HOLDINGS, LLC, QBI HOLDINGS, LLC,
    NEW QBI, LLC, JEFFREY KATZENBERG,
13  CLIFTON L. SMITH, JR., JOSEPH
    BURFITT, ROBERT A. POST, JR., ERIC
14  BUEHL, and BLAKE BARNES

15
                    UNITED STATES DISTRICT COURT
16
                   CENTRAL DISTRICT OF CALIFORNIA
17
                          WESTERN DIVISION
18

19  QUIBI HOLDINGS, LLC,              Case No.:  2:20-CV-02250-CAS-SK

20              Plaintiff,            **QUIBI'S RESPONSIVE CLAIM
                                      CONSTRUCTION BRIEF**
21      v.

22  INTERLUDE US, INC. d/b/a EKO; and  Judge:  Hon. Christina A. Snyder
    JBF INTERLUDE 2009 LTD. –          Date:   March 29, 2021
23  ISRAEL,                           Time:   10:00 AM
                                      Crtrm:  8D
24              Defendants,

25

26

27

28

sf-4416135

| | |
|---|---|
| JBF INTERLUDE 2009 LTD and INTERLUDE U.S., INC., d/b/a EKO, | Case No.: 2:20-CV-02299-CAS-SK (CONSOLIDATED) |
| Plaintiffs, | |
| v. | |
| QUIBI HOLDINGS, LLC, WNDRCO HOLDINGS, LLC, QBI HOLDINGS, LLC, NEW QBI, LLC, CLIFTON L. SMITH, JR., JOSEPH BURFITT, ROBERT A. POST, JR., BLAKE BARNES, ERIC BUEHL, AND JEFFREY KATZENBERG, | |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

I.     INTRODUCTION ........................................................................... 1

II.    FACTUAL BACKGROUND ........................................................... 1

    A.     Case Background ................................................................... 1

    B.     Eko's Asserted Patents .......................................................... 2

        1.     U.S. Patent No. 10,460,765 ("the '765 Patent") .......................... 2

        2.     U.S. Patent No. 8,600,220 ("the '220 Patent") ............................ 2

        3.     U.S. Patent No. 10,418,066 ("the '066 Patent") .......................... 3

    C.     Eko's Untimely New Claim Constructions ........................................... 3

III.   THE COURT SHOULD ADOPT QUIBI'S CONSTRUCTIONS ................. 4

    A.     "video presentation" ('765 patent) ........................................................ 4

    B.     "resized" ('765 patent) ........................................................................ 9

    C.     "media player window" ('765 patent) ................................................. 12

    D.     "range" ('765 patent) ......................................................................... 15

    E.     "segment" ('220 patent and '066 patent) ............................................. 18

    F.     "collection of segments" ('220 patent) ............................................... 21

    G.     "content paths" ('066 patent) ............................................................. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.,*
   637 F.3d 1324 (Fed. Cir. 2011) ................................................................ 6

6

7

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,*
   93 F.3d 1572 (Fed. Cir. 1996) ................................................................ 14

8

9

*Greenliant Sys., Inc. v. Xicor LLC,*
   692 F.3d 1261 (Fed. Cir. 2012) ................................................................ 6

10

11

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,*
   452 F.3d 1312 (Fed. Cir. 2006) .............................................................. 19

12

13

*Microsoft Corp. v. Multi-Tech Sys.,*
   357 F.3d 1340 (Fed. Cir. 2004) ................................................................ 6

14

15

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.,*
   415 F.3d 1335 (Fed. Cir. 2005) ............................................................ 8, 9

16

17

*Pacing Techs., LLC v. Garmin Int'l, Inc.,*
   778 F.3d 1021 (Fed. Cir. 2015) .............................................................. 11

18

*Personalized Media Communs., LLC v. Apple Inc.,*
   952 F.3d 1336 (Fed. Cir. 2020) ............................................................ 7, 8

19

20

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) .............................................................. 17

21

22

*Process Control Corp. v. HydReclaim Corp.,*
   190 F.3d 1350 (Fed. Cir. 1999) .............................................................. 22

23

24

*RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.,*
   342 F. App'x 628 (Fed. Cir. 2009) ........................................................... 9

25

26

*Seachange Int'l, Inc. v. C-COR Inc.,*
   413 F.3d 1361 (Fed. Cir. 2005) ................................................................ 8

27

*SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.,*
   983 F.3d 1367 (Fed. Cir. 2021) ......................................................... 9, 11

28

sf-4416135

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003) ................................................................. 7

*Uship Intellectual Props., LLC v. United States*,
    714 F.3d 1311 (Fed. Cir. 2013) ............................................................... 8

*Zoho Corp. v. Sentius Int'l, LLC*,
    No. 4:19-cv-0001, 2020 WL 3128910,
    2020 U.S. Dist. LEXIS 103314 (N.D. Cal. June 12, 2020) ................... 7

**Statutes**

35 U.S.C. § 112(b) ........................................................................................ 23

# I.   INTRODUCTION

Quibi's proposed constructions are supported by the patents' claim language, specifications, and prosecution histories.  These constructions provide needed clarity on the scope of Eko's asserted claims.  Eko, by contrast, proposes vague constructions to advance its erroneous infringement theories.

In its December 2020 order denying Eko's second motion for a preliminary injunction, the Court considered the scope of several disputed claim terms and found that Eko's efforts to extend them to Quibi's accused Turnstyle feature were unlikely to succeed.  Eko's opening brief fails to refute the Court's thorough analysis.  And while Eko's brief contains several untimely amendments to Eko's constructions, none addresses the problems that the Court identified in its order.

## II.   FACTUAL BACKGROUND

### A.   Case Background

Quibi's accused Turnstyle technology enabled users to switch between landscape and portrait views by rotating the phone.  Eko develops branching interactive video content, where users can select the next segment to influence the storyline.  In its initial complaint, Eko asserted claims for alleged infringement of one patent and trade secret misappropriation.  (Dkt. 1.)[1]  Eko then filed a motion for preliminary injunction on the trade secret claim.  (Dkt. 30.)  The Court denied that motion.  (Dkt. 193.)  In subsequent amended complaints, Eko asserted two more patents, as well as other claims directed at Turnstyle.  (*See, e.g.*, Dkt. 425.)

On October 21, 2020, Quibi announced it was winding down its business.  Eko then filed an *ex parte* motion for a temporary restraining order and preliminary injunction to stop Quibi's wind-down.  (Dkt. 240.)  Eko's attempt to enjoin Quibi's wind-down fared no better than its attempt to enjoin Quibi's launch.  The Court denied Eko's motion and issued a 56-page opinion finding that "Eko's motion fails

---

[1] All references to "Dkt." are to Case No. 2:20-CV-02299-CAS-SK.

sf-4416135

to make a sufficient showing demonstrating likely success on the merits." (Dkt. 418 ["PI Order"] at 55.)  The Court specifically "conclude[d] Eko ha[d] not shown it will more likely than not succeed on its infringement claims." (PI Order at 15.) The Court's conclusions were based in part on its analysis of Eko's patents and interpretation of the claims.

### B.     Eko's Asserted Patents

In its PI Order, the Court provided a summary of Eko's three patents and made several tentative findings on claim interpretation.  (PI Order at 8-11, 16-24.)

### 1.     U.S. Patent No. 10,460,765 ("the '765 Patent")

The claims of Eko's '765 patent are directed to switching from a first video presentation to a second video presentation when a media player window is resized, based on evaluating a mapping of the resized media player window to ranges of window heights and widths.  (Dkt. 425-1 ["'765 patent"], claim 1, 5:47-6:15.)  The Court made three findings related to claim interpretation in its PI Order.  First, the Court found that the limitations "first video presentation" and "second, different video presentation" required two separate video presentations and did not encompass a single stitched-together video with different regions.  (PI Order at 16-17.)  Second, the Court found that the claimed resizing of a media player window does not encompass rotating a device.  (*Id.* at 20.)  Third, the Court found that a "range" cannot be a fixed screen width or height.  (*Id.*)

### 2.     U.S. Patent No. 8,600,220 ("the '220 Patent")

The claims of Eko's '220 patent are directed to a system that selectively determines a subset of a collection of video segments to download based on a download priority.  (*See, e.g.*, Dkt. 425-2 ["'220 patent"], claim 1.)  As the Court explained, the '220 patent "sought to 'provide systems and methods for loading videos that allow a user to create customized videos.'"  (PI Order at 10 (quoting '220 patent, 1:65-67).)

1    The Court made two findings relevant to claim construction in its PI Order.

2    First, the Court found that Quibi's single stitched-together video does not include

3    the claimed "segments," which the Court referred to in its summary of the '220

4    patent as "standalone videos." (*Id*. at 22, 10.) Second, the Court found that the

5    term "collection of segments" does not encompass stitched-together videos or

6    standard streaming protocols for video downloading. (*Id.* at 21-22.)

7              **3.      U.S. Patent No. 10,418,066 ("the '066 Patent")**

8    The claims of Eko's '066 patent are directed to enabling a user to create

9    customized "content paths" made up of multimedia content segments. (*See, e.g.*,

10   Dkt. 425-3 ["'066 patent"], claim 1.) "Each content segment defines a portion of

11   one or more content paths and includes a decision period during which a user may

12   select a subsequent content segment as the content segment is playing." (*Id.*,

13   Abstract; *see also id.*, claim 1.) The claimed system synchronizes the video and

14   audio of the selectable segments. (*Id.*)

15   In its PI Order, the Court found that "as with the '220 patent," the claim term

16   "content segments" does not encompass a mere smaller piece of a video stream

17   used to optimize download speed (e.g., HLS or DASH chunks). (PI Order at 23.)

18   In addition, the Court found that those pieces of video from HLS or DASH do not

19   comprise "decision period[s]." (*Id.* at 23.)

20             **C.     Eko's Untimely New Claim Constructions**

21   The Court set a claim construction schedule with deadlines for preliminary

22   exchanges and filing a Joint Claim Construction Statement. (Dkt. 200; *see also*

23   Dkt. 229 (granting stipulation to extend schedule).) Presumably, this was designed

24   for the parties to narrow issues in dispute and provide notice of their positions. For

25   two months, Quibi and Eko identified claim terms for construction, exchanged

26   preliminary constructions, and met and conferred. The parties filed their Joint

27   Claim Construction Statement, which contains their constructions for nine disputed

28

3

claim terms; on December 21, 2020, the same day the Court circulated its tentative PI Order to the parties.  (Dkt. 355; 355-1; 409.)

Six weeks later, in its opening claim construction brief, Eko for the first time proposed several revised constructions.  Eko did not seek leave of Court to amend them or inform Quibi of the amendments.  Some of Eko's amendments eliminate issues in dispute[2], but most of Eko's amended constructions fail to properly narrow the constructions that the Court found overbroad in its PI Order.

### III.    THE COURT SHOULD ADOPT QUIBI'S CONSTRUCTIONS

Eko's claim construction brief largely ignores the Court's PI ruling and rehashes the same rejected arguments with a different gloss.  Eko's vague constructions are designed to support infringement arguments that the Court found unconvincing.  Quibi's constructions are supported by the intrinsic evidence.

### A.    "video presentation" ('765 patent)

| Term | Quibi's Construction | Eko's Construction in Joint Statement (Dkt. 355) |
|------|----------------------|---------------------------------------------------|
| "video presentation" '765 Patent, claims 1, 3-10, 12-18 | "independent video presentation not comprising a region of a larger-dimensioned video" | Plain and ordinary meaning, which is "visual media content that may have audio and/or other media associated with it" |
| | | **Eko's Construction in Opening Brief (Dkt. 435)** |
| | | Plain and ordinary meaning, which is "visual media content displayed to a user on a user device and may have audio and/or other media associated with it" |

Quibi's construction for "video presentation" is based verbatim on statements that Eko made regarding this term during prosecution.  Claims 1 and 10 of the

---

[2] Because Quibi understands that Eko now agrees that "'configuring [a/the] first state' and 'decision points' do not require construction and can be afforded their plain and ordinary meaning" (Dkt. 435 [Eko Claim Constr. Br.] at 1 n. 1), Quibi does not address those terms here.  However, Quibi's expert opines on the plain and ordinary meaning of "decision points" in his declaration.

1  '765 patent require receiving a "first video presentation" and a "*second, different*

2  *video presentation*," and transitioning from the first to the second upon the resizing

3  of a media player window. To overcome the PTO's rejection of the claims based

4  on a prior-art reference "Kasai," Eko twice asserted that "*each of the first video*

5  *presentation and the second video presentation is an independent video*

6  *presentation not comprising a region of a larger-dimensioned video*." (Ex. 1[3],

7  [excerpts of '765 file history] EKO0001115 at 1907; 1906 (same).)

8       The Court already construed this term consistent with Quibi's proposed

9  construction. (PI Order at 17.) In the PI motion, Eko had "ask[ed] the Court to

10  construe 'a first video presentation' and 'a second, different video presentation' as

11  comprising a single, stitched together video, with the first video presentation being

12  a partial area of that video, and the second, different video presentation being a

13  different partial area of that video." (*Id.* at 19.) The Court rejected this argument,

14  finding it inconsistent with Eko's trade secret claim, Eko's position during

15  prosecution, and dependent claim 5. (*Id.* at 17.)

16       The prosecution history strongly supports Quibi's construction. Eko's patent

17  application originally contained nothing about a "first video presentation" or

18  "second, different video presentation." (*See, e.g.*, Ex. 1, EKO0001154.) The

19  claims referred instead to "the first state of the video" and "transitioning the video

20  to a second state." (*Id.*) Dependent claims 9, 10, 19, and 20 all referred to

21  modifying properties "of the video," in singular form. (*Id.*, EKO0001155-1157.)

22  The examiner rejected all of Eko's initial claims as anticipated by Kasai, and Eko

23  needed to distinguish its claims from this reference. (*Id.*, EKO0001817.)

24       Eko's responses to the Kasai rejection support Quibi's construction of "video

25  presentation." Eko first amended its claims to add the "first video presentation"

26  and "second, different video presentation" limitations, and rewrote its dependent

27  _____

28       [3] All "Ex." refer to exhibits attached to the Declaration of Michael A. Jacobs.

claims to modify properties "between the videos" (plural).  (*Id.*, EKO0001862-1866.)  Eko then argued that while Kasai "focuses on a <u>single</u> video presentation, and allowing a user to switch his viewing area among regions of that single presentation," this "is not the same as seamlessly transitioning from video from a first video presentation to video from a <u>second, different video presentation</u>."  (*Id.*, EKO0001860.)  When the examiner rejected these amended claims—again based on Kasai—Eko again amended its claims and explained even more precisely that "each of the first video presentation and the second video presentation *is an independent video presentation not comprising a region of a larger-dimensioned video*."  (*Id.*, EKO0001907 (emphasis added); EKO0001906 (same).)  The Court accurately described the accompanying amendment to Eko's assertions (*id.*, EKO0001903) as a "clarifying amendment."  (PI Order at 18-19 n. 5.)  Eko's statements and further amendment re-emphasized Eko's position that the "first video presentation" and "second, different video presentation" must be independent video presentations, which differed from Kasai's "regions" of one video.

The Court correctly found that "Eko 'is bound by the arguments that it made before the examiner.'"  (PI Order at 18, quoting *Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1271 (Fed. Cir. 2012).)  *Greenliant* explained that regardless of whether an argument was adopted for allowance, "the sole question is whether the argument was made." *Greenliant*, 692 F.3d at 1271.[4]  Eko's distinguishing statements were repeated and unambiguous, and were made to overcome prior art. Eko twice explained its rationale and twice amended its claims to clarify that it

---

[4] Eko's statements establish prosecution disclaimer even if not reflected in final claims or not relied on by examiner.  *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (finding disavowal of broader claim scope based on patentee's statement, even where patentee "did not amend its claims" and where "the examiner explicitly disagreed with it"); *see also Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We have stated on numerous occasions that a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation.").

6

1   claimed two distinct "video presentations"—not "states" of one video and not

2   "regions" of one video.  Eko's removal of one amendment has no effect on Eko's

3   disclaimer, especially where it retained all its accompanying distinguishing

4   statements and prior amendments directed to the same argument.  The Court agreed

5   that Eko's removing one "clarifying amendment" "does not change its express

6   representations distinguishing Kasai," which "Eko relied on . . . to overcome the

7   Office Action."  (PI Order at 18-19, n. 5.)[5]  This is *not* an instance where Eko

8   "ma[de] an apparently erroneous argument, the examiner correct[ed] the error, and

9   the patentee shift[ed] to a different argument."  *Zoho Corp. v. Sentius Int'l, LLC*,

10  No. 4:19-cv-0001, 2020 WL 3128910, at *12 (N.D. Cal. June 12, 2020).

11        Although Eko cites *Springs Window* to support that its removal of one

12  amendment should eliminate all its prosecution statements, *Springs Window*

13  supports Quibi's position.  There, the applicant was held to its prosecution

14  disclaimer despite arguing many of Eko's same positions: (1) the examiner did not

15  rely on the disclaimer; (2) the claims were allowed for a different reason; (3) the

16  distinguishing features were not reflected in the claims; and (4) the construction

17  excluded an embodiment.  *Springs Window Fashions LP v. Novo Indus., L.P.*, 323

18  F.3d 989, 993-996 (Fed. Cir. 2003).  The Federal Circuit held that "the fact that the

19  prosecution shifted to a different focus does not blunt the impact of those remarks

20  made to overcome the prior rejection . . . . The public notice function of a patent

21  and its prosecution history requires that a patentee be held to what he declares

22  during the prosecution of his patent."  *Id*. at 995 (quotations omitted).

23        Setting disclaimer aside, Eko's prosecution statements inform claim scope

24  regardless.  *Personalized Media Communs., LLC v. Apple Inc.*, 952 F.3d 1336,

25

26       [5] Eko's arguments allowed it to overcome Kasai.  The examiner agreed that

27  "Kasai fail[ed] to teach wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of

28  a larger-dimensioned video."  (Ex. 1, EKO0001934.)

1345 (Fed. Cir. 2020) ("Even where prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction.")  This is because "an applicant's repeated and consistent remarks during prosecution can define a claim term by demonstrating how the inventor understood the invention." *Id*. at 1340 (citations omitted).  In light of this prosecution history, a POSITA would interpret Eko's claims to exclude transitioning between regions of one video. (*See* Declaration of Jim Williams ["Williams Decl."] ¶¶ 37-38.)

Eko's apparent argument that "video presentation" was intended to describe only what a user can see is absent from Eko's prosecution statements.  (Dkt. 435 ["Eko Claim Constr. Br."] at 4-5.)  Eko's intent is irrelevant.  *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005) (rejecting technical argument about how applicant intended to distinguish claims from prior art in favor what applicant actually argued).  Even if the Court agreed that Eko did not need to phrase its disclaimer as broadly as it did, "[t]he fact that the applicant may have given up more than was necessary does not render the disclaimer ambiguous.  The analysis focuses on what the applicant said, not on whether the representation was necessary or persuasive." *Uship Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1314-1315 (Fed. Cir. 2013) (finding prosecution disclaimer despite "applicant ha[ving] no need to give up claim scope").

Eko fails to explain how Quibi's construction conflicts with claim 5 or excludes the embodiments of Figures 4 and 5.  (Eko Claim Constr. Br. at 6-7.)  The Court found that claim 5's requirement of "setting a viewing region to a partial area of the video" made sense only if the video presentations in claim 1 were *not* partial regions of one video presentation.  (PI Order at 19; *Seachange Int'l, Inc. v. C-COR Inc.,* 413 F.3d 1361, 1368 (Fed. Cir. 2005) ("The doctrine of claim differentiation . . . is at its strongest where the limitation sought to be 'read into' an independent claim already appears in a dependent claim.").)  And because claim 1 also includes "configuring a first state of the video from the first video presentation," Figures 4

and 5 could be referring to this "configuring" process before the resizing of a media player window and transition to a separate video presentation.  (Williams Decl. ¶¶ 41-43.)  But even if Quibi's construction excluded these embodiments, "[t]he fact that claims do not cover certain embodiments disclosed in the patent is compelled when narrowing amendments are made in order to gain allowance over prior art." *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345–46 (Fed. Cir. 2005).[6]

Eko similarly argues that Quibi's construction introduces a negative limitation, but "the doctrine of prosecution disclaimer applies even if the disclaimer results in a negative claim limitation." *RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.*, 342 F. App'x 628, 630 (Fed. Cir. 2009) (affirming construction with negative limitation "but not a transmitter" based on applicant's prosecution statements).

### B.    "resized" ('765 patent)

| Term | Quibi's Construction | Eko's Construction in Joint Statement |
|------|----------------------|----------------------------------------|
| "resized"  '765 Patent, claims 1, 10 | "changed in size by an input device (not physically rotated)" | Plain and ordinary meaning, which is "change to any size dimension, such as height and/or width" |
| | | **Eko's Construction in Opening Brief** |
| | | Plain and ordinary meaning, which is "changed in size" |

Quibi's proposed construction of "resized" is required by the intrinsic evidence and aligns with the Court's Order.  The Court found that "it appears Quibi does not practice the claimed resizing of the media player window . . . . Quibi's application changes from landscape to portrait orientation based on device rotation (not window resizing)."  (PI Order at 20.)  Eko ignores this ruling.

---

[6] The '765 patent also has no "preferred embodiments," and non-preferred embodiments are subject to a weaker presumption that the claim covers them. *SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*, 983 F.3d 1367, 1371 (Fed. Cir. 2021) (reversing construction covering non-preferred embodiment).

The '765 patent is clear that rotating a device is different from "resizing" a media player window.  (*Compare* '765 Patent at 4:39-46, with *id.* at 5:47-55.)  "Fig. 2 depicts a video state change responsive to *a rotation of a user device*," whereas "Fig. 3 depicts a video state change responsive to *a window resizing*."  ('765 patent at 2:26-29 (emphasis added).)  While Figure 2 depicts a "smartphone 200," Figure 3 depicts "a windowed media player 300 on a desktop computer, laptop, or other user device supporting windowed applications."  (*Id.* at 5:47-50.)



Figure 2 ("Rotate" and "smartphone 200" circled in red)



Figure 3 ("Resize" and "windowed media player 300" circled in red)

Quibi's construction uses the same language as Eko's patent.  Describing Figure 3, the specification states, "In this instance, *rather than physically rotating*

10

*or repositioning the user device, the user changes the window size or state* (e.g.,
minimized, maximized, thumbnailed) *of the media player 300 using an input device*
(e.g., mouse, keyboard, touchscreen, etc.)." ('765 Patent at 5:50-54 (emphasis
added).)  Quibi's construction—"changed in size by an input device (not physically
rotated)"—tracks this disclosure.

Quibi's construction also aligns with the prosecution history.  After several
rejections from the Patent Office, Eko added the limitations about "resizing" a
"media player window" and mapping the resized window to various ranges.  (Ex. 1,
EKO0001960.)  Arguing for the claims' allowance with these limitations, Eko cited
the specification's discussion of Figure 3 and not Figure 2.  (*Id*., EKO0001967-
1968; *see also* '765 patent at 5:57-6:14.)

Eko's warning against Quibi's negative limitation is misplaced because that
presumption only applies "absent clear disavowal, disclaimer, or lexicography."
(Eko Claim Constr. Br. at 11.)  But Eko explained that Figure 3's window resizing
occurs "rather than physically rotating" ('765 patent, 5:50), and did not cite to
Figure 2 during prosecution to show this "resizing."  Eko also argues that Quibi's
construction excludes "preferred embodiments," but the '765 patent has no
preferred embodiments.  Non-preferred embodiments are subject to a weaker
presumption that the claim covers them.  *SIMO Holdings*, 983 F.3d at 1371.  It is
also appropriate to exclude an embodiment when the claim language requires it, as
it does here.  *Pacing Techs., LLC v. Garmin Int'l, Inc*., 778 F.3d 1021, 1026 (Fed.
Cir. 2015).

Eko's argument that resizing and rotating are not "mutually exclusive"
because both can happen at the same time fails for two reasons.  (Eko Claim Constr.
Br. at 11:21-26.)  First, Eko relies on the patent's discussion of resizing an "item"
on a phone screen—not resizing a "media player window," as the claims require.
(Williams Decl. ¶¶ 49-52.)  Second, Eko fails to recognize that the words still have
mutually exclusive *meanings*.  The patent explains that "rotating the device

11

between portrait and landscape results in a rotation of the item displayed on the device screen," and that "in some cases," this rotation can "simultaneously resiz[e] the item" to fit the narrower portrait screen, with mattes displayed above and below the image. ('765 patent, 4:65-5:10). But this proves the opposite of what Eko contends. The item *both* rotates *and* resizes; one process revolves the item on its axis, and one process shrinks it to a smaller size. Rotating maintains the item's size, so it is "resized" to be larger or smaller. (*See, e.g.*, Ex. 2 at QUIBI_0008823 ("To make an object or space larger or smaller"); Ex. 3 at QUIBI_0008825 ("To alter the size of; to make larger or smaller") and QUIBI_0008826 ("*Computing*. To alter the size of (an image or window on the screen).").) Quibi's construction of "resized" correctly excludes "not physically rotated." (Williams Decl. ¶¶ 54-55.)

### C. "media player window" ('765 patent)

| Term | Quibi's Construction | Eko's Construction in Joint Statement |
|---|---|---|
| "media player window" <br><br> '765 Patent, claims 1, 10 | "a user-resizable rectangular portion of a screen in which media content is displayed" | Plain and ordinary meaning, which is "a window of an application running on a device, such as a computer, smartphone, or tablet, that is capable of presenting (or playing) videos" |
| | | **Eko's Construction in Opening Brief** |
| | | Plain and ordinary meaning, which is "a window of an application running on a device, such as a computer, smartphone, or tablet, that is capable of presenting (or playing) video content" |

The dispute over "media player window" is closely related to the "resized" dispute because the terms appear in the same limitation: "determining that a media player window in which the video is playing has been resized . . ." ('765 patent, claim 1.) Quibi's proposed construction of "media player window" describes the proper scope of Eko's claims. It also aligns with the Court's finding, which Eko ignores, that "it appears Quibi does not practice the claimed resizing of the media

player window . . . . Quibi's application changes from landscape to portrait orientation based on device rotation (not window resizing)."  (PI Order at 20.)

Eko's proposed construction is too broad and includes "smartphones" as a possible device supporting the "window."  This is incorrect.  A POSITA at the time of the invention would disagree that a smartphone could support the "media player window" described in the patent.  (Williams Decl. ¶¶ 51-52, 58-59, 63.)  Figure 2 refers to a "smartphone 200 having a number of associated properties," including a long list that does not include anything about a "window."  ('765 patent, 4:39-53.)  The patent explains that sometimes the "existence of a particular device property depends on the device type," and introduces the "window"-related properties by specifically limiting them to devices that support them—not smartphones, but "desktops, laptops, [and] televisions":

> [F]or device operating systems that support *windowed* applications (e.g., desktops, laptops, televisions, or other devices supporting Microsoft Windows® operating systems or Apple OS X ® operating systems), one device property can be the *window size (e.g., height and width values) of a media player application* (e.g., native application, browser, or otherwise), or the window state (e.g., minimized, maximized, in thumbnail) of a media player application.

('765 patent at 4:55-63) (emphasis added).)  This "window" is central to Figure 3, which "depicts a concept similar to that shown in Fig. 2," except this time "with a windowed media player 300 on a desktop computer, laptop, or other user device supporting windowed applications."  (*Id.*, 5:47-50.))  The black banner at the top of Figure 3 further suggests a desktop display.

Quibi's construction incorporates the required elements of the "media player window."  First, the media player window must be "resizable" "*during playback* of the video from the first video presentation."  ('765 patent, claim 1 (emphasis added).)  A resizable window differs from a non-resizable physical screen.  Claims 2 and 11 differentiate "window size" from "physical screen size" by reciting

13

both in a long list of properties.  *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (use of "pusher bar" and "pusher assembly" in same claim meant they were not synonyms).  The '765 patent measures "screen size" in inches and "window size" in pixels.  ('765 patent, 8:54-59.)  The inches of the screen cannot resize during playback, but the window's pixels can.  (Williams Decl. ¶ 59.)

Moreover, the media player window must be resizable *by the user*.  In the "media player window" context, "the user changes the window size or state (e.g., minimized, maximized, thumbnailed) of the media player 300 using an input device (e.g., mouse, keyboard, touchscreen, etc.) . . . . [A] user resizes the associated window."  ('765 patent, 5:50-56.)  Quibi's construction includes "user-resizable" to incorporate how a user must act upon the window to resize it.

Finally, Quibi's construction includes how the media player window comprises "a portion of a screen."  The specification explains that the changeable device properties include "the window size (e.g., height and width values)" or "window state (e.g., minimized, maximized, in thumbnail)" of a media player application.  ('765 patent at 4:55-63.)  Table 1 shows how "a particular window can be individually resized to occupy between 5% and 100% of a screen."  (*Id.*, 6:2-14.)

| TABLE 1 | | |
|---|---|---|
| Window Height Range | Window Width Range | Video |
| 5% to <50% | 5% to 100% | Video 1 |
| 50% to 100% | 5% to <25% | Video 2 |
| 50% to 100% | 25% to 100% | Video 3 |

A media player window that can be minimized, maximized, thumbnailed, or resized comprises a "portion of the screen."  Quibi's construction clarifies that the window occupies a portion of the conceptually distinct screen.

D.    **"range" ('765 patent)**

| Term | Quibi's Construction | Eko's Construction in Joint Statement |
|---|---|---|
| "range"<br><br>'765 Patent, claims 1, 10 | "plurality of possible values between upper and lower limits" | Plain and ordinary meaning, which is "one or more values as to which variation is possible" |
| | | **Eko's Construction in Opening Brief** |
| | | Plain and ordinary meaning, which is "a set of possible values" |

There are two differences between the parties' constructions of "range." The first is that Quibi's construction, but not Eko's, requires a *plurality* of possible values. This is consistent with the Court's PI Order, which found that Eko was not reasonably likely to prevail on the '765 patent in part because "Quibi's application changes from landscape to portrait orientation . . . *based on fixed values (not ranges)*." (PI Order at 20 (emphasis added).) A fixed value, by definition, has only a *single* value, not a plurality of possible values.

Although Eko's brief is silent on the point, Eko maintains its argument that a "range" can be a single (i.e., fixed) value. Eko's original construction of "range," submitted before the Court's PI Order, used the phrase "one or more values," clearly conveying that a "range" can be a single value. (Dkt. 355-1 at 5 (emphasis added).) Eko's amended construction, submitted after the Order, uses the phrase "set of possible values" instead. Concerned that a "set of possible values" could still comprise a single value, Quibi emailed Eko asking whether it agrees that a "range" must be a plurality of values. (Ex. 4 [2/10/2021 Email].) Eko refused to respond substantively. (*Id.*) Thus, it appears that Eko amended its construction to have the same scope as its original construction—just with disguised intent.

The Court's tentative finding that "range" does not extend to fixed values was correct. The specification of the '765 patent expressly contrasts "fixed dimensions" with "ranges." ('765 patent, 5:65-6:1 ("In some implementations, *instead of* limiting the windowed media player 250 to *fixed dimensions*, *ranges* for

window heights and/or widths can be defined and associated with differing media content.") (emphasis added).)  A "fixed window dimension," according to the specification, is a "defined height and width" in which particular media content (e.g., a video) is displayed.  (*Id.*, 5:57-58.)  For example, a video of a singer may be displayed in a window having "fixed dimensions X," while a video of the band may be displayed in a window having "fixed dimensions Y."  (*Id.*, 5:58-62.)  Thus, "fixed dimensions" means a *single* window height and a *single* window width.  By contrast, a "range" is a *plurality* of window heights and window widths.  (*Id.*, 5:65-6:14.)  The specification illustrates this in Table 1 (below).

| TABLE 1 | | |
| --- | --- | --- |
| Window Height Range | Window Width Range | Video |
| 5% to <50% | 5% to 100% | Video 1 |
| 50% to 100% | 5% to <25% | Video 2 |
| 50% to 100% | 25% to 100% | Video 3 |

Here, Video 1 is displayed in windows having heights between 5% and 50% and widths between 5% and 100% of the screen size.  Video 2 is displayed in windows having heights between 50% and 100% and widths between 5% and 25% of the screen size.

Eko's interpretation of "range" to encompass a single value conflicts not only with the specification, but also with the claim language.  Claims 1 and 10 both recite "determining that the second [height / width] is *included in* a particular one of the media player window [height / width] ranges."  The words "included in" indicate that the ranges comprise multiple values.

That Quibi's expert used the word "set" in discussing the meaning of "range" does not support Eko's construction.  (*See* Eko Claim Constr. Br. at 15.)  Unlike Eko, he used "set" to refer to a plurality of values.  (Williams Decl. ¶ 74; Dkt. 259-1 ¶ 71 ("A person of ordinary skill in the art would expect a media

player window height 'range' to include *a set of possible values <u>within</u> <u>which</u>* an actual measured height *could fall*."  (emphasis added).)

The second difference between the parties' constructions is that Quibi's construction, but not Eko's, states that a "range" spans from a lower limit to an upper limit.  As illustrated in Table 1, every "range" in the specification spans from a lower limit to an upper limit.  ('765 patent, 6:1-14.)

Eko does not appear to dispute that a "range" is bounded by limits.  Even Eko's car price examples (as discussed below) have limits ($5,000 and $7,000 in one example; $8,000 and $9,000 in the other).  (Eko Claim Constr. Br. at 16.)  Rather, Eko appears to contend that a "range" can exclude possible values between the lower and upper limits.  For example, Eko's construction would incorrectly allow for a "range" of window heights to consist solely of 50%, 75%, and 100% of screen size, even if 80% is a possible value.  That is inconsistent not only with the plain and ordinary meaning of "range," but also the specification. Table 1's repeated use of "to" between the limits (e.g., "50% to 100%") shows that the ranges cover all possible intermediate values (e.g., 80% in this example).

Eko's reliance on claim 2 is misplaced.  (*See* Eko Claim Constr. Br. at 15.)  The "properties" recited in claim 2 are not used in claim 1's steps involving "ranges"; they are used in an earlier step of "configuring a first state of the video."  (Williams Decl. ¶¶ 75-78.)

Eko's discussion of car prices is also misguided.  (*See* Eko Claim Constr. Br. at 16.)  The issue here is not what "range" means in the abstract, but rather what it means in the context of the '765 patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("Importantly, the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent, including the specification.").  Table 1 is by far the most relevant evidence, yet Eko ignores it.

1    **E.    "segment" ('220 patent and '066 patent)**

| Term | Quibi's Construction | Eko's Construction in Joint Statement and Opening Brief |
|---|---|---|
| "segment"<br><br>'220 Patent, claims 1-2, 7-14, 19-21; '066 Patent, claims 1, 11 | "standalone video" | Plain and ordinary meaning, which is "a portion of video and/or audio content" |

The term "segment" appears in both the '220 and '066 patents.  Both patents are directed to Eko's choose-your-own-adventure narratives, in which segments branch off into selectable subsequent segments.  The Court found that Quibi's video was not comprised of Eko's "segments" for either the '220 or '066 patent.  (PI Order at 21-23.)  But again, Eko fails to reckon with the Court's order.  Eko's vague construction of "segment" as "a portion of video and/or audio content" runs into the same problems as its previous, improper interpretation of "segments" as DASH or HLS chunks of video or landscape and portrait portions of video.  (*Id*. at 21-23.)  In an apparent effort to save these arguments, Eko proposes a construction that is broad to the point of meaninglessness.  (*See, e.g.*, Williams Decl. ¶¶ 91-94.)

Quibi proposes the construction "standalone video" because that is how the '220 patent, incorporated by reference in the '066 patent, characterizes the word "segment."[7]  The Court took note of this language, explaining that Eko's "*invention sought to improve 'the loading of videos' by providing a system . . . where multiple videos have multiple segments that are 'standalone videos*.'"  (PI Order at 10 (emphasis added).)  The Court also cited Eko's summary of its invention, which states, "A further object of the present invention is to provide systems and methods

_____

[7] The '066 patent incorporates by reference the application that later issued as the '220 patent, and supports that "segments" are "standalone videos" for similar reasons.  (Williams Decl. ¶¶ 90-92; '066 patent, 6:2-11 (referencing Application No. 13/437,164).)  The parties agreed to present the term "segment" to the Court for both patents as one of the nine chosen terms, and each provided one consistent construction across both patents.  (Dkt. 435 [Eko Claim Constr. Br.] at 17, 23.)

for loading videos where a plurality of videos is loaded, each having a *plurality of segments that are standalone videos*." ('220 patent, 1:61-64; *see also id.*, 3:34-38 ("With the system of the present invention, a plurality of videos are loaded, each having a plurality of segments that are *a standalone video*") (emphasis added).[8] Both of these "standalone videos" sentences refer to "the present invention." When a patentee describes "the present invention," "[t]he public is entitled to take the patentee at his word" of what the invention entails. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006).

The figures depict the standalone nature of Eko's segments and support Quibi's construction. Figure 4A describes a loading sequence in which segments 1, 2a, 2b, and 3a-3d are each unique videos that are loaded independently. In this example, "Segment 1 is loaded. Segments 2a, 2b are then loaded. The user selects option 2b. Segment 2a is then disregarded with its entire branch and segment 2b is loaded. Segments 3c and 3d are also loaded." ('220 patent, 4:58-62.)



FIG. 4A

Figures 3-10 also depict selectable "segments of video that can be linked together via branches." (*Id*. at 4:25-27.) Figure 3 "illustrates the differences between a regular video and one created by the present invention," and uses "segment" only in

---

[8] Eko misquotes the first instance of "standalone videos" at column 1, lines 61-64 by adding the article "a" before "standalone videos," in order to support its grammatical argument that "standalone video" was meant to describe the "plurality" rather than the "segments." (Dkt. 435 [Eko Claim Constr. Br.] at 19.)

regard to the "video of the present invention." (*Id*., 4:40-45.)  Although the "regular video" comprises "portions of video and/or audio content" (Eko's construction), it does not contain "segments."  (Williams Decl. ¶¶ 87-88.)



*FIG. 3*

The rest of the '220 patent supports Quibi's construction of "segment" as a "standalone video."  The claims describe selectable segments that are each downloaded (or not) in a certain priority.  (*See, e.g.*, *id*., claims 1-4, 7-16, 19-21.)  Each segment has a variable that specifies whether or not to load that segment.  (*Id*., 6:10-12.)  Segments can also be "jumped to" for viewing.  (*Id*., 6:7-8.)  These "segments" are sometimes even referred to as "videos"; the "video loading manager" downloads "segments" or "videos" interchangeably.  (*See, e.g.*, *id*., 2:51-56 ("Loading Manager [i]s in charge of downloading web-based videos according to a certain loading logic" and "stop[s] loading unreachable videos once a selection has been made"); *id*., 5:10-13 ("the system manages loading all the rest of the videos before playing them on every possible branch"); *id*., 5:28-33 ("the loader 12 continues downloading all of the video segments . . . . The loader 12 has a map of all existing videos . . . [and] downloads all possible videos").)  And while the downloading occurs, "the user selects the video [or segment] it wishes to see."  (*Id*., 4:33-34.)

Quibi's construction of "standalone video," unlike Eko's broad construction, captures the proper scope of this term.  (*See, e.g.*, Williams Decl. ¶¶ 86-89.)

F.    **"collection of segments" ('220 patent)**

| Term | Quibi's Construction | Eko's Construction in Joint Statement and Opening Brief |
|---|---|---|
| "collection of segments" <br><br> '220 Patent, claims 1-2, 13-14 | "a first segment of a video that is played and one or more subsequent segments" | Plain and ordinary meaning, which is "a collection of portions of video and/or audio content" |

Quibi's construction is the one that comports with the claim language and aligns with the intrinsic evidence.  It clarifies that the "collection of segments" of the '220 patent is not a loose, unorganized group, but rather segments appended onto one another in sequential fashion.[9]  Eko's proposed construction, like its construction of "segments" itself, is vague and ignores the Court's order.  (PI Order at 21 (finding Eko failed to show "how a Quibi video is comprised of a 'collection of segments'").)  The Court found that to the extent Eko's argument was that "a stitched-together Quibi video is a collection of segments" or that "Quibi employs a collection of segments because Quibi uses the DASH and HLS standards," Eko's infringement theories failed.  (*Id*. at 21-22.)  Eko's proposed construction is designed to embrace both of these rejected theories—and virtually any theory Eko may concoct later, for that matter.  It also ignores the Court's conclusion that "a collection of segments" does not exist where the "video comprises a single download or stream."  (*Id.*)

Quibi's construction—"a first segment of a video that is played and one or more subsequent segments"—conveys the proper scope of this claim.  Figure 3 explains that "a downloaded video from a played video is the *first segment*."  ('220 patent, 4:44-45 (emphasis added).)  Following this "first segment" of "a played video" are "two second segments" and the "remaining video."  (*Id.*, 4:45-48.)

---

[9] Quibi's construction also incorporates its "segment" construction.



FIG. 3

'220 patent Figure 3 (annotated) ("collection of segments" consists of "a first segment of a video that is played [red] and subsequent segments [green]")

All the remaining figures depict this same structure.  Figures 4-10 depict "segments connected by branches," which form a first segment that is played followed by subsequent segments.  (*Id*., Figures 4-10; Williams Decl. ¶¶ 98-99.)

Quibi's construction is supported by the claim language.  It solves the existing ambiguity problem for at least claims 10 and 4 of the '220 patent by supplying necessary antecedent basis for those claims.  Claim 10 refers to "the playing of *the* first segment," but neither that claim, nor claims 1 and 7 from which it depends, contains an earlier recitation of any "first segment" that is played.  The only reference to "segments" in any parent claim is "the subset of video segments" in claim 7, which refers back to "a subset of video segments" in claim 1—part of "the collection of segments."  Similarly, claim 4 refers to "*the* subsequent segments," but neither that claim nor its parent claim 1 provide an antecedent basis for these subsequent segments. [10]  But because the only earlier reference to "segments" is the "collection of segments" in claim 1, "the subsequent segments" must also be part of claim 1's "collection of segments."  *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356-57 (Fed. Cir. 1999) (construing "the discharge rate" as referring to same rate as "a discharge rate" in part to "avoid[] any lack of antecedent basis problem").  Therefore, at least claims 10 and 4 can be

---

[10] The issue repeats with claim 16, which depends from claim 13 and recites "the subsequent segments" without any antecedent basis.

definite only if the "collection of segments" in claim 1 provides an antecedent basis for both the "first segment" that is played and "the subsequent segments."  Quibi's construction of "a first segment of a video that is played and subsequent segments" captures the meaning of "collection of segments" that would not render the claims invalid under 35 U.S.C. § 112(b).

### G.    "content paths" ('066 patent)

| Term | Quibi's Construction | Eko's Construction in Joint Statement |
|---|---|---|
| "content paths"<br><br>'066 Patent, claims 1, 11 | "selectable sequences of two or more multimedia content segments" | "multimedia presentations of content segments seamlessly joined together" |
| | | **Eko's Construction in Opening Brief** |
| | | "two or more multimedia content segments" |

Eko now agrees with Quibi that a content path consists of two or more multimedia content segments.  (Eko Claim Constr. Br. at 25; *see also* '066 patent, 2:51-55, 4:26-30, claim 1; Williams Decl. ¶ 110.)

Eko's construction is incomplete, however.  It fails to specify how the segments comprise a content path.  A "content path" is not just any two disconnected segments.  Rather, as the word "path" conveys, it is two (or more) segments in a *sequence*.  The '066 patent explains that a content path is formed through a repeatable process in which a user "select[s] the next content segment to view as the current segment is playing" and then the "selected segment is seamlessly appended [] onto the currently playing content segment."  ('066 patent at 2:55-61.)  Quibi's construction preserves the content path's structure—segments that are selected and combined in a sequence.  (*See* Williams Decl. ¶ 111.)

That content segments—and by extension, content paths—are *selectable* is infused into the very purpose of the '066 patent, which is to provide "systems and methods to synchronize audio for *selectably presentable media content*

1  *segments . . .*" ('066 patent at 1:42-46 (emphasis added).)[11]  Dr. Chatterjee

2  acknowledges that a content path is selectable because "the user is able to select

3  which content path to watch."  (Dkt. 244-2 [Chatterjee Decl.] ¶ 113.)  The

4  specification of the '066 patent supports this: "Traversal of the multimedia content

5  along a content path may be performed by selecting among options that appear on

6  and/or around the video while the video is playing.  The segment that is played after

7  a currently playing segment is determined based on the option selected."  ('066

8  patent at 4:34-42; *see also id.* at 4:50-56, 5:1-5.)  Accordingly, segments are played

9  one after another as they are selected by a user.  (*Id.*)

10       The claims further support Quibi's proposed construction.  Read with Eko's

11  construction, the second instance of "content path" in claim 1 provides that the

12  assembly engine assembles the segments into a multimedia presentation comprising

13  two or more segments.  Without including "selectable" or "sequence" within the

14  meaning of "content path," these characteristics of a content path are lost from the

15  limitation.  (*See* '066 patent at 1:53-59, 2:55-61.)

16       The '066 patent incorporates by reference Eko's patent application number

17  13/033,916 (later issued as U.S. patent 9,607,655).  (*Id.* at 4:8-13.)  Like the '066

18  patent, the '916 application is directed to assembling audio and video segments of

19  interactive videos.  (Ex. 5 ['916 application, Pub. No. US 2011/0200116 Al] at

20  Abstract, [0002].)  The '916 application also confirms that content paths—alluded

21  to as "user path[s]" (*id.* at [0060])—consist of two or more segments and that they

22  are selectable sequences.  Figure 5 contains a visual depiction of possible paths:

23

24

25

---

26     [11] The '220 patent (incorporated by reference) also discusses how "[w]ith the present invention, the interactive nature of a video impacts the video's content and

27  the user can control the video's path" because "every option changes something on the video content." ('220 patent, 7:41-44.)

28

FIG. 5

(*Id.*, Fig. 5, [0059]-[0060].)  It shows the possible segment selections a user can make at each point to form this path.  (Williams Decl. ¶¶ 113-114.)

Eko's argument that Quibi's proposed construction "improperly introduces ambiguity to the term" is wrong.  (Eko Claim Constr. Br. at 25.)  Eko contends that the word "selectable" in Quibi's construction modifies "sequences" rather than "segments," but these sequences *are* selectable by virtue of selecting at least one content segment within it.[12]  (Williams Decl. ¶ 112.)  The "selectability" of the sequence is a necessary part of what the "content path" conveys.  (*See, e.g.*, '066 patent at 1:50-56, 5:1-5.)

---

[12] The first introductory content segment may not be selectable (*see* '066 patent, 4:50-56), which is why Quibi did not propose "sequence of two or more selectable segments."

1    Dated:   February 18, 2021          MORRISON & FOERSTER LLP

2

3                                        By:   */s/ Michael A. Jacobs*
                                               Michael A. Jacobs

4                                              Attorneys for Plaintiff/Defendants
5                                              QUIBI HOLDINGS, LLC,
                                               WNDRCO HOLDINGS, LLC,
6                                              QBI HOLDINGS, LLC,
                                               NEW QBI, LLC,
7                                              JEFFREY KATZENBERG,
                                               CLIFTON L. SMITH, JR., JOSEPH
8                                              BURFITT, ROBERT A. POST, JR.,
                                               ERIC BUEHL, and BLAKE
9                                              BARNES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28