# EXHIBIT 1

PTO/AIA/15 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

| UTILITY PATENT APPLICATION TRANSMITTAL | Attorney Docket No. | ITU-017 |
|---|---|---|
| | First Named Inventor | Yoni Bloch |
| | Title | SYSTEMS AND METHODS FOR RESPONSIVE AND ADAPTIVE VIDEO |
| (Only for new nonprovisional applications under 37 CFR 1.53(b)) | Express Mail Label No. | |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:** Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

1. **Fee Transmittal Form** (PTO/SB/17 or equivalent)
2. [X] **Applicant asserts small entity status.** See 37 CFR 1.27
3. **Applicant certifies micro entity status.** See 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.
4. [X] **Specification** [Total Pages 22]
   Both the claims and abstract must start on a new page.
   (See MPEP § 608.01(a) for information on the preferred arrangement)
5. [X] **Drawing(s)** (35 U.S.C. 113) [Total Sheets 11]
6. **Inventor's Oath or Declaration** [Total Pages ___]
   (including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))
   a. Newly executed (original or copy)
   b. A copy from a prior application (37 CFR 1.63(d))
7. [X] **Application Data Sheet** * See note below.
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. **CD-ROM or CD-R** in duplicate, large table, or Computer Program (Appendix)
   Landscape Table on CD
9. **Nucleotide and/or Amino Acid Sequence Submission** (if applicable, items a. – c. are required)
   a. Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. CD-ROM or CD-R (2 copies); or
      ii. Paper
   c. Statements verifying identity of above copies

## ACCOMPANYING APPLICATION PAPERS

10. **Assignment Papers**
    (cover sheet & document(s))
    Name of Assignee

11. **37 CFR 3.73(c) Statement** (when there is an assignee)   **Power of Attorney**
12. **English Translation Document** (if applicable)
13. **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
    Copies of citations attached
14. **Preliminary Amendment**
15. **Return Receipt Postcard** (MPEP § 503) (Should be specifically itemized)
16. **Certified Copy of Priority Document(s)** (if foreign priority is claimed)
17. **Nonpublication Request** Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.
18. **Other:**

*Note: (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

### 19. CORRESPONDENCE ADDRESS

[X] The address associated with Customer Number: 051414    OR    Correspondence address below

| Name | |
|---|---|
| Address | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| Signature | /Steven R. Argentieri/ | Date | August 26, 2015 |
|---|---|---|---|
| Name (Print/Type) | Steven R. Argentieri | Registration No. (Attorney/Agent) | 69,083 |

**EXHIBIT 1**
**PAGE 3**

EKO0001115

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni Bloch |
| **Filer:** | Steven Robert Argentieri/Meghan Breault |
| **Attorney Docket Number:** | ITU-017 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 70 | 70 |
| Utility Search Fee | 2111 | 1 | 300 | 300 |
| Utility Examination Fee | 2311 | 1 | 360 | 360 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Late Filing Fee for Oath or Declaration | 2051 | 1 | 70 | 70 |
| **Petition:** | | | | |

**EXHIBIT 1**
**PAGE 4**

EKO0001116

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **800** |

**EXHIBIT 1**
**PAGE 5**

EKO0001117

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 23308599 |
| **Application Number:** | 14835857 |
| **International Application Number:** | |
| **Confirmation Number:** | 6941 |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni  Bloch |
| **Customer Number:** | 51414 |
| **Filer:** | Steven Robert Argentieri/Meghan Breault |
| **Filer Authorized By:** | Steven Robert Argentieri |
| **Attorney Docket Number:** | ITU-017 |
| **Receipt Date:** | 26-AUG-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 11:32:00 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $800 |
| RAM confirmation Number | 14271 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

EXHIBIT 1
PAGE 6

EKO0001118

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | ITU-017_ADS.pdf | 61407<br>bbd8d67732a4f979c79e508ab533b3119bd22a18 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied ADS fillable form | | | | | |
| 2 | Drawings-only black and white line drawings | ITU-017_Drawings.pdf | 286698<br>5aa0b3bdd1d65d812a448b3d5d1c5c8012b01b29 | no | 11 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | | ITU-017_Specification.pdf | 162972<br>973c22380f644cc3f86b3ef2275035ee588c3a15 | yes | 22 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | Document Description | Start | End |
| | Specification | 1 | 17 |
| | Claims | 18 | 21 |
| | Abstract | 22 | 22 |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Transmittal of New Application | ITU-017_Transmittal.pdf | 92528<br>6b863adf6d87765147e47d61b774d1d09a182562 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 36760<br>53088ac7967ad9353b2b65ec54e3561632ec133ae | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 640365 | | |

**EXHIBIT 1**
**PAGE 7**

EKO0001119

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EXHIBIT 1
PAGE 8

EKO0001120

**Application Data Sheet**

**Inventor Information**

| | |
|---|---|
| Inventor Number:: | 1 |
| Name Prefix:: | Mr. |
| Given Name:: | Yoni |
| Family Name:: | Bloch |
| City of Residence:: | Brooklyn |
| State or Province of Residence:: | NY |
| Country of Residence:: | US |
| Street of mailing address:: | 150N 5th Street, Apt. 3h |
| City of mailing address:: | Brooklyn |
| State or Province of mailing address:: | NY |
| Postal or Zip Code of mailing address:: | 11211 |

| | |
|---|---|
| Inventor Number:: | 2 |
| Name Prefix:: | Mr. |
| Given Name:: | Tal |
| Family Name:: | Zubalsky |
| City of Residence:: | Brooklyn |
| State or Province of Residence:: | NY |
| Country of Residence:: | US |
| Street of mailing address:: | 101 Bedford Avenue, Apt. C-207 |
| City of mailing address:: | Brooklyn |

New 08/26/2015

**EXHIBIT 1**
**PAGE 9**

EKO0001121

| | |
|---|---|
| State or Province of mailing address:: | NY |
| Postal or Zip Code of mailing address:: | 11211 |
| | |
| Inventor Number:: | 3 |
| Name Prefix:: | Mr. |
| Given Name:: | Yuval |
| Family Name:: | Hofshy |
| City of Residence:: | Kfar Saba |
| Country of Residence:: | Israel |
| Street of mailing address:: | 56 Hagalil |
| City of mailing address:: | Kfar Saba |
| Country of mailing address:: | Israel |
| Postal or Zip Code of mailing address:: | 4423533 |
| | |
| Inventor Number:: | 4 |
| Name Prefix:: | Mr. |
| Given Name:: | Barak |
| Family Name:: | Feldman |
| City of Residence:: | Tenafly |
| State or Province of Residence:: | NJ |
| Country of Residence:: | US |
| Street of mailing address:: | 101 Windsor Road |
| City of mailing address:: | Tenafly |

New 08/26/2015

**EXHIBIT 1**
**PAGE 10**

EKO0001122

State or Province of mailing address::                    NJ

Postal or Zip Code of mailing address::                  07670


**Correspondence Information**

Correspondence Customer Number::                         051414


**Application Information**

Application Type::                                        Regular

Subject Matter::                                          Utility

CD-ROM or CD-R?::                                         None

Sequence submission?::                                    None

Computer Readable Form (CRF)?::                           No

Title::                                                   SYSTEMS AND METHODS FOR
                                                         ADAPTIVE AND RESPONSIVE
                                                         VIDEO

Attorney Docket Number::                                  ITU-017

Request for Early Publication?::                          No

Request for Non-Publication?::                            No

Total Drawing Sheets::                                    11

Small Entity?::                                           Yes

Petition included?::                                      No

Portions or all of the application associated with       No
this Application Data Sheet may fall under a
Secrecy Order pursuant to 37 CFR 5.2::

New 08/26/2015

**EXHIBIT 1**
**PAGE 11**

EKO0001123

Authorization to Permit Access to the Instant          No
Application by the Participating Offices::

**Representative Information**

Representative Customer Number::                        051414

**Domestic Priority Information**

**Foreign Priority Information**

**Applicant Information**

Applicant Number::                                     1

Applicant Type::                                       Assignee

Organization Name::                                    JBF Interlude 2009 LTD - Israel

Street of mailing address::                            3 Habarzel

City of mailing address::                              Tel Aviv-Yafo

Country of mailing address::                           Israel

Postal or Zip Code of mailing address::                69710

**Assignee Information Including Non-Applicant Assignee Information**

**EXHIBIT 1**
**PAGE 12**

EKO0001124

**Signature:**

| NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. | | | |
|---|---|---|---|
| Signature | /Steven R. Argentieri/ | Date | August 26, 2015 |
| Name | Steven R. Argentieri | Registration Number | 69,083 |

New 08/26/2015

**EXHIBIT 1**
**PAGE 13**

EKO0001125



FIG. 1

EXHIBIT 1
PAGE 14

EKO0001126



FIG. 2

EXHIBIT 1
PAGE 15

EKO0001127



FIG. 3

EXHIBIT 1
PAGE 16

EKO0001128



FIG. 4A

EXHIBIT 1
PAGE 17

EKO0001129



FIG. 4B

EXHIBIT 1
PAGE 18

EKO0001



FIG. 4C

EXHIBIT 1
PAGE 19

EKO00011



FIG. 4D

EXHIBIT 1
PAGE 20



FIG. 5A



FIG. 5B

EXHIBIT 1
PAGE 21

EKO0001133



FIG. 6

EXHIBIT 1
PAGE 22

EKO0001134



FIG. 7

EXHIBIT 1
PAGE 23

EKO0001135



FIG. 8

EXHIBIT 1
PAGE 24

EKO0001136

PATENT
ATTORNEY DOCKET NO.: ITU-017

# SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

## *Field of the Invention*

[0001]     The present disclosure relates generally to dynamic video and, more particularly, to systems and methods for dynamically modifying a video state based on changes in user device properties.

## *Background*

[0002]     The rise of the mobile web and the vast increase in different platforms and devices with different screen sizes, resolutions, and orientations, have necessitated various new techniques in web design, such as enabling a website to display differently according to the device or screen it is displayed on.  These capabilities are supported by standards like HyperText Markup Language (HTML), Cascading Style Sheets (CSS), and JavaScript, which enable designers and developers to implement responsive and adaptive websites.

[0003]     However, the responsive and adaptive features used in website design do not similarly apply to video presentations.  Digital videos have fixed resolutions, fixed proportions, and fixed content.  Dynamic changes to digital video are limited to adaptations in video size and quality to accommodate, for example, different device screen sizes or available communications bandwidth.  However, such changes have their own disadvantages.  For example, videos scaled to fit a screen size having a different aspect ratio are typically cropped, which results in a loss of content, or are letterboxed, with mattes abutting the video.

## *Summary*

[0004]     Systems and methods for responsive and adaptive video are described.  In general, the present disclosure describes a "smart video response" technique, in which video content (streaming or otherwise) can adapt in real-time, with targeted, customized, or other responsive content, to changes in properties associated with a user device, all without scaling, letterboxing, or other noted disadvantages of the prior art.

[0005]     Accordingly, in one aspect a video for playback is received at a user device having a plurality of identified associated properties.  The device properties can include, for example,

1

EXHIBIT 1
PAGE 25

EKO0001137

PATENT
ATTORNEY DOCKET NO.: ITU-017

physical orientation, model, physical screen size, screen resolution, and window size.  Based on at least one of the properties, a first state of the video is configured, and the video is presented according to the first state.  During playback of the video, a change in one of the device properties is detected, and the video is seamlessly transitioned to a second state based on the change.

[0006]     The first state of the video is configured by, for example, setting which video and/or audio content will be played, setting the dimensional ratio and/or quality of the video, and/or setting the viewing region of the video to a particular partial area of the video.  Similarly, seamlessly transitioning the video to the second state can involve changing audio/video content playback, video dimensional ratio, video quality, and/or the position, shape and/or size of the video viewing region.  The seamless transition to the second state can also include seamlessly transitioning from a first to a second video in a plurality of videos that are simultaneously received.

[0007]     In one implementation, a plurality of videos associated with a particular one of the properties is provided, and each video is associated with a different value of the particular property.  When determining that a change in a device property has occurred, the video can be seamlessly transitioned to a second video that is associated with the value of the changed property.

[0008]     Aspects of these inventions also include corresponding systems and computer programs.  Further aspects and advantages of the invention will become apparent from the following drawings, detailed description, and claims, all of which illustrate the principles of the invention, by way of example only.

## Brief Description of the Drawings

[0009]     A more complete appreciation of the invention and many attendant advantages thereof will be readily obtained as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings.  In the drawings, like reference characters generally refer to the same parts throughout the different views.  Further, the drawings are not necessarily to scale, with emphasis instead generally being placed upon illustrating the principles of the invention.

EKO0001138

[0010]     FIG. 1 depicts a high-level diagram of a system architecture according to an implementation.

[0011]     FIG. 2 depicts a video state change responsive to a rotation of a user device.

[0012]     FIG. 3 depicts a video state change responsive to a window resizing.

[0013]     FIGS. 4A–4D depict a viewport location modification responsive to a change in a user device property.

[0014]     FIGS. 5A and 5B depict viewport size and location modifications responsive to a change in a user device property.

[0015]     FIG. 6 depicts a flowchart of a method for providing adaptive and responsive media according to an implementation.

[0016]     FIG. 7 depicts a flowchart of a method for providing parallel tracks in a media presentation according to an implementation.

[0017]     FIG. 8 depicts an appending of a video portion from one of a number of parallel tracks.

## *Detailed Description*

[0018]     Described herein are various implementations of systems and methods for adaptive and responsive media, in which a media presentation (e.g., video) playing on a user device responds in real-time to a change in one or more properties of the user device by altering the content, viewport, or other characteristic relating to the presentation.

[0019]     Referring to FIG. 1, media content can be presented to a user on a user device 110 having an application 112 capable of playing and/or editing the content.  The user device 110 can be, for example, a smartphone, tablet, laptop, palmtop, wireless telephone, television, gaming device, music player, mobile telephone, information appliance, workstation, a smart or dumb terminal, network computer, personal digital assistant, wireless device, minicomputer, mainframe computer, or other computing device, that is operated as a general purpose computer or a special purpose hardware device that can execute the functionality described herein.

[0020]     The application 112 can be a video player and/or editor that is implemented as a native application, web application, or other form of software.  In some implementations, the

EXHIBIT 1
PAGE 27

EKO0001139

PATENT
ATTORNEY DOCKET NO.: ITU-017

application 112 is in the form of a web page, widget, and/or Java, JavaScript, .Net, Silverlight, Flash, and/or other applet or plug-in that is downloaded to the device and runs in conjunction with a web browser. The application 112 and the web browser can be part of a single client-server interface; for example, the application 112 can be implemented as a plugin to the web browser or to another framework or operating system. Any other suitable client software architecture, including but not limited to widget frameworks and applet technology can also be employed.

[0021]     Media content can be provided to the user device 110 by content server 102, which can be a web server, media server, a node in a content delivery network, or other content source. Application server 106 can provide the application 112 (or a portion thereof) to the user device 110. For example, some or all of the described functionality of the application 112 can be implemented in software downloaded to or existing on the user device 110 and, in some instances, some or all of the functionality exists remotely. For example, certain video encoding and processing functions can be performed on one or more remote servers, such as application server 106. In some implementations, the user device 110 serves only to provide output and input functionality, with the remainder of the processes being performed remotely.

[0022]     The user device 110, content server 102, application server 106, and/or other devices and servers can communicate with each other through communications network 114. The communication can take place via any media such as standard telephone lines, LAN or WAN links (e.g., T1, T3, 56kb, X.25), broadband connections (ISDN, Frame Relay, ATM), wireless links (802.11, Bluetooth, GSM, CDMA, etc.), and so on. The network 114 can carry TCP/IP protocol communications and HTTP/HTTPS requests made by a web browser, and the connection between clients and servers can be communicated over such TCP/IP networks. The type of network is not a limitation, however, and any suitable network can be used.

[0023]     As a general matter, the techniques described herein can be implemented in any appropriate hardware or software. If implemented as software, the processes can execute on a system capable of running one or more commercial operating systems such as the Microsoft Windows® operating systems, the Apple OS X® operating systems, the Apple iOS® platform, the Google Android™ platform, the Linux® operating system and other variants of UNIX® operating systems, and the like. The software can be implemented on a general purpose computing device

4

**EXHIBIT 1**
**PAGE 28**

EKO0001140

PATENT
ATTORNEY DOCKET NO.: ITU-017

in the form of a computer including a processing unit, a system memory, and a system bus that couples various system components including the system memory to the processing unit.

[0024]    If implemented as software, such software can include a plurality of software modules stored in a memory and executed on one or more processors. The modules can be in the form of a suitable programming language, which is converted to machine language or object code to allow the processor or processors to read the instructions. The software can be in the form of a standalone application, implemented in any suitable programming language or framework.

[0025]    Method steps of the techniques described herein can be performed by one or more programmable processors executing a computer program to perform functions of the invention by operating on input data and generating output. Method steps can also be performed by, and apparatus of the invention can be implemented as, special purpose logic circuitry, e.g., an FPGA (field programmable gate array) or an ASIC (application-specific integrated circuit). Modules can refer to portions of the computer program and/or the processor/special circuitry that implements that functionality.

[0026]    Processors suitable for the execution of a computer program include, by way of example, both general and special purpose microprocessors, and any one or more processors of any kind of digital computer. Generally, a processor will receive instructions and data from a read-only memory or a random access memory or both. The essential elements of a computer are a processor for executing instructions and one or more memory devices for storing instructions and data. Information carriers suitable for embodying computer program instructions and data include all forms of non-volatile memory, including by way of example semiconductor memory devices, e.g., EPROM, EEPROM, and flash memory devices; magnetic disks, e.g., internal hard disks or removable disks; magneto-optical disks; and CD-ROM and DVD-ROM disks. One or more memories can store media assets (e.g., audio, video, graphics, interface elements, and/or other media files), configuration files, and/or instructions that, when executed by a processor, form the modules, engines, and other components described herein and perform the functionality associated with the components. The processor and the memory can be supplemented by, or incorporated in special purpose logic circuitry.

5

**EXHIBIT 1**
**PAGE 29**

EKO0001141

PATENT
ATTORNEY DOCKET NO.: ITU-017

[0027]      It should also be noted that the present implementations can be provided as one or more computer-readable programs embodied on or in one or more articles of manufacture.  The article of manufacture can be any suitable hardware apparatus, such as, for example, a floppy disk, a hard disk, a CD-ROM, a CD-RW, a CD-R, a DVD-ROM, a DVD-RW, a DVD-R, a flash memory card, a PROM, a RAM, a ROM, or a magnetic tape.  In general, the computer-readable programs can be implemented in any programming language. The software programs can be further translated into machine language or virtual machine instructions and stored in a program file in that form.  The program file can then be stored on or in one or more of the articles of manufacture.

[0028]      FIG. 2 depicts a user device in the form of a smartphone 200 having a number of associated properties.  One example property of the smartphone 200 is its physical orientation, which can refer to the alignment of the smartphone screen in a portrait or landscape mode.  The orientation can also include a rotational position of the smartphone 200 in three-dimensional space determined based on readings from a sensor (e.g., gyroscope) in the device.  Other properties of user devices, such as smartphone 200, can include screen resolution, aspect ratio, display proportions, and physical screen size.  Device properties can also include the type of device (e.g., smartphone, smart watch, desktop, laptop, gaming device, television, etc.), model, brand, and other physical characteristics of the device.  In some implementations, the existence of a particular device property depends on the device type and/or software operating on the device (e.g., operating system).  For example, for device operating systems that support windowed applications (e.g., desktops, laptops, televisions, or other devices supporting Microsoft Windows® operating systems or Apple OS X® operating systems), one device property can be the window size (e.g., height and width values) of a media player application (e.g., native application, browser, or otherwise), or the window state (e.g., minimized, maximized, in thumbnail) of a media player application.

[0029]      As shown in FIG.2, smartphone 200 is rotatable between a portrait mode A and a landscape mode B.  In a typical mode of operation, when a mobile device, such as a smartphone or tablet, is displaying a video, photograph, webpage, or the like, rotating the device between portrait and landscape results in a rotation of the item displayed on the device screen in order to maintain the orientation of the item while, in some cases, simultaneously resizing the item to fit to the current screen proportions.  For example, an image that occupies the entire device screen

6

**EXHIBIT 1**
**PAGE 30**

EKO0001142

PATENT
ATTORNEY DOCKET NO.: ITU-017

in landscape mode will retain its orientation when the device is rotated to portrait mode, but is resized so that the width of the image fits within the narrower width of the portrait screen, resulting in mattes displayed above and below the image.

[0030]     Advantageously, the present technique provides further enhancements to the user's media viewing experience beyond simple rotation or resizing of images or videos. For instance, in one implementation, the rotation of the smartphone 200 from portrait mode A to landscape mode B results in a change in the state of the video presentation (in this example, a change in the video and/or audio content). Still referring to FIG. 2, a smartphone user watching a music video can seamlessly alternate between two distinct views of the video by switching between portrait and landscape modes. As depicted, when the smartphone 200 is positioned in portrait mode A, video of the lead singer 210 is shown to the user. Upon rotating the smartphone 200 to landscape mode B, the video changes to show the rest of the band 220. In some implementations, the audio plays continuously and seamlessly when changing between modes, such that no user-perceptible gaps, pauses, or buffering occurs. The same audio can be played independent of the display mode of the smartphone 200 or, in some instances, the audio can be altered, enhanced, or otherwise differ among modes (e.g., when in portrait mode A, the volume of the lead singer's vocals can be emphasized relative to the musical instruments of the band 220 and, when in portrait mode B, the sound of the instruments can be emphasized).

[0031]     It should be appreciated that the present technique is not limited to two display modes (i.e., landscape and portrait). Rather, various combinations of audio, video, and/or other media content can be shown based on any rotation or positioning of a user device. For example, a first video may be shown when in portrait mode, a second video when changing to landscape mode by rotating the device counter-clockwise, a third video when changing to landscape mode by rotating the device clockwise, a fourth video when tilting the device away from the user, a fifth video when tilting the device toward the user, a sixth video when laying the device flat, and so on.

[0032]     FIG. 3 depicts a concept similar to that shown in FIG. 2, with a windowed media player 300 on a desktop computer, laptop, or other user device supporting windowed applications. In this instance, rather than physically rotating or repositioning the user device, the user changes the window size or state (e.g., minimized, maximized, thumbnailed) of the media

EKO0001143

PATENT
ATTORNEY DOCKET NO.: ITU-017

player 300 using an input device (e.g., mouse, keyboard, touchscreen, etc.). In some instances, the media player 300 is resizable to fixed dimensions and will "snap to" the closest size as a user resizes the associated window. Different media content can be associated with each fixed window dimension (defined height and width). For example, using the same music video example as described with respect to FIG. 2, upon changing from fixed dimensions X to fixed dimensions Y, the video shown in the media player 300 can change from the singer 210 to the band 220. There can be multiple fixed dimensions with varying audio and/or video content associated with particular fixed dimensions.

[0033]   In some implementations, instead of limiting the windowed media player 250 to fixed dimensions, ranges for window heights and/or widths can be defined and associated with differing media content. For example, assuming the height and width of a particular window can be individually resized to occupy between 5% and 100% of a screen, Table 1 indicates which of three different videos is presented depending on current window dimensions.

| Window Height Range | Window Width Range | Video |
|---|---|---|
| 5% to < 50% | 5% to 100% | Video 1 |
| 50% to 100% | 5% to < 25% | Video 2 |
| 50% to 100% | 25% to 100% | Video 3 |

Table 1

[0034]   In addition to changes in audio and video content, as described above, other states of playing media can be dynamically modified in real-time based on a change to a device property (or a combination of device properties). Such states can include, but are not limited to, video aspect ratio, video dimensions, video and/or audio quality, viewport (i.e., the portion of the video visible to the user), video and/or audio playback speed, audio volume, and audio/video sound mix.

[0035]   In one example, a change in a property associated with a user device can result in a change in the size and/or position of the viewport. Referring to FIGS. 4A–4D, a video 400 of a family is provided to a user device 402; however, only a portion of the video 400 is viewable by the user at any point in time during playback of the video 400. The viewable portion is defined by the viewport 410, which can be resized, rotated, or moved around about the video 400 during

EKO0001144

PATENT
ATTORNEY DOCKET NO.: ITU-017

playback in response to change in a device property.  In one implementation, the viewport is a mask layered over the video that includes a resizable transparent area allowing the user to see a portion of the underlying video.  To reposition the viewport 410, the mask can be moved with respect to the video 400 and/or the video 400 can be moved with respect to the mask.

[0036]    As depicted, initially, the viewport 410 allows the user to see video playback of the mother 422 (FIG. 4A).  Upon the user tilting the device 402 in a clockwise direction (e.g., in the case of a smartphone, briefly rotating the smartphone clockwise and returning it to the 12 o'clock position), the viewport 410 can change to show video of the father 424 (FIG. 4B).  The viewport 410 can move from the mother 422 to the father 424 while the device 402 is being tilted, or can directly switch to the father 424 upon completing the tilting motion.  Similarly, the user can tilt the device 402 again in the clockwise direction to change the viewport 410 to video of the young boy 426 (FIG. 4C), or can tilt the device 402 repeatedly in the counter-clockwise direction to change the viewport 410 to video of the young girl 428 (FIG. 4D).  In some implementations, a single rotational motion can move the viewport 410 among family members that are one or more persons apart, depending on the amount of rotation (e.g., a 90-degree rotation clockwise moves the viewport from the mother 422 to the boy 426, a 180-degree rotation counter-clockwise moves the viewport from the boy 426 to the girl 428, and so on).

[0037]    FIGS. 5A and 5B depict a change in device property which results in the viewport 510a to a lecture video 500 changing both size and location.  In the first instance, in FIG. 5A, the viewport 510a allows the user to view the full height (300 units) and width (450 units) of the video 500, thereby displaying the full dimensions of the lecture video 500, including the speaker, presentation screen, and audience.  The viewport 510a is a rectangular shape (although other shapes are contemplated), and the upper left-hand corner of the viewport 510a is positioned at coordinates (0, 0).  Referring now to FIG. 5B, upon detecting a change in a property of the device (e.g., the device is rotated from landscape to portrait mode), the viewport 510b is modified in size and repositioned to better accommodate the modified state of the device.  Specifically, the viewport 510b is modified to a size that better fills the screen of the user device (height = 300 units, width = 200 units) and is positioned with the upper left-hand corner at coordinates (200, 0), to better focus on the speaker.  The video and viewport may be zoomed out or in so that the viewport fills the height and/or width of the device display.

EKO0001145

PATENT
ATTORNEY DOCKET NO.: ITU-017

[0038] It should be noted that changes in various combinations of media states can occur based on a change in one or more device properties. For example, rotating a device so that it changes from portrait to landscape mode can result in a combined change in video content, audio volume, and viewport size for a particular media presentation. As another example, the audio content of a media presentation can change upon the occurrence of multiple property changes simultaneously or within a particular time period, such as two tilt movements in the same direction within three seconds.

[0039] In addition to the music and lecture videos described above, the techniques described herein have wide applicability and are useful in a variety of situations. In one example, a movie watched in landscape mode on a user device includes a director's commentary audio track in which, from time to time, the director provides commentary on scenes in the movie currently being watched. During playback of the video and audio, upon changing the orientation of the device to portrait mode, accompanying video of the director providing the commentary is shown instead of the movie. For example, the director can be shown sitting in front of a monitor and pointing out various details in the film as he comments. Of note, the transition between landscape and portrait mode, and vice-versa, is seamless, such that the audio commentary is continuously synchronized and continues playback without buffering or delay from the same point in time where the switch is made. In another example, a full-screen video includes video thumbnails (e.g., picture-in-picture) of parallel video tracks. A user interacting with the full-screen video can select one of the thumbnails to switch seamlessly to the parallel track.

[0040] In accordance with the systems and techniques described herein, FIG. 6 depicts one implementation of a method for providing adaptive and responsive video. In STEP 602, an application on a user device, such as a media player on a smartphone or tablet, identifies one or more properties associated with the device. The identified properties can be limited to a subset of device properties that the application considers in determining whether to change the state of the video (e.g., orientation, window size, and/or other device properties). A video for playback is received at the device (STEP 604), and the first state of the video is configured based on one or more of the identified properties (STEP 606). For example, if the device is currently in landscape mode, a video suitable for landscape mode can be set for initial playback. In STEP 608, the video is played according to the configured first state.

**EXHIBIT 1**
**PAGE 34**

EKO0001146

PATENT
ATTORNEY DOCKET NO.: ITU-017

[0041]    During presentation of the video, the application determines whether there has been a change in one or more of the identified properties associated with the device (STEP 610).  For example, the application may determine that the device has been rotated from a landscape orientation to a portrait orientation.  If a change in a relevant property is detected, and there is a different video state associated with the change, the application seamlessly transitions the video to a second state based on the change.  Referring to the previous example, if there is different video content associated with the portrait orientation, the different video content can be seamlessly and instantly switched to upon the change in the device orientation property from landscape to portrait.  The video can continue to play uninterrupted (return to STEP 608), and subsequent property changes can be detected and state transitions made.

[0042]    Various techniques can be used for real-time modification of the state of a media presentation (e.g., switching currently playing media content) in response to a change in a user device property or properties.  For example, in addition to the masking/viewport technique applied to a single video, as described above, a media presentation can be dynamically modified using "parallel tracks," as disclosed in U.S. Patent Application No. 14/534,626, filed on November 6, 2014, and entitled "Systems and Methods for Parallel Track Transitions," the entirety of which is incorporated by reference herein.

[0043]    For example, referring to FIG.7, to facilitate near-instantaneous switching among parallel "tracks" or "channels", multiple media tracks (e.g., video streams) can be downloaded simultaneously to a user's device, in separate data streams and/or combined together in container structures with associated metadata.  Upon selecting a streaming video for playback, an upcoming portion of the video stream is typically buffered by a video player prior to commencing playback of the video, and the video player can continue buffering as the video is playing.  Accordingly, in one implementation, if an upcoming segment of a video presentation (including the beginning of the presentation) includes two or more parallel tracks, an application on the user device(e.g., a video player) can initiate download of the upcoming parallel tracks (in this example, three tracks) substantially simultaneously (STEP 702).  The application can then simultaneously receive and/or retrieve video data portions of each track (STEP 712).  The receipt and/or retrieval of upcoming video portions of each track can be performed prior to playback of any particular parallel track as well as during playback of a parallel track.  The downloading of video data in parallel tracks can be achieved in accordance with smart downloading techniques

**EXHIBIT 1
PAGE 35**

EKO0001147

PATENT
ATTORNEY DOCKET NO.: ITU-017

such as those described in U.S. Patent No. 8,600,220, issued on December 3, 2013, and entitled
"Systems and Methods for Loading More than One Video Content at a Time," the entirety of
which is incorporated by reference herein.

[0044]      Upon reaching a segment of the video presentation that includes parallel tracks, the
application makes a determination in real-time of which track to play (STEP 720).  The
determination can be based on the state of one or more device properties.  For example, in one
implementation, each parallel track is mapped to one or more device properties, such as screen
size, window size, or device orientation and/or a value of a particular device property, such as
screen size = 3in. x 4.5 in., window size = 1024 pixels x 768 pixels, or orientation = "landscape".
This mapping information can be included in the metadata associated with each track that is
transmitted to the user device.  Upon initially playing the parallel video, the initial or current
state of  one or more device properties is determined, and the track associated with that property
or properties is played.  For example, if the device is oriented in portrait mode when the video
commences, a parallel track associated with the device property value = "portrait" can be
selected as the track to play.

[0045]      In STEP 724, based on the determined track to play, the application appends a portion
of the video data from the determined track to the current video being presented.  The appended
portion can be in temporal correspondence with an overall timeline of the video presentation.
For example, if two parallel tracks are 30 seconds long and begin at the same time, a switch from
the first track (e.g., at 10 seconds in) to the second track results in playback continuing with the
second track video at the same point in time (i.e., at 10 seconds in).  One will appreciate,
however, that tracks can overlap in various manners and may not correspond in length.
Following the appending, playback of the video continues using the appended video data from
the determined track (STEP 728).  As the video is playing, the relevant properties of the device
can be monitored to detect any changes that may affect which parallel track should be selected
for playback (return to STEP 720).  If, for example, the device is rotated into landscape mode,
the property change is identified and the video for a parallel track associated with the landscape
mode can be switched to immediately or after a delay.  Switching among tracks can be seamless,
such that no noticeable delays, buffering, or gaps in audio and/or video playback occur.

**EXHIBIT 1**
**PAGE 36**

EKO0001148

PATENT
ATTORNEY DOCKET NO.: ITU-017

[0046] FIG. 8 provides an abstracted visual representation of the process in FIG. 7. Specifically, three parallel tracks 802 of the same length are simultaneously downloaded, and, in this example, each of the tracks 802 has been downloaded approximately in the same amount (represented by downloaded video 812), with approximately the same amount of each track to be downloaded (represented by remaining video to download 816). The video player or other application includes a function 820 that determines which track should be selected and played, and a portion 808 of the selected track is appended to the currently playing video, after the played video 804 up to that point.

[0047] In one implementation, the appended portion 808 is relatively short in length (e.g., 100 milliseconds, 500 milliseconds, 1 second, 1.5 seconds, etc.). Advantageously, the short length of the appended portion 808 provides for near-instantaneous switching to a different parallel track. For example, while the video is playing, small portions of the selected parallel track are continuously appended onto the video. In one instance, this appending occurs one portion at a time and is performed at the start of or during playback of the most recently appended portion 808. If a determination is made that a different parallel track has been selected, the next appended portion(s) will come from the different track. Thus, if the appended video portion 808 is 500 milliseconds long and a selection of a different track is made at the start of or during playback of the portion 808, then the next portion from the different track will be appended on the video and presented to the user no more than 500 milliseconds after the selection of the different track. As such, for appended portions of short length, the switch from one parallel track to another can be achieved with an imperceptible delay.

[0048] In one implementation, dynamically adapting media content to changes in device properties can be incorporated into branched media presentations, such as interactive video structured in a video tree, hierarchy, or other form. A video tree can be formed by nodes that are connected in a branching, hierarchical, or other linked form. Nodes can each have an associated video segment, audio segment, graphical user interface (GUI) elements, and/or other associated media. Users (e.g., viewers) can watch a video that begins from a starting node in the tree and proceeds along connected nodes in a branch or path. Upon reaching a point during playback of the video where multiple video segments branch off from a segment, the next video segment to watch can be selected based on the state of a device property. For example, the user can interactively select the branch or path to traverse by physically manipulating the orientation of

**EXHIBIT 1**
**PAGE 37**

EKO0001149

PATENT
ATTORNEY DOCKET NO.: ITU-017

the user device (e.g., tilting or rotating a smartphone or tablet).  As another example, the branch
to traverse can be automatically determined based on, e.g., the current device orientation, screen
size, window size, or other device property.

[0049]      As referred to herein, a particular branch or path in an interactive media structure,
such as a video tree, can refer to a set of consecutively linked nodes between a starting node and
ending node, inclusively, or can refer to some or all possible linked nodes that are connected
subsequent to (e.g., sub-branches) or that include a particular node.  Branched video can include
seamlessly assembled and selectably presentable multimedia content such as that described in
U.S. Patent Application Serial No. 13/033,916, filed on February 24, 2011, and entitled "System
and Method for Seamless Multimedia Assembly" (the "Seamless Multimedia Assembly
application"), and U.S. Patent Application No. 14/107,600, filed on December 16, 2013, and
entitled "Methods and Systems for Unfolding Video Pre-Roll," the entireties of which are hereby
incorporated by reference.

[0050]      The prerecorded video segments in a video tree or other structure can be selectably
presentable multimedia content; that is, some or all of the video segments in the video tree can be
individually or collectively played for a user based upon the user's selection of a particular video
segment, an interaction with a previous or playing video segment, or other interaction that results
in a particular video segment or segments being played.  The video segments can include, for
example, one or more predefined, separate multimedia content segments that can be combined in
various manners to create a continuous, seamless presentation such that there are no noticeable
gaps, jumps, freezes, delays, or other visual or audible interruptions to video or audio playback
between segments.  In addition to the foregoing, "seamless" can refer to a continuous playback
of content that gives the user the appearance of watching a single, linear multimedia
presentation, as well as a continuous playback of multiple content segments that have smooth
audio and/or video transitions (e.g., fadeout/fade-in, linking segments) between two or more of
the segments.

[0051]      In some instances, the user is permitted to make choices or otherwise interact in real-
time at decision points or during decision periods interspersed throughout the multimedia
content.  This can be accomplished, for example, by the user interacting with a user interface or
changing a property of the user device.  Decision points and/or decision periods can occur at any

PATENT
ATTORNEY DOCKET NO.: ITU-017

time and in any number during a multimedia segment, including at or near the beginning and/or the end of the segment. Decision points and/or periods can be predefined, occurring at fixed points or during fixed periods in the multimedia content segments. Based at least in part on the user's choices made before or during playback of content, one or more subsequent multimedia segment(s) associated with the choices can be presented to the user. In some implementations, the subsequent segment is played immediately and automatically following the conclusion of the current segment, whereas in other implementations, the subsequent segment is played immediately upon the user's interaction with the video, without waiting for the end of the decision period or the end of the segment itself.

[0052]    If a user does not make a selection at a decision point or during a decision period, a device property-based, default, previously identified selection, or random selection can be automatically made by the system. In some instances, the user is not provided with options; rather, the system automatically selects the segments that will be shown based on information that is associated with the device, the user, other users, or other factors, such as the current date. For example, the present system can automatically select subsequent segments based on the device type, orientation, screen resolution, aspect ratio, display proportions, physical screen size, window size, window state, and other device properties. As another example, the system can automatically select subsequent segments based on the user's IP address, location, time zone, the weather in the user's location, social networking ID, saved selections, stored user profiles, preferred products or services, and so on. The system can also automatically select segments based on previous selections made by other users, such as the most popular suggestion or shared selections. The information can also be displayed to the user in the video, e.g., to show the user why an automatic selection is made. As one example, video segments can be automatically selected for presentation based on the geographical location of three different users: a user in Canada will see a twenty-second beer commercial segment followed by an interview segment with a Canadian citizen; a user in the US will see the same beer commercial segment followed by an interview segment with a US citizen; and a user in France is shown only the beer commercial segment.

[0053]    Multimedia segment(s) selected automatically or by a user can be presented immediately following a currently playing segment, or can be shown after other segments are played. Further, the selected multimedia segment(s) can be presented to the user immediately

15

**EXHIBIT 1**
**PAGE 39**

EKO0001151

PATENT
ATTORNEY DOCKET NO.: ITU-017

after selection, after a fixed or random delay, at the end of a decision period, and/or at the end of the currently playing segment. Two or more combined segments can form a seamless multimedia content path or branch, and users can take multiple paths over multiple play-throughs, and experience different complete, start-to-finish, seamless presentations. Further, one or more multimedia segments can be shared among intertwining paths while still ensuring a seamless transition from a previous segment and to the next segment. The content paths can be predefined, with fixed sets of possible transitions in order to ensure seamless transitions among segments. The content paths can also be partially or wholly undefined, such that, in some or all instances, the user can switch to any known video segment without limitation. There can be any number of predefined paths, each having any number of predefined multimedia segments. Some or all of the segments can have the same or different playback lengths, including segments branching from a single source segment.

[0054]    Traversal of the nodes along a content path in a tree can be performed by selecting among options that appear on and/or around the video while the video is playing or by automatic path selection, as described above. In some implementations, user-selectable options are presented to users at a decision point and/or during a decision period in a content segment. Some or all of the displayed options can hover and then disappear when the decision period ends or when an option has been selected. Further, a timer, countdown or other visual, aural, or other sensory indicator can be presented during playback of content segment to inform the user of the point by which he should (or, in some cases, must) make his selection. For example, the countdown can indicate when the decision period will end, which can be at a different time than when the currently playing segment will end. If a decision period ends before the end of a particular segment, the remaining portion of the segment can serve as a non-interactive seamless transition to one or more other segments. Further, during this non-interactive end portion, the next multimedia content segment (and other potential next segments) can be downloaded and buffered in the background for later playback (or potential playback).

[0055]    A segment that is played after (immediately after or otherwise) a currently playing segment can be determined based on an option selected or other interaction with the video. Each available option can result in a different video and audio segment being played. As previously mentioned, the transition to the next segment can occur immediately upon selection, at the end of the current segment, or at some other predefined or random point. Notably, the transition

EKO0001152

PATENT
ATTORNEY DOCKET NO.: ITU-017

between content segments can be seamless.  In other words, the audio and video continue playing regardless of whether a segment selection is made, and no noticeable gaps appear in audio or video playback between any connecting segments.  In some instances, the video continues on to another segment after a certain amount of time if none is chosen, or can continue playing in a loop.

[0056]    Although the systems and methods described herein relate primarily to audio and video playback, the invention is equally applicable to various streaming and non-streaming media, including animation, video games, interactive media, and other forms of content usable in conjunction with the present systems and methods.  There can be more than one audio, video, and/or other media content stream played in synchronization with other streams.  Streaming media can include, for example, multimedia content that is continuously presented to a user while it is received from a content delivery source, such as a remote video server.  If a source media file is in a format that cannot be streamed and/or does not allow for seamless connections between segments, the media file can be transcoded or converted into a format supporting streaming and/or seamless transitions.

[0057]    While various implementations of the present invention have been described herein, it should be understood that they have been presented by example only.  Where methods and steps described above indicate certain events occurring in certain order, those of ordinary skill in the art having the benefit of this disclosure would recognize that the ordering of certain steps can be modified and that such modifications are in accordance with the given variations.  For example, although various implementations have been described as having particular features and/or combinations of components, other implementations are possible having any combination or sub-combination of any features and/or components from any of the implementations described herein.

EXHIBIT 1
PAGE 41

EKO0001153

PATENT
ATTORNEY DOCKET NO.: ITU-017

## *Claims*

What is claimed is:

1.     A computer-implemented method comprising:

identifying one or more properties associated with a user device;

receiving a video for playback on the user device;

configuring a first state of the video based on at least one of the properties associated with the user device;

presenting the video according to the first state; and

during playback of the video:

determining that a change in at least one of the properties associated with the user device has occurred;

seamlessly transitioning the video to a second state based on the change.

2.     The method of claim 1, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

3.     The method of claim 1, wherein configuring the first state of the video comprises at least one of setting which video content to play and setting which audio content to play.

4.     The method of claim 1, wherein configuring the first state of the video comprises at least one of setting a dimensional ratio of the video and setting a quality of the video.

5.     The method of claim 1, wherein configuring the first state of the video comprises setting a viewing region of the video to a partial area of the video.

**EXHIBIT 1**
**PAGE 42**

EKO0001154

PATENT
ATTORNEY DOCKET NO.: ITU-017

6.     The method of claim 1, further comprising receiving simultaneously a plurality of videos, and wherein seamlessly transitioning the video to the second state comprises seamlessly transitioning from a first one of the videos to a second one of the videos.

7.     The method of claim 1, further comprising providing a plurality of videos associated with a particular one of the properties, wherein each video is associated with a different value of the particular property, wherein the determining comprises determining that a change in the particular property has occurred, and wherein the transitioning comprises transitioning the video to a second one of the videos, wherein the second one of the videos is associated with a value to which the particular property changed.

8.     The method of claim 1, wherein seamlessly transitioning the video to a second state comprises changing at least one of video content playback and audio content playback.

9.     The method of claim 1, wherein seamlessly transitioning the video to a second state comprises changing at least one of a dimensional ratio of the video and a quality of the video.

10.    The method of claim 1, wherein seamlessly transitioning the video to a second state comprises modifying at least one of a position, a shape, and a size of a viewing region of the video.

11.    A system comprising:

       at least one memory storing computer-executable instructions;

       at least one processor for executing the instructions storing on the memory, wherein execution of the instructions programs to at least one processor to perform operations comprising:

              identifying one or more properties associated with a user device;

19

**EXHIBIT 1**
**PAGE 43**

EKO0001155

PATENT
ATTORNEY DOCKET NO.: ITU-017

receiving a video for playback on the user device;

configuring a first state of the video based on at least one of the properties associated with the user device;

presenting the video according to the first state; and

during playback of the video:

determining that a change in at least one of the properties associated with the user device has occurred;

seamlessly transitioning the video to a second state based on the change.

12.     The system of claim 11, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

13.     The system of claim 11, wherein configuring the first state of the video comprises at least one of setting which video content to play and setting which audio content to play.

14.     The system of claim 11, wherein configuring the first state of the video comprises at least one of setting a dimensional ratio of the video and setting a quality of the video.

15.     The system of claim 11, wherein configuring the first state of the video comprises setting a viewing region of the video to a partial area of the video.

16.     The system of claim 11, wherein the operations further comprise receiving simultaneously a plurality of videos, and wherein seamlessly transitioning the video to the second state comprises seamlessly transitioning from a first one of the videos to a second one of the videos.

**EXHIBIT 1**
**PAGE 44**

EKO0001156

PATENT
ATTORNEY DOCKET NO.: ITU-017

17.    The system of claim 11, wherein the operations further comprise  providing a plurality of videos associated with a particular one of the properties, wherein each video is associated with a different value of the particular property, wherein the determining comprises determining that a change in the particular property has occurred, and wherein the transitioning comprises transitioning the video to a second one of the videos, wherein the second one of the videos is associated with a value to which the particular property changed.

18.    The system of claim 11, wherein seamlessly transitioning the video to a second state comprises changing at least one of video content playback and audio content playback.

19.    The system of claim 11, wherein seamlessly transitioning the video to a second state comprises changing at least one of a dimensional ratio of the video and a quality of the video.

20.    The system of claim 11, wherein seamlessly transitioning the video to a second state comprises modifying at least one of a position, a shape, and a size of a viewing region of the video.

EKO0001157

PATENT
ATTORNEY DOCKET NO.: ITU-017

## *Abstract*

Systems and methods for providing adaptive and responsive media are disclosed. In various implementations, a video for playback is received at a user device having a plurality of associated properties. Based on at least one of the properties, a first state of the video is configured, and the video is presented according to the first state. During playback of the video, a change in one of the device properties is detected, and the video is seamlessly transitioned to a second state based on the change.

**EXHIBIT 1**
**PAGE 46**

EKO0001158

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

51414      7590      09/23/2016
GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 Northern Avenue
BOSTON, MA 02210

| EXAMINER |
|---|
| SMITH, STEPHEN R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/23/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PATENTBOS@GOODWINPROCTER.COM
PSOUSA-ATWOOD@GOODWINPROCTER.COM
GLENN.WILLIAMS@GOODWINPROCTER.COM

| **Office Action Summary** | Application No. 14/835,857 | Applicant(s) BLOCH ET AL. |
|---|---|---|
| | Examiner STEPHEN SMITH | Art Unit 2484 | AIA (First Inventor to File) Status Yes |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>08/26/2015</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>1-20</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐ Claim(s) _____ is/are allowed.
7)☒ Claim(s) <u>1-20</u> is/are rejected.
8)☐ Claim(s) _____ is/are objected to.
9)☐ Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☒ The drawing(s) filed on <u>08/26/2015</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
        a)☐ All   b)☐ Some**  c)☐ None of the:
        1.☐  Certified copies of the priority documents have been received.
        2.☐  Certified copies of the priority documents have been received in Application No. _____.
        3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
4) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 11-13)                    **Office Action Summary**                    Part of Paper No./Mail Date 20160916

**EXHIBIT 1**
**PAGE 48**

EKO0001816

Application/Control Number: 14/835,857                                              Page 2

Art Unit: 2484

## DETAILED ACTION

This Office action is in response to claims 1-20 filed 08/26/2015.

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

- **Claims 1-20** are rejected under 35 U.S.C. 102(a)(1) as being anticipated

  by US 20120147954 A1 to Kasai et al. (hereinafter "Kasai").

**EXHIBIT 1**
**PAGE 49**

EKO0001817

Application/Control Number: 14/835,857                                        Page 3
Art Unit: 2484

Regarding **claim 1**, Kasai discloses a computer-implemented method comprising:

identifying one or more properties associated with a user device ("viewpoint information" defining size and position of a viewing desired region is continuously transmitted from the client to the server [0051]-[0053], [0093]-[0095], 213b of Fig. 1);

receiving a video for playback on the user device ([0056], [0064]);

configuring a first state of the video based on at least one of the properties associated with the user device (a bit stream of a particular resolution corresponding to the region specified by the viewpoint information is extracted and transmitted to the client [0056], [0063]-[0065]);

presenting the video according to the first state (displaying on the screen of the client [0061], Fig. 1); and

during playback of the video:

determining that a change in at least one of the properties associated with the user device has occurred (control of switching is carried out based on content of viewpoint information [0064], which is continuously transmitted from the client to the server [0053]);

seamlessly transitioning the video to a second state based on the change (control of bit stream switching is based on the viewpoint information [0064], and a peripheral bit stream enables seamless/fast switching to the different viewpoint [0166]-[0168]).

EXHIBIT 1
PAGE 50

EKO0001818

Application/Control Number: 14/835,857                                            Page 4
Art Unit: 2484

Regarding **claim 2**, Kasai discloses the method of claim 1, wherein the

properties are selected from the group consisting of physical orientation, model,

physical screen size, screen resolution, and window size (the viewpoint information

defines the size/resolution and position of a viewing desired region [0053], [0093]-

[0096]).

Regarding **claim 3**, Kasai discloses the method of claim 1, wherein configuring

the first state of the video comprises at least one of setting which video content to play

and setting which audio content to play (a bit stream, i.e., video, of a particular

resolution corresponding to the region specified by the viewpoint information is

extracted and transmitted to the client [0056], [0063]-[0065], Fig. 1).

Regarding **claim 4**, Kasai discloses the method of claim 1, wherein configuring

the first state of the video comprises at least one of setting a dimensional ratio of the

video and setting a quality of the video (a bit stream of a particular resolution, i.e.,

quality, corresponding to the region specified by the viewpoint information is extracted

and transmitted to the client [0056], [0063]-[0065], Fig. 1).

Regarding **claim 5**, Kasai discloses the method of claim 1, wherein configuring

the first state of the video comprises setting a viewing region of the video to a partial

area of the video (it is possible for a user to specify a viewing desired region by having a

EXHIBIT 1
PAGE 51

EKO0001819

Application/Control Number: 14/835,857                                           Page 5
Art Unit: 2484

configuration wherein a small frame is displayed on a screen of a display section of the

client [0051], 213a of Fig. 1).

Regarding **claim 6**, Kasai discloses the method of claim 1, further comprising

receiving simultaneously a plurality of videos, and wherein seamlessly transitioning the

video to the second state comprises seamlessly transitioning from a first one of the

videos to a second one of the videos (an additional peripheral bit stream enables

seamless/fast switching to the different viewpoint [0166]-[0168]).

Regarding **claim 7**, Kasai discloses the method of claim 1, further comprising

providing a plurality of videos associated with a particular one of the properties, wherein

each video is associated with a different value of the particular property (divided region

video bit streams corresponding to each resolution are generated and stored [0055]-

[0058]), wherein the determining comprises determining that a change in the particular

property has occurred, and wherein the transitioning comprises transitioning the video

to a second one of the videos, wherein the second one of the videos is associated with

a value to which the particular property changed (control of switching is carried out

based on content of viewpoint information [0064], which is continuously transmitted from

the client to the server [0053]).

Regarding **claim 8**, Kasai discloses the method of claim 1, wherein seamlessly

transitioning the video to a second state comprises changing at least one of video

EXHIBIT 1
PAGE 52

EKO0001820

Application/Control Number: 14/835,857                                                    Page 6
Art Unit: 2484

content playback and audio content playback (a bit stream, i.e., video, of a particular

resolution corresponding to the region specified by the viewpoint information is

extracted and transmitted to the client [0053], [0056], [0063]-[0065], such that the client

can switch rapidly [0164]).


Regarding **claim 9**, Kasai discloses the method of claim 1, wherein seamlessly

transitioning the video to a second state comprises changing at least one of a

dimensional ratio of the video and a quality of the video (a bit stream of a particular

resolution, i.e., quality, corresponding to the region specified by the viewpoint

information is extracted and transmitted to the client [0053], [0056], [0063]-[0065], Fig.

1)**.**


Regarding **claim 10**, Kasai discloses the method of claim 1, wherein seamlessly

transitioning the video to a second state comprises modifying at least one of a position,

a shape, and a size of a viewing region of the video (the viewpoint information defines

the size/resolution and position of a viewing desired region [0053], [0093]-[0096], and

the bit stream of a particular resolution corresponding to the region specified by the

viewpoint information is extracted and transmitted to the client for display [0053], [0056],

[0063]-[0065], such that the client can switch rapidly [0164])**.**


Regarding claims **11-20**, the system of claims 11-20 is rejected along the same

rational as the method of claims 1-10, respectively. Additionally, Kasai teaches a client-

EXHIBIT 1
PAGE 53

EKO0001821

Application/Control Number: 14/835,857                                         Page 7

Art Unit: 2484

server system [0042], or a TV receiver system [0186], either of which necessarily

incorporate conventional computing elements such as a memory storing computer-

executable instructions and at least one processor for executing the instructions to

perform the claimed method.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to STEPHEN SMITH whose telephone number is

(571)270-1318.  The examiner can normally be reached on Monday through Friday.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Thai Tran can be reached on (571) 272-7382.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

**EXHIBIT 1**
**PAGE 54**

EKO0001822

Application/Control Number: 14/835,857                                    Page 8
Art Unit: 2484

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/S. S./
Examiner, Art Unit 2484

/Thai Tran/
Supervisory Patent Examiner, Art Unit 2484

EXHIBIT 1
PAGE 55

EKO0001823

Docket No.: ITU-017
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Yoni Bloch et al.

| | |
|---|---|
| Application No.: 14/835,857 | Confirmation No.: 6941 |
| Filed: August 26, 2015 | Art Unit: 2484 |
| For:  SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO | Examiner: S. R. Smith |

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION UNDER 37 C.F.R. § 1.111

In response to the Office action dated September 23, 2016, Applicant respectfully submits the following Amendment and Response.  Applicant believes that a two-month extension of time is required for entry and consideration of this paper.  If, however, any additional extensions or fees are necessary for this paper to be entered, please consider this a request for any necessary extensions and a conditional authorization to charge any necessary associated fees to our Deposit Account No. 07-1700, with reference to Order No. ITU-017.

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

**EXHIBIT 1**
**PAGE 56**

EKO0001852

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14835857 |
| **Filing Date:** | 26-Aug-2015 |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni Bloch |
| **Filer:** | Steven Robert Argentieri/Caren Chaneco |
| **Attorney Docket Number:** | ITU-017 |

Filed as Small Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

**EXHIBIT 1**
**PAGE 57**

EKO0001853

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 2252 | 1 | 300 | 300 |

**Miscellaneous:**

| | Total in USD ($) | 300 |
|---|---|---|

**EXHIBIT 1**
**PAGE 58**

EKO0001854

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 28358963 |
| **Application Number:** | 14835857 |
| **International Application Number:** | |
| **Confirmation Number:** | 6941 |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni  Bloch |
| **Customer Number:** | 51414 |
| **Filer:** | Steven Robert Argentieri/Caren Chaneco |
| **Filer Authorized By:** | Steven Robert Argentieri |
| **Attorney Docket Number:** | ITU-017 |
| **Receipt Date:** | 15-FEB-2017 |
| **Filing Date:** | 26-AUG-2015 |
| **Time Stamp:** | 12:09:15 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $300 |
| RAM confirmation Number | 021517INTEFSW12095500 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

EXHIBIT 1
PAGE 59

EKO0001855

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Extension of Time | ITU-017_EOT.pdf | 76876<br><br>2ead919c5d446438c3212381396b7666d3bc8e1e | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | | ITU-017_Response.pdf | 113390<br><br>2b038c77a306ebb9c7872976c5bdaab97de90da3 | yes | 9 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Applicant Arguments/Remarks Made in an Amendment | 7 | 9 |
| | Claims | 2 | 6 |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |

| | | | | | |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30796<br><br>06d86f4b9d8674911ddd9262e9d314d188137ba6 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 221062 | |

**EXHIBIT 1**
**PAGE 60**

EKO0001856

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EXHIBIT 1
PAGE 61

EKO0001857

PTO/AIA/22 (03-13)
Approved for use through 7/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)** | Docket Number (Optional) |
|---|---|
| | ITU-017 |

| Application Number | 14/835,857-Conf. #6941 | Filed | August 26, 2015 |
|---|---|---|---|

For
SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

| Art Unit | 2484 | Examiner | S. R. Smith |
|---|---|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above-identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

| | | Fee | Small Entity Fee | Micro Entity Fee | |
|---|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $200 | $100 | $50 | $ |
| ☒ | Two months (37 CFR 1.17(a)(2)) | $600 | $300 | $150 | $ 300.00 |
| ☐ | Three months (37 CFR 1.17(a)(3)) | $1,400 | $700 | $350 | $ |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $2,200 | $1,100 | $550 | $ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $3,000 | $1,500 | $750 | $ |

☒ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
   Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ A check in the amount of the fee is enclosed.

☒ Payment by credit card. ~~Form PTO-2038 is attached.~~

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to
   Deposit Account Number _____07-1700_____ .

☒ Payment made via EFS-Web.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant.

☐ attorney or agent of record. Registration number _____ .

☒ attorney or agent acting under 37 CFR 1.34. Registration number _____69,083_____ .

| _____/Steven R. Argentieri/_____ | _____February 15, 2017_____ |
|---|---|
| Signature | Date |
| _____Steven R. Argentieri_____ | _____(617) 570-1063_____ |
| Typed or printed name | Telephone Number |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☐ * Total of _____1_____ forms are submitted.

EXHIBIT 1
PAGE 62

EKO0001858

Application No. 14/835,857                    7                    Docket No.: ITU-017
Reply to Office Action of September 23, 2016

## REMARKS

Claim Status

Claims 1–20 were presented for examination.  In the Office action dated September 23, 2016, claims 1–20 are rejected under 35 U.S.C. § 102(a)(1) as allegedly being anticipated by U.S. Patent Application Pub. No. 2012/0147954 ("Kasai").

In this Amendment and Response, Applicant has amended claims 1, 3–5, 7–11, 13–15 and 17–20, and canceled claims 6 and 16, without prejudice.  Upon entry of this Amendment and Response there will be a total of 18 claims pending, with 2 independent claims (1 and 11).  The amendments to the claims have been made without prejudice.  Support for the amendments may be found in the specification and claims as originally filed, for example, in paragraphs [0029]–[0031] and [0042]–[0050].  Applicant reserves the right to pursue the original claims in a related application.  No new matter has been added.

Claim Rejections under 35 U.S.C. § 102

Claims 1–20 are rejected under 35 U.S.C. § 102(a)(1) as allegedly being anticipated by Kasai.  Applicant respectfully traverses the rejection as applied to the claims, as amended.

Independent claim 1, as amended, recites a technique in which video from a first video presentation is initially presented on a user device in a first state according to one or more properties of the user device.  During playback of the video, a change in a property associated with the device is detected, and the video is seamlessly transitioned to video from a second, different presentation. For example, as depicted in FIG. 2 of the present application, reproduced, below, rotating the user device (e.g., a smartphone or tablet) from portrait orientation to landscape orientation results in the playing music video to seamlessly transition from a video presentation of the lead singer to a video presentation of the band.  In some instances, these different presentations can be synced to a common timeline, and seamlessly transitioning from one video to another can result in a change in video without any discontinuity in the music.

EXHIBIT 1
PAGE 63

EKO0001859

Application No. 14/835,857           8           Docket No.: ITU-017
Reply to Office Action of September 23, 2016



**FIG. 2**

Kasai appears to describe a technique for video delivery, in which a video is divided into different regions with corresponding video bit streams, and a particular region of the video that a user wishes to view is transmitted in a high-definition bit stream along with high-definition peripheral area bit streams, allowing the user to transition his region of interest among areas of the larger video and maintain a high resolution display with lower usage of network bandwidth.[1] As noted, Kasai focuses on a single video presentation, and allowing a user to switch his viewing area among regions of that single presentation. However, this is not the same as seamlessly transitioning from video from a first video presentation to video from a second, different video presentation upon that change in a property associated with a user device, as claimed by Applicant. Indeed, Kasai seeks merely to reduce bandwidth usage by transmitting video regions in different resolutions. Switching to a different video presentation, however, is unrelated to Kasai's goals and it is no surprise, then, that Kasai does not even contemplate this advantage offered by Applicant's claimed technique.

---

[1] Kasai, Abstract, paras. [0019], [0166]-[0168].

**EXHIBIT 1**
**PAGE 64**

EKO0001860

## CONCLUSION

Applicant respectfully requests that the amendments above be entered, and submits that the claims are in condition for allowance.  If the Examiner believes that telephonic communication would expedite the favorable prosecution of the present application, Applicant's attorney would welcome the opportunity to discuss any outstanding issues, and to work with the Examiner toward placing the application in condition for allowance.

Dated:  February 15, 2017                        Respectfully submitted,

                                                 By /Steven R. Argentieri/
                                                 Steven R. Argentieri
                                                    Registration No.: 69,083
                                                 GOODWIN PROCTER LLP
                                                 100 Northern Avenue
                                                 Boston, Massachusetts  02210
                                                 (617) 570-1063
                                                 Attorney for Applicant

**EXHIBIT 1**
**PAGE 65**

EKO0001861

Application No. 14/835,857                                                2                                        Docket No.: ITU-017
Reply to Office Action of September 23, 2016

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended) A computer-implemented method comprising:

identifying one or more properties associated with a user device;

receiving video from a first video presentation;

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation;

~~receiving a video for playback on the user device;~~

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;

presenting the video from the first video presentation according to the first state; and

during playback of the video from the first video presentation:

        determining that a change in at least one of the properties associated with the user device has occurred; and

        seamlessly transitioning from the video from the first video presentation to the video from the second video presentation ~~a second state~~ based on the change.

2.      (Original) The method of claim 1, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

3.      (Currently amended) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises at least one of setting which video content to play and setting which audio content to play.

**EXHIBIT 1**
**PAGE 66**

EKO0001862

Application No. 14/835,857                    3                    Docket No.: ITU-017
Reply to Office Action of September 23, 2016

4.    (Currently amended) The method of claim 1, wherein configuring the first state of the video <u>from the first video presentation</u> comprises at least one of setting a dimensional ratio of the video <u>from the first video presentation</u> and setting a quality of the video<u> from the first video presentation</u>.

5.    (Currently amended) The method of claim 1, wherein configuring the first state of the video <u>from the first video presentation</u> comprises setting a viewing region of the video<u> from the first video presentation</u> to a partial area of the video<u> from the first video presentation</u>.

6.    (Canceled)

7.    (Currently amended) The method of claim 1, <s>further comprising providing a plurality of videos associated with a particular one of the properties, wherein each video is associated with a different value of the particular property, wherein the determining comprises determining that a change in the particular property has occurred, and wherein the transitioning comprises transitioning the video to a second one of the videos, wherein the second one of the videos is associated with a value to which the particular property changed</s> <u>wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed</u>.

8.    (Currently amended) The method of claim 1, wherein seamlessly transitioning <u>from </u>the video <u>from the first video presentation </u>to <u>the video from the second video presentation</u> <s>a second state </s>comprises changing at least one of video content playback and audio content playback.

9.    (Currently amended) The method of claim 1, wherein seamlessly transitioning <u>from </u>the video <u>from the first video presentation </u>to <u>the video from the second video presentation</u> <s>a second</s>

EXHIBIT 1
PAGE 67

EKO0001863

Application No. 14/835,857                    4                    Docket No.: ITU-017
Reply to Office Action of September 23, 2016

state comprises changing at least one of a dimensional ratio ~~of the video~~ and a quality ~~of the video~~ __between the videos__.


10.    (Currently amended) The method of claim 1, wherein seamlessly transitioning __from__ the video __from the first video presentation__ to __the video from the second video presentation__ ~~a second state~~ comprises modifying at least one of a position, a shape, and a size of a viewing region ~~of the video__ __between the videos__.


11.    (Currently amended) A system comprising:

   at least one memory storing computer-executable instructions__; and__

   at least one processor for executing the instructions storing on the memory, wherein execution of the instructions programs to at least one processor to perform operations comprising:

      identifying one or more properties associated with a user device;

      __receiving video from a first video presentation;__

      __receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation;__

      ~~receiving a video for playback on the user device;~~

      configuring a first state of the video __from the first video presentation__ based on at least one of the properties associated with the user device;

      presenting the video __from the first video presentation__ according to the first state; and

      during playback of the video __from the first video presentation__:

         determining that a change in at least one of the properties associated with the user device has occurred__; and__

         seamlessly transitioning __from__ the video __from the first video presentation__ to __the video from the second video presentation__ ~~a second state~~ based on the change.


**EXHIBIT 1**
**PAGE 68**

EKO0001864

Application No. 14/835,857                                5                               Docket No.: ITU-017
Reply to Office Action of September 23, 2016

12.      (Original) The system of claim 11, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

13.      (Currently amended) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises at least one of setting which video content to play and setting which audio content to play.

14.      (Currently amended) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises at least one of setting a dimensional ratio of the video from the first video presentation and setting a quality of the video from the first video presentation.

15.      (Currently amended) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises setting a viewing region of the video from the first video presentation to a partial area of the video from the first video presentation.

16.      (Canceled)

17.      (Currently amended) The system of claim 11, ~~wherein the operations further comprise providing a plurality of videos associated with a particular one of the properties, wherein each video is associated with a different value of the particular property, wherein the determining comprises determining that a change in the particular property has occurred, and wherein the transitioning comprises transitioning the video to a second one of the videos, wherein the second one of the videos is associated with a value to which the particular property changed~~ wherein the video from the first video presentation is associated with an initial value of the one of the properties, and

EXHIBIT 1
PAGE 69

EKO0001865

Application No. 14/835,857                          6                          Docket No.: ITU-017
Reply to Office Action of September 23, 2016

wherein the video from the second video presentation is associated with a value to which the one of
the properties changed.


18.     (Currently amended) The system of claim 11, wherein seamlessly transitioning from the
video from the first video presentation to the video from the second video presentation a second
state comprises changing at least one of video content playback and audio content playback.


19.     (Currently amended) The system of claim 11, wherein seamlessly transitioning from the
video from the first video presentation to the video from the second video presentation a second
state comprises changing at least one of a dimensional ratio of the video and a quality of the video
between the videos.


20.     (Currently amended) The system of claim 11, wherein seamlessly transitioning from the
video from the first video presentation to the video from the second video presentation a second
state comprises modifying at least one of a position, a shape, and a size of a viewing region of the
video between the videos.

**EXHIBIT 1**
**PAGE 70**

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

51414       7590       06/05/2017
GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 Northern Avenue
BOSTON, MA 02210

| EXAMINER |
|---|
| SMITH, STEPHEN R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/05/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PATENTBOS@GOODWINPROCTER.COM
PSOUSA-ATWOOD@GOODWINPROCTER.COM
GLENN.WILLIAMS@GOODWINPROCTER.COM

PTOL-90A (Rev. 04/07)

**EXHIBIT 1
PAGE 71**

EKO0001873

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 14/835,857 | BLOCH ET AL. |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | STEPHEN SMITH | 2484 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on _2/15/2017_.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☒ This action is **FINAL**.          2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims\***

5)☒ Claim(s) _1-5,7-15 and 17-20_ is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) _1-5,7-15 and 17-20_ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on _8/26/2015_ is/are: a)☒ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a)☐ All   b)☐ Some\*\*  c)☐ None of the:
      1.☐   Certified copies of the priority documents have been received.
      2.☐   Certified copies of the priority documents have been received in Application No. _____.
      3.☐   Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

**EXHIBIT 1**
**PAGE 72**

EKO0001874

Application/Control Number: 14/835,857                                                      Page 2
Art Unit: 2484

## DETAILED ACTION

This Office action is in response to claims 1-5, 7-15 and 17-20 filed 08/26/2015.

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Response to Arguments*

Applicant's arguments filed 2/15/2017 have been fully considered but they are not persuasive.

In particular, applicant argues that Kasai's teaching of allowing a user to switch his viewing area among regions of a single presentation is not the same as seamlessly transitioning from video from a first video presentation to video from a second, different video presentation. The examiner respectfully disagrees, it is submitted that Kasai teaches firstly dividing video regions of input video signals into a specified number of regions and generating a plurality of region divided video signals corresponding to each of the divided regions, and subsequently transmitting both of a bit stream corresponding to a specified region (first region) and a video bit stream for a region peripheral to the first region (second region) to the client 2, para [0019], [0022], [0023]. As shown in fig. 2, second region "At" includes different video content, e.g. a violinist, from first region "Ad", e.g., the conductor area. Therefore, it is the position of the examiner that Kasai's disclosure still reads on the claim limitation of "seamlessly transitioning from video from

EXHIBIT 1
PAGE 73

EKO0001875

Application/Control Number: 14/835,857                                          Page 3

Art Unit: 2484

a first video presentation to video from a second, different video presentation," and that

therefore the limitation requires further definition of the differences between the first and

second video presentations to overcome Kasai's disclosure.


### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

- Claims 1-5, 7-15 and 17-20 are rejected under 35 U.S.C. 102(a)(1) as

  being anticipated by US 20120147954 A1 to Kasai et al. (hereinafter

  "Kasai").


**EXHIBIT 1**
**PAGE 74**

EKO0001876

Application/Control Number: 14/835,857                                                    Page 4
Art Unit: 2484

Regarding claim 1, Kasai discloses a computer-implemented method comprising:

identifying one or more properties associated with a user device ("viewpoint information" defining size and position of a viewing desired region is continuously transmitted from the client to the server [0051]-[0053], [0093]-[0095], 213b of Fig. 1);

receiving video from a first video presentation (a bit stream corresponding to the region specified by the viewpoint information is transmitted to the client 2 [0056]-[0057], [0064], the specified region is interpreted as a first video presentation);

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation (a video bit stream for a region peripheral to the first region (second region) is also transmitted, para. [0019], [0022], second region bitstream is interpreted as a second video presentation);

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device (a bit stream of a particular resolution corresponding to the region specified by the viewpoint information is extracted and transmitted to the client [0056], [0063]-[0065]);

presenting the video from the first video presentation according to the first state (displaying on the screen of the client [0061], Fig. 1); and

during playback of the video from the first video presentation:

determining that a change in at least one of the properties associated with the user device has occurred; and seamlessly transitioning from the video from the first video presentation to the video from the second video presentation  based on the change (control of bit stream switching is based on the viewpoint information [0064],

**EXHIBIT 1**
**PAGE 75**

Application/Control Number: 14/835,857                                        Page 5

Art Unit: 2484

and a peripheral bit stream enables seamless/fast switching to the different viewpoint,

or second region bitstream [0166]-[0168]).

Regarding claim 2, Kasai discloses the method of claim 1, wherein the properties

are selected from the group consisting of physical orientation, model, physical screen

size, screen resolution, and window size (the viewpoint information defines the

size/resolution and position of a viewing desired region [0053], [0093]-[0096]).

Regarding claim 3, Kasai discloses the method of claim 1, wherein configuring

the first state of the video from the first video presentation comprises at least one of

setting which video content to play and setting which audio content to play (a bit stream,

i.e., video, of a particular resolution corresponding to the region specified by the

viewpoint information is extracted and transmitted to the client [0056], [0063]-[0065],

Fig. 1).

Regarding claim 4, Kasai discloses the method of claim 1, wherein configuring

the first state of the video from the first video presentation comprises at least one of

setting a dimensional ratio of the video from the first video presentation and setting a

quality of the video from the first video presentation (a bit stream of a particular

resolution, i.e., quality, corresponding to the region specified by the viewpoint

information is extracted and transmitted to the client [0056], [0063]-[0065], Fig. 1).

EXHIBIT 1
PAGE 76

EKO0001878

Application/Control Number: 14/835,857                                    Page 6
Art Unit: 2484

Regarding claim 5, Kasai discloses the method of claim 1, wherein configuring the first state of the video from the first video presentation comprises setting a viewing region of the video from the first video presentation to a partial area of the video from the first video presentation (it is possible for a user to specify a viewing desired region by having a configuration wherein a small frame is displayed on a screen of a display section of the client [0051], 213a of Fig. 1).

Regarding claim 7, Kasai discloses the method of claim 1, wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed (control of switching is carried out based on content of viewpoint information [0064], which is continuously transmitted from the client to the server [0053], the switching to the a peripheral bit stream enables seamless/fast switching to the different viewpoint, or second region [0166]-[0168]).

Regarding claim 8, Kasai discloses the method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of video content playback and audio content playback (a bit stream, i.e., video, of a particular resolution corresponding to the region specified by the viewpoint information is extracted and transmitted to the client [0053], [0056], [0063]-[0065], such that the client can switch

EXHIBIT 1
PAGE 77

EKO0001879

Application/Control Number: 14/835,857                                         Page 7

Art Unit: 2484

rapidly [0164]; Kasai also teaches supplying an audio bitstream suitable to the specified

video region, para. [0114]-[0116]).

Regarding claim 9, Kasai discloses the method of claim 1, wherein seamlessly

transitioning from the video from the first video presentation to the video from the

second video presentation comprises changing at least one of a dimensional ratio and a

quality between the videos (the viewpoint information, which is information regarding

resolution it is desired to view at, is continuously transmitted from the client 2 to the

server, and a bit stream of a particular resolution, i.e., quality, corresponding to the

region specified by the viewpoint information is extracted and transmitted to the client

[0053], [0056], [0063]-[0065], Fig. 1).

Regarding claim 10, Kasai discloses the method of claim 1, wherein seamlessly

transitioning from the video from the first video presentation to the video from the

second video presentation comprises modifying at least one of a position, a shape, and

a size of a viewing region between the videos (the viewpoint information, which is

continuously transmitted from the client 2 to the server, defines the size/resolution and

position of a viewing desired region [0053], [0093]-[0096], and the bit stream of a

particular resolution corresponding to the region specified by the viewpoint information

is extracted and transmitted to the client for display [0053], [0056], [0063]-[0065], such

that the client can switch rapidly [0164]).

EXHIBIT 1
PAGE 78

EKO0001880

Application/Control Number: 14/835,857                                                          Page 8
Art Unit: 2484

Regarding claims 11-15 and 17-20, the system of claims 11-15 and 17-20 is

rejected along the same rational as the method of claims 1-5 and 7-10, respectively.

Additionally, Kasai teaches a client-server system [0042], or a TV receiver system

[0186], either of which necessarily incorporate conventional computing elements such

as a memory storing computer-executable instructions and at least one processor for

executing the instructions to perform the claimed method.


*Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

**EXHIBIT 1**
**PAGE 79**

EKO0001881

Application/Control Number: 14/835,857                                        Page 9
Art Unit: 2484

Any inquiry concerning this communication or earlier communications from the examiner should be directed to STEPHEN SMITH whose telephone number is (571)270-1318. The examiner can normally be reached on Monday through Friday.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Thai Tran can be reached on (571) 272-7382. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/STEPHEN SMITH/
Examiner, Art Unit 2484

/Thai Tran/
Supervisory Patent Examiner, Art Unit 2484

**EXHIBIT 1**
**PAGE 80**

EKO0001882

Docket No.: ITU-017
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Yoni Bloch et al.

Application No.: 14/835,857        Confirmation No.: 6941

Filed: August 26, 2015        Art Unit: 2484

For: SYSTEMS AND METHODS FOR ADAPTIVE    Examiner: S. R. Smith
       AND RESPONSIVE VIDEO

MS AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### AMENDMENT AND RESPONSE AFTER FINAL ACTION

In response to the Office action dated June 5, 2017, Applicant respectfully submits the following Amendment and Response accompanied by a Certification and Request for Consideration Under the AFCP 2.0.  Applicant believes that a one-month extension of time is required for entry and consideration of this paper, and has included the necessary fee.  If, however, any additional extensions or fees are necessary for this paper to be entered, please consider this a request for any necessary extensions and a conditional authorization to charge any necessary associated fees to our Deposit Account No. 07-1700, with reference to Order No. ITU-017.

       **Amendments to the Claims** begin on page 2 of this paper.

       **Remarks/Arguments** begin on page 7 of this paper.

**EXHIBIT 1**
**PAGE 81**

EKO0001900

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended) A computer-implemented method comprising:

identifying one or more properties associated with a user device;

receiving video from a first video presentation;

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation, wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video;

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;

presenting the video from the first video presentation according to the first state; and

during playback of the video from the first video presentation:

determining that a change in at least one of the properties associated with the user device has occurred; and

seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

2.      (Original) The method of claim 1, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

3.      (Previously presented) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises at least one of setting which video content to play and setting which audio content to play.

**EXHIBIT 1**
**PAGE 82**

EKO0001901

4.      (Previously presented) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises at least one of setting a dimensional ratio of the video from the first video presentation and setting a quality of the video from the first video presentation.

5.      (Previously presented) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises setting a viewing region of the video from the first video presentation to a partial area of the video from the first video presentation.

6.      (Canceled)

7.      (Previously presented) The method of claim 1, wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed.

8.      (Previously presented) The method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of video content playback and audio content playback.

9.      (Previously presented) The method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of a dimensional ratio and a quality between the videos.

EXHIBIT 1
PAGE 83

EKO0001902

10.     (Previously presented) The method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises modifying at least one of a position, a shape, and a size of a viewing region between the videos.

11.     (Currently amended) A system comprising:

at least one memory storing computer-executable instructions; and

at least one processor for executing the instructions storing on the memory, wherein execution of the instructions programs to at least one processor to perform operations comprising:

identifying one or more properties associated with a user device;

receiving video from a first video presentation;

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation, wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video;

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;

presenting the video from the first video presentation according to the first state; and

during playback of the video from the first video presentation:

determining that a change in at least one of the properties associated with the user device has occurred; and

seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

12.     (Original) The system of claim 11, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

**EXHIBIT 1**
**PAGE 84**

EKO0001903

13.     (Previously presented) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises at least one of setting which video content to play and setting which audio content to play.

14.     (Previously presented) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises at least one of setting a dimensional ratio of the video from the first video presentation and setting a quality of the video from the first video presentation.

15.     (Previously presented) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises setting a viewing region of the video from the first video presentation to a partial area of the video from the first video presentation.

16.     (Canceled)

17.     (Previously presented) The system of claim 11, wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed.

18.     (Previously presented) The system of claim 11, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of video content playback and audio content playback.

**EXHIBIT 1**
**PAGE 85**

EKO0001904

19.    (Previously presented) The system of claim 11, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of a dimensional ratio and a quality between the videos.

20.    (Previously presented) The system of claim 11, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises modifying at least one of a position, a shape, and a size of a viewing region between the videos.

**EXHIBIT 1**
**PAGE 86**

EKO0001905

## REMARKS

Claim Status

Claims 1–5, 7–15, and 17–20 were presented for examination. In the Office action dated June 5, 2017, claims 1–5, 7–15, and 17–20 are rejected under 35 U.S.C. § 102(a)(1) as allegedly being anticipated by U.S. Patent Application Pub. No. 2012/0147954 ("Kasai").

In this Amendment and Response, Applicant has amended claims 1 and 11. Upon entry of this Amendment and Response there will be a total of 18 claims pending, with 2 independent claims (1 and 11). The amendments to the claims have been made without prejudice. Support for the amendments may be found in the specification and claims as originally filed, for example, in paragraphs [0030]–[0031] and [0039]. Applicant reserves the right to pursue the original claims in a related application. No new matter has been added.

Claim Rejections under 35 U.S.C. § 102

Claims 1–5, 7–15, and 17–20 are rejected under 35 U.S.C. § 102(a)(1) as allegedly being anticipated by Kasai. Applicant respectfully traverses the rejection as applied to the claims, as amended.

Independent claim 1, as amended, recites a technique in which video from a first video presentation is initially presented on a user device in a first state according to one or more properties of the user device. During playback of the video, a change in a property associated with the device is detected, and the video is seamlessly transitioned to video from a second, different presentation. Each video presentation is an independent video presentation not comprising a region of a larger-dimensioned video. For example, as described in paragraph [0039] of Applicant's specification as filed, a movie watched in landscape mode on a user device can include a director's commentary audio track in which, from time to time, the director provides commentary on scenes in the movie currently being watched. During playback of the video and audio, upon changing the orientation of the device to portrait mode, accompanying video of the director providing the commentary is shown instead of the movie.

**EXHIBIT 1**
**PAGE 87**

EKO0001906

Kasai appears to describe a technique for video delivery, in which a video is divided into different regions with corresponding video bit streams, and a particular region of the video that a user wishes to view is transmitted in a high-definition bit stream along with high-definition peripheral area bit streams, allowing the user to transition his region of interest among areas of the larger video and maintain a high resolution display with lower usage of network bandwidth.[1]  As noted, Kasai focuses on a <u>single</u> video presentation, and allowing a user to switch his viewing area among regions of that single presentation.  However, this is not the same as seamlessly transitioning from video from a first video presentation to video from a second, different video presentation upon that change in a property associated with a user device, "<u>wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video</u>," as claimed by Applicant.  Indeed, Kasai seeks merely to reduce bandwidth usage by transmitting video regions in different resolutions.  Switching to a different video presentation, however, is unrelated to Kasai's goals and it is no surprise, then, that Kasai does not even contemplate this advantage offered by Applicant's claimed technique.

---

[1] Kasai, Abstract, paras. [0019], [0166]-[0168].

EXHIBIT 1
PAGE 88

EKO0001907

Application No. 14/835,857                              9                              Docket No.: ITU-017

## CONCLUSION

Applicant respectfully requests that the amendments above be entered, and submits that the claims are in condition for allowance.  If the Examiner believes that telephonic communication would expedite the favorable prosecution of the present application, Applicant's attorney would welcome the opportunity to discuss any outstanding issues, and to work with the Examiner toward placing the application in condition for allowance.

Dated:  September 22, 2017                    Respectfully submitted,

                                              By /Steven R. Argentieri/
                                              Steven R. Argentieri
                                                  Registration No.: 69,083
                                              GOODWIN PROCTER LLP
                                              100 Northern Avenue
                                              Boston, Massachusetts  02210
                                              (617) 570-1063
                                              Attorney for Applicant

**EXHIBIT 1**
**PAGE 89**

EKO0001908

Doc Code: A.NE.AFCP
Document Description: After Final Consideration Pilot Program Request

PTO/SB/434 (05-13)

## CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0

| Practitioner Docket No.: ITU-017 | Application No.: 14/835,857-Conf. #6941 | Filing Date: August 26, 2015 |
|---|---|---|
| First Named Inventor: Yoni Bloch | Title: | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1. The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2. The above-identified application contains an outstanding final rejection.

3. Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4. This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5. Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6. This certification and request is being filed electronically using the Office's electronic filing system (EFS-Web).

7. Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8. By filing this certification and request, applicant acknowledges the following:

   • Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
   • The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
     o The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
     o If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, then the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
       ▪ The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
       ▪ If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature | /Steven R. Argentieri/ | Date | September 22, 2017 |
|---|---|---|---|
| Name (Print/Typed) | Steven R. Argentieri | Practitioner Registration No. | 69,083 |

***Note***: *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

| | * Total of __1__ forms are submitted. |
|---|---|

1

EXHIBIT 1
PAGE 90

EKO0001909

PTO/AIA/22 (03-13)
Approved for use through 7/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)**

| | |
|---|---|
| Docket Number (Optional) | ITU-017 |

| Application Number | 14/835,857-Conf. #6941 | Filed | August 26, 2015 |
|---|---|---|---|

For

SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

| Art Unit | 2484 | Examiner | S. R. Smith |
|---|---|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above-identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

| | | Fee | Small Entity Fee | Micro Entity Fee | |
|---|---|---|---|---|---|
| X | One month (37 CFR 1.17(a)(1)) | $200 | $100 | $50 | $ 100.00 |
| | Two months (37 CFR 1.17(a)(2)) | $600 | $300 | $150 | $ |
| | Three months (37 CFR 1.17(a)(3)) | $1,400 | $700 | $350 | $ |
| | Four months (37 CFR 1.17(a)(4)) | $2,200 | $1,100 | $550 | $ |
| | Five months (37 CFR 1.17(a)(5)) | $3,000 | $1,500 | $750 | $ |

[X] Applicant asserts small entity status. See 37 CFR 1.27.

[ ] Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

[ ] A check in the amount of the fee is enclosed.

[X] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director has already been authorized to charge fees in this application to a Deposit Account.

[X] The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to
Deposit Account Number    07-1700    .

[X] Payment made via EFS-Web.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

[ ] applicant.

[X] attorney or agent of record. Registration number    69,083    .

[ ] attorney or agent acting under 37 CFR 1.34. Registration number    _____    .

| /Steven R. Argentieri/ | September 22, 2017 |
|---|---|
| Signature | Date |
| Steven R. Argentieri | (617) 570-1063 |
| Typed or printed name | Telephone Number |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

[ ] * Total of    1    forms are submitted.

**EXHIBIT 1**
**PAGE 91**

EKO0001910

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14835857 |
| **Filing Date:** | 26-Aug-2015 |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni Bloch |
| **Filer:** | Steven Robert Argentieri/Tricia Ayube |
| **Attorney Docket Number:** | ITU-017 |

Filed as Small Entity

**Filing Fees for**   **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

EXHIBIT 1
PAGE 92

EKO0001911

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 1 month with $0 paid | 2251 | 1 | 100 | 100 |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **100** |

**EXHIBIT 1**
**PAGE 93**

EKO0001912

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 30444020 |
| **Application Number:** | 14835857 |
| **International Application Number:** | |
| **Confirmation Number:** | 6941 |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni  Bloch |
| **Customer Number:** | 51414 |
| **Filer:** | Steven Robert Argentieri/Tricia Ayube |
| **Filer Authorized By:** | Steven Robert Argentieri |
| **Attorney Docket Number:** | ITU-017 |
| **Receipt Date:** | 22-SEP-2017 |
| **Filing Date:** | 26-AUG-2015 |
| **Time Stamp:** | 15:14:25 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $100 |
| RAM confirmation Number | 092517INTEFSW15214700 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |

EXHIBIT 1
PAGE 94

EKO0001913

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Amendment_and_Response_After_Final.pdf | 34084<br><br>8a2d3459f8bffa10a0eb6e1f53761980e4054eb6 | yes | 9 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | **Start** | **End** | |
| | Response After Final Action | 1 | 1 | |
| | Claims | 2 | 6 | |
| | Applicant Arguments/Remarks Made in an Amendment | 7 | 9 | |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | After Final Consideration Program Request | Certification_and_request_after_final.pdf | 34542<br><br>1fd0f715f28844d2e6b0cb95015673ed4227389f | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Extension of Time | EOT.pdf | 22564<br><br>c5027d1f47e46675d89424511cf3bb7e9ffbd774 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Fee Worksheet (SB06) | fee-info.pdf | 30719<br><br>1426266655237f2a866858fc60736d1375252a59 | no | 2 |

**Warnings:**

**Information:**

| | | Total Files Size (in bytes): | 121909 |
|---|---|---|---|

**EXHIBIT 1**
**PAGE 95**

EKO0001914

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EXHIBIT 1
PAGE 96

EKO0001915

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

51414        7590        08/09/2018
GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 Northern Avenue
BOSTON, MASSACHUSETTS 02210
UNITED STATES OF AMERICA

| EXAMINER |
|---|
| SMITH, STEPHEN R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/09/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

GLENN.WILLIAMS@GOODWINPROCTER.COM
PATENTBOS@GOODWINPROCTER.COM
PSOUSA-ATWOOD@GOODWINPROCTER.COM

**EXHIBIT 1**
**PAGE 97**

EKO0001930

| *Office Action Summary* | Application No. 14/835,857 | Applicant(s) Bloch et al. |
|---|---|---|
| | Examiner STEPHEN R SMITH | Art Unit 2484 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>9/22/2017</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**   2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-5,7-15 and 17-20</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-5,7-15 and 17-20</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on <u>8/26/2015</u> is/are: a) ☑ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a) ☐ All   b) ☐ Some**   c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

**EXHIBIT 1**
**PAGE 98**

EKO0001931

Application/Control Number: 14/835,857                                      Page 2
Art Unit: 2484

## DETAILED ACTION

This Office action is in response to claims 1-5, 7-15 and 17-20 filed 08/26/2015.

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### Continued Examination Under 37 CFR 1.114

A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection. Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission filed on 08/26/2015 has been entered.

### Response to Arguments

Applicant's arguments/remarks with respect to claim rejections under 35 USC § 102 have been fully considered but are moot because the arguments do not directly apply to the new combination of references being used in the current rejection.

### Claim Rejections - 35 USC § 103

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

EXHIBIT 1
PAGE 99

EKO0001932

Application/Control Number: 14/835,857                                          Page 3
Art Unit: 2484

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

Claims 1-5, 7-15 and 17-20 are rejected under 35 U.S.C. 103 as being

unpatentable over US 20120147954 A1 to Kasai et al. (hereinafter "Kasai") in view of

US 20150015789 A1 to Guntur et al. (hereinafter "Gunter").


Regarding claim 1, Kasai discloses a computer-implemented method comprising:

identifying one or more properties associated with a user device ("viewpoint

information" defining size and position of a viewing desired region is continuously

transmitted from the client to the server [0051]-[0053], [0093]-[0095], 213b of Fig. 1);

receiving video from a first video presentation (a bit stream corresponding to the

region specified by the viewpoint information is transmitted to the client 2 [0056]-[0057],

[0064], the specified region is interpreted as a first video presentation);

receiving, simultaneously with the video from the first video presentation, video

from a second, different video presentation (a video bit stream for a region peripheral to

the first region (second region) is also transmitted, para. [0019], [0022], second region

bitstream is interpreted as a second video presentation);

EXHIBIT 1
PAGE 100

EKO0001933

Application/Control Number: 14/835,857 Page 4
Art Unit: 2484

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device (a bit stream of a particular resolution corresponding to the region specified by the viewpoint information is extracted and transmitted to the client [0056], [0063]-[0065]);

presenting the video from the first video presentation according to the first state (displaying on the screen of the client [0061], Fig. 1); and

during playback of the video from the first video presentation:

determining that a change in at least one of the properties associated with the user device has occurred; and seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change (control of bit stream switching is based on the viewpoint information [0064], and a peripheral bit stream enables seamless/fast switching to the different viewpoint, or second region bitstream [0166]-[0168]).

Kasai fails to teach wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video.

In analogous art, Gunter teaches wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video (Gunter is directed to a method and device allowing user interaction on streamed multimedia content and teaches a feature similar to Kasai of streaming and displaying a neighboring point-of-view region of a larger-dimensioned video in response to the user tilting the device a certain angle, but Gunter teaches an additional feature of determining if the newly requested point-of-view region

EXHIBIT 1
PAGE 101

EKO0001934

Application/Control Number: 14/835,857                                             Page 5
Art Unit: 2484

of the video is beyond the range of the current camera view, and if the calculated

viewing angle is out of the range of the current camera, the device can identify and

stream video of the different camera view corresponding to the requested viewing

angle, para. [0109]-[0117], fig. 12; therefore Gunter's second video presentation may be

considered as an independent video presentation not comprising a region of a larger-

dimensioned video because it is video captured by a different camera).

It would have been obvious to one with ordinary skill, in the art before the

effective filing date of the invention, to modify the teachings of Kasai in view of the

above teachings of Gunter because Gunter's teaching of transitioning to a different

camera view would improve upon Kasai's teaching of changing the viewpoint in the

case where a viewpoint is requested that is beyond the range of the currently displayed

larger-dimensioned video such as in a case of requesting an alternate camera view of a

sporting event like football (Gunter, para. [0117]).


Regarding claim 2, Kasai discloses wherein the properties are selected from the

group consisting of physical orientation, model, physical screen size, screen resolution,

and window size (the viewpoint information defines the size/resolution and position of a

viewing desired region [0053], [0093]-[0096]).


Regarding claim 3, Kasai discloses wherein configuring the first state of the video

from the first video presentation comprises at least one of setting which video content to

play and setting which audio content to play (a bit stream, i.e., video, of a particular

EXHIBIT 1
PAGE 102

EKO0001935

Application/Control Number: 14/835,857                                          Page 6
Art Unit: 2484

resolution corresponding to the region specified by the viewpoint information is

extracted and transmitted to the client [0056], [0063]-[0065], Fig. 1).


Regarding claim 4, Kasai discloses wherein configuring the first state of the video

from the first video presentation comprises at least one of setting a dimensional ratio of

the video from the first video presentation and setting a quality of the video from the first

video presentation (a bit stream of a particular resolution, i.e., quality, corresponding to

the region specified by the viewpoint information is extracted and transmitted to the

client [0056], [0063]-[0065], Fig. 1).


Regarding claim 5, Kasai discloses wherein configuring the first state of the video

from the first video presentation comprises setting a viewing region of the video from the

first video presentation to a partial area of the video from the first video presentation (it

is possible for a user to specify a viewing desired region by having a configuration

wherein a small frame is displayed on a screen of a display section of the client [0051],

213a of Fig. 1).


Regarding claim 7, Kasai discloses wherein the video from the first video

presentation is associated with an initial value of the one of the properties, and wherein

the video from the second video presentation is associated with a value to which the

one of the properties changed (control of switching is carried out based on content of

viewpoint information [0064], which is continuously transmitted from the client to the

**EXHIBIT 1**
**PAGE 103**

EKO0001936

server [0053], the switching to the a peripheral bit stream enables seamless/fast

switching to the different viewpoint, or second region [0166]-[0168]).

Regarding claim 8, Kasai discloses wherein seamlessly transitioning from the

video from the first video presentation to the video from the second video presentation

comprises changing at least one of video content playback and audio content playback

(a bit stream, i.e., video, of a particular resolution corresponding to the region specified

by the viewpoint information is extracted and transmitted to the client [0053], [0056],

[0063]-[0065], such that the client can switch rapidly [0164]; Kasai also teaches

supplying an audio bitstream suitable to the specified video region, para. [0114]-[0116]).

Regarding claim 9, Kasai discloses wherein seamlessly transitioning from the

video from the first video presentation to the video from the second video presentation

comprises changing at least one of a dimensional ratio and a quality between the videos

(the viewpoint information, which is information regarding resolution it is desired to view

at, is continuously transmitted from the client 2 to the server, and a bit stream of a

particular resolution, i.e., quality, corresponding to the region specified by the viewpoint

information is extracted and transmitted to the client [0053], [0056], [0063]-[0065], Fig.

1).

Regarding claim 10, Kasai discloses wherein seamlessly transitioning from the

video from the first video presentation to the video from the second video presentation

comprises modifying at least one of a position, a shape, and a size of a viewing region

EXHIBIT 1
PAGE 104

EKO0001937

Application/Control Number: 14/835,857                                         Page 8
Art Unit: 2484

between the videos (the viewpoint information, which is continuously transmitted from

the client 2 to the server, defines the size/resolution and position of a viewing desired

region [0053], [0093]-[0096], and the bit stream of a particular resolution corresponding

to the region specified by the viewpoint information is extracted and transmitted to the

client for display [0053], [0056], [0063]-[0065], such that the client can switch rapidly

[0164]).


    Regarding claims 11-15 and 17-20, the system of claims 11-15 and 17-20 is

rejected along the same rational as the method of claims 1-5 and 7-10, respectively.

Additionally, Kasai teaches a client-server system [0042], or a TV receiver system

[0186], either of which necessarily incorporate conventional computing elements such

as a memory storing computer-executable instructions and at least one processor for

executing the instructions to perform the claimed method.


### *Conclusion*

    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to STEPHEN R SMITH whose telephone number is

(571)270-1318. The examiner can normally be reached on M-F 8-4.

    Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.


EXHIBIT 1
PAGE 105

EKO0001938

Application/Control Number: 14/835,857                                    Page 9
Art Unit: 2484

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Thai Q Tran can be reached on (571) 272-7382.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.  Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

                                        STEPHEN R. SMITH
                                        Examiner
                                        Art Unit 2484

/THAI Q TRAN/
Supervisory Patent Examiner, Art Unit 2484

EXHIBIT 1
PAGE 106

EKO0001939

Docket No.: ITU-017
(PATENT)

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Yoni Bloch et al.

Application No.: 14/835,857      Confirmation No.: 6941

Filed: August 26, 2015      Art Unit: 2484

For: SYSTEMS AND METHODS FOR ADAPTIVE    Examiner: S. R. Smith
      AND RESPONSIVE VIDEO

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### AMENDMENT AND RESPONSE TO NON-FINAL ACTION

In response to the Office action dated August 9, 2018, Applicant respectfully submits the following Amendment and Response. Applicant believes that no extensions of time or fees are required for entry and consideration of this paper. If, however, any extensions or fees are necessary for this paper to be entered, please consider this a request for any necessary extensions and a conditional authorization to charge any necessary associated fees to our Deposit Account No. 07-1700, with reference to Order No. ITU-017.

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks/Arguments** begin on page 8 of this paper.

**EXHIBIT 1**
**PAGE 107**

EKO0001959

Application No. 14/835,857                    2                    Docket No.: ITU-017

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended) A computer-implemented method comprising:

identifying one or more properties associated with a user device;

receiving video from a first video presentation;

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation, wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video;

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;

presenting the video from the first video presentation according to the first state;

providing a mapping of video presentations to media player window height ranges and media player window width ranges; and

during playback of the video from the first video presentation:

determining that a media player window in which the video is playing has been resized to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width change in at least one of the properties associated with the user device has occurred;

determining that the second height is included in a particular one of the media player window height ranges;

determining that the second width is included in a particular one of the media player window width ranges;

evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range; and

EXHIBIT 1
PAGE 108

EKO0001960

in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

2.      (Original) The method of claim 1, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

3.      (Previously presented) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises at least one of setting which video content to play and setting which audio content to play.

4.      (Previously presented) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises at least one of setting a dimensional ratio of the video from the first video presentation and setting a quality of the video from the first video presentation.

5.      (Previously presented) The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises setting a viewing region of the video from the first video presentation to a partial area of the video from the first video presentation.

6.      (Canceled)

7.      (Previously presented) The method of claim 1, wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed.

**EXHIBIT 1**
**PAGE 109**

EKO0001961

Application No. 14/835,857                              4                              Docket No.: ITU-017

8.      (Previously presented) The method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of video content playback and audio content playback.

9.      (Previously presented) The method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of a dimensional ratio and a quality between the videos.

10.     (Previously presented) The method of claim 1, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises modifying at least one of a position, a shape, and a size of a viewing region between the videos.

11.     (Currently amended) A system comprising:

        at least one memory storing computer-executable instructions; and

        at least one processor for executing the instructions storing on the memory, wherein execution of the instructions programs to at least one processor to perform operations comprising:

                identifying one or more properties associated with a user device;

                receiving video from a first video presentation;

                receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation~~, wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video~~;

                configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;

EXHIBIT 1
PAGE 110

EKO0001962

presenting the video from the first video presentation according to the first state;

providing a mapping of video presentations to media player window height ranges and media player window width ranges; and

during playback of the video from the first video presentation:

determining that a media player window in which the video is playing has been resized to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width change in at least one of the properties associated with the user device has occurred;

determining that the second height is included in a particular one of the media player window height ranges;

determining that the second width is included in a particular one of the media player window width ranges;

evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range; and

in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

12.    (Original) The system of claim 11, wherein the properties are selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size.

13.    (Previously presented) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises at least one of setting which video content to play and setting which audio content to play.

EXHIBIT 1
PAGE 111

EKO0001963

14.    (Previously presented) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises at least one of setting a dimensional ratio of the video from the first video presentation and setting a quality of the video from the first video presentation.

15.    (Previously presented) The system of claim 11, wherein configuring the first state of the video from the first video presentation comprises setting a viewing region of the video from the first video presentation to a partial area of the video from the first video presentation.

16.    (Canceled)

17.    (Previously presented) The system of claim 11, wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed.

18.    (Previously presented) The system of claim 11, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of video content playback and audio content playback.

19.    (Previously presented) The system of claim 11, wherein seamlessly transitioning from the video from the first video presentation to the video from the second video presentation comprises changing at least one of a dimensional ratio and a quality between the videos.

**EXHIBIT 1**
**PAGE 112**

EKO0001964

Application No. 14/835,857                    7                    Docket No.: ITU-017

20.    (Previously presented) The system of claim 11, wherein seamlessly transitioning from the
video from the first video presentation to the video from the second video presentation comprises
modifying at least one of a position, a shape, and a size of a viewing region between the videos.

**EXHIBIT 1**
**PAGE 113**

EKO0001965

Application No. 14/835,857                    8                    Docket No.: ITU-017

## REMARKS

Claim Status

Claims 1–5, 7–15, and 17–20 were presented for examination.  In the Office action dated August 9, 2018, claims 1–5, 7–15, and 17–20 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Application Pub. No. 2012/0147954 ("Kasai") in view of U.S. Patent Application Pub. No. 2015/0015789 ("Gunter").

In this Amendment and Response, Applicant has amended claims 1 and 11.  Upon entry of this Amendment and Response there will be a total of 18 claims pending, with 2 independent claims (1 and 11).  The amendments to the claims have been made without prejudice.  Support for the amendments may be found in the specification and claims as originally filed, for example, in paragraphs [0032] and [0033].  Applicant reserves the right to pursue the original claims in a related application.  No new matter has been added.

Applicant respectfully traverses the rejections in the order presented, and requests consideration of the following remarks.

Claim Rejections under 35 U.S.C. § 103

Kasai appears to describe a technique for video delivery, in which a video is divided into different regions with corresponding video bit streams, and a particular region of the video that a user wishes to view is transmitted in a high-definition bit stream along with high-definition peripheral area bit streams, allowing the user to transition his region of interest among areas of the larger video and maintain a high resolution display with lower usage of network bandwidth.[1] Similarly to Kasai, Gunter appears to describe a method for rendering selected video portions in higher resolutions.  Further, Gunter appears to describe a multi-view video from multiple cameras that capture different angles of a scene.[2]  When a user viewing the video on a device tilts the device, the video can be changed to a captured angle in the direction of the tilt.[3]

---

[1] Kasai, Abstract, paras. [0019], [0166]-[0168].
[2] Gunter, para. [0106].
[3] *Id.* at para. [0113].

EXHIBIT 1
PAGE 114

EKO0001966

However, Kasai and Gunter, whether taken alone or in any combination, do not teach or suggest, as recited in Applicant's amended independent claim 1:

> providing a mapping of video presentations to media player window height ranges and media player window width ranges; and

> during playback of the video from the first video presentation:

>> determining that a media player window in which the video is playing has been resized to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width;

>> determining that the second height is included in a particular one of the media player window height ranges;

>> determining that the second width is included in a particular one of the media player window width ranges;

>> evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range; and

>> in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

For purposes of illustration only, as described in Applicant's specification:

> [0032] Different media content can be associated with each fixed window dimension (defined height and width). For example, using the same music video example as described with respect to FIG. 2, upon changing from fixed dimensions X to fixed dimensions Y, the video shown in the media player 300 can change from the singer 210 to the band 220. There can be multiple fixed dimensions with varying audio and/or video content associated with particular fixed dimensions.

> [0033] In some implementations, instead of limiting the windowed media player 250 to fixed dimensions, ranges for window heights and/or widths can be defined and associated with differing media content. For example, assuming the height and width of a particular window can be individually resized to occupy between 5% and 100% of a screen, Table 1 indicates which of three different videos is presented depending on current window dimensions.

| Window Height Range | Window Width Range | Video |
|---|---|---|
| 5% to < 50% | 5% to 100% | Video 1 |

EXHIBIT 1
PAGE 115

EKO0001967

Application No. 14/835,857                              10                              Docket No.: ITU-017

| 50% to 100% | 5% to < 25% | Video 2 |
| 50% to 100% | 25% to 100% | Video 3 |

The cited prior art does not teach or suggest any such features.  Accordingly, Applicant respectfully submits that independent claim 1, as amended, is patentable.  Independent claim 11, as amended, includes similar limitations and is patentable at least for the same reasons discussed with respect to independent claim 1.  The dependent claims are patentable at least by virtue of their respective dependencies from independent claim 1 or 11.

**EXHIBIT 1**
**PAGE 116**

EKO0001968

## CONCLUSION

Applicant respectfully requests that the amendments above be entered, and submits that the claims are in condition for allowance. If the Examiner believes that telephonic communication would expedite the favorable prosecution of the present application, Applicant's attorney would welcome the opportunity to discuss any outstanding issues, and to work with the Examiner toward placing the application in condition for allowance.

Dated: November 6, 2018        Respectfully submitted,

By /Steven R. Argentieri/
Steven R. Argentieri
   Registration No.: 69,083
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
(617) 570-1063
Attorney for Applicant

**EXHIBIT 1**
**PAGE 117**

EKO0001969

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 34221377 |
| **Application Number:** | 14835857 |
| **International Application Number:** | |
| **Confirmation Number:** | 6941 |
| **Title of Invention:** | SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO |
| **First Named Inventor/Applicant Name:** | Yoni  Bloch |
| **Customer Number:** | 51414 |
| **Filer:** | Steven Robert Argentieri/Andrea Borden |
| **Filer Authorized By:** | Steven Robert Argentieri |
| **Attorney Docket Number:** | ITU-017 |
| **Receipt Date:** | 06-NOV-2018 |
| **Filing Date:** | 26-AUG-2015 |
| **Time Stamp:** | 13:03:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | ITU_017_Response.pdf | 112629  b31ae424417dc554a8ac022f3668e9fd912f b7ca | yes | 11 |

**EXHIBIT 1**
**PAGE 118**

EKO0001970

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 7 |
| Applicant Arguments/Remarks Made in an Amendment | 8 | 11 |

| Warnings: | | |
|---|---|---|
| Information: | | |
| **Total Files Size (in bytes):** | 112629 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**EXHIBIT 1**
**PAGE 119**

EKO0001971

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 51414 | 7590 | 02/25/2019 |
|---|---|---|

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 Northern Avenue
BOSTON, MA 02210

| EXAMINER |
|---|
| SMITH, STEPHEN R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

DATE MAILED: 02/25/2019

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 05/28/2019 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. <u>PROSECUTION ON THE MERITS IS CLOSED.</u> THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

**EXHIBIT 1
PAGE 120**

EKO0001973

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

51414        7590        02/25/2019

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 Northern Avenue
BOSTON, MA 02210

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 05/28/2019 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SMITH, STEPHEN R | 2484 | 386-230000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list
(1) The names of up to 3 patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee    ☐ Publication Fee (if required)    ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via EFS-Web    ☐ Enclosed check    ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020                OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



**EXHIBIT 1
PAGE 121**

EKO0001974

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

51414        7590        02/25/2019
GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 Northern Avenue
BOSTON, MA 02210

| EXAMINER |
|---|
| SMITH, STEPHEN R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

DATE MAILED: 02/25/2019

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

EKO0001975

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**EXHIBIT 1**
**PAGE 123**

| *Notice of Allowability* | Application No. 14/835,857 | | Applicant(s) Bloch et al. | |
|---|---|---|---|---|
| | Examiner STEPHEN R SMITH | | Art Unit 2484 | AIA Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>amendment filed 11/6/2018</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>1-5,7-15 and 17-20</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐All    b) ☐ Some    *c) ☐ None of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file areply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| /STEPHEN R SMITH/ Examiner, Art Unit 2484 | /THAI Q TRAN/ Supervisory Patent Examiner, Art Unit 2484 |
|---|---|

**EXHIBIT 1**
**PAGE 124**

EKO0001977

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | |
|---|---|---|---|
| 51414 | 7590 | 06/07/2019 | |

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| EXAMINER |
|---|
| SMITH, STEPHEN R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

DATE MAILED: 06/07/2019

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 09/09/2019 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. <u>PROSECUTION ON THE MERITS IS CLOSED.</u> THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

**EXHIBIT 1**
**PAGE 125**

EKO0002135

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

51414          7590          06/07/2019

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR ADAPTIVE AND RESPONSIVE VIDEO

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 09/09/2019 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SMITH, STEPHEN R | 2484 | 386-230000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐Issue Fee  ☐Publication Fee (if required)  ☐ Advance Order - # of Copies _____
4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*
☐ Electronic Payment via EFS-Web   ☐ Enclosed check   ☐ Non-electronic payment by credit card (Attach form PTO-2038)
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____      Date _____

Typed or printed name _____      Registration No. _____

Page 2 of 3
PTOL-85 Part B (08-18) Approved for use through 01/31/2020      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**EXHIBIT 1**
**PAGE 126**

EKO0002136

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/835,857 | 08/26/2015 | Yoni Bloch | ITU-017 | 6941 |

| | | EXAMINER |
|---|---|---|
| 51414        7590        06/07/2019 | | SMITH, STEPHEN R |

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| ART UNIT | PAPER NUMBER |
|---|---|
| 2484 | |

DATE MAILED: 06/07/2019

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

EKO0002137

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

### Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**EXHIBIT 1**
**PAGE 128**

| *Notice of Allowability* | Application No. 14/835,857 | Applicant(s) Bloch et al. | |
|---|---|---|---|
| | Examiner STEPHEN R SMITH | Art Unit 2484 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to claims filed11/6/2018 and RCE filed 3/18/2019.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on \_\_\_\_\_.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on \_\_\_\_\_; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1-5,7-15 and 17-20 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐All     b) ☐ Some     *c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. \_\_\_\_\_ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: \_\_\_\_\_ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file areply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date \_\_\_\_\_ .
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date \_\_\_\_\_ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material \_\_\_\_\_ .
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. \_\_\_\_\_ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other \_\_\_\_\_ .

| /STEPHEN R SMITH/ Examiner, Art Unit 2484 | /THAI Q TRAN/ Supervisory Patent Examiner, Art Unit 2484 |
|---|---|

**EXHIBIT 1**
**PAGE 129**

EKO0002139