UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                 Not Present

**Proceedings:**          (IN CHAMBERS) - CLAIM CONSTRUCTION ORDER

## I.  INTRODUCTION

This claim construction order construes disputed terms in U.S. Patent Nos. 10,460,765 ("the '765 Patent"), 8,660,220 ("the '220 Patent"), and 10,418,066 ("the '066 Patent"). The disputed terms arise in the context of patent infringement claims brought in two related cases. Quibi filed the first-filed action on March 9, 2020, Case No. 2250 ("Quibi ECF") No. 1, and its operative first amended complaint on May 12, 2020.  Quibi ECF No. 25.  Eko filed a separate action against Quibi on March 10, 2020, Case No. 2299 ("Eko ECF") No. 1, and its operative fifth amended complaint on January 28, 2021. Eko ECF No. 425. Quibi seeks a declaratory judgment of non-infringement of the '765 Patent and Eko alleges that Quibi's Turnstyle technology infringes the '765 Patent, the '220 Patent, and the '066 Patent.

The Court previously considered the patents as part of its Order denying Eko's motion for a preliminary injunction. *See* ECF No. 260 ("PI Order").[1] After the Court issued its PI Order, the parties proceeded with discovery and have now reached claim construction. As relevant here, the parties filed their Joint Claim Construction and Prehearing Statement on December 21, 2020. ECF No. 199. Eko filed its opening claim construction brief on February 4, 2021. ECF No. 278 ("Opening Br."). Quibi filed its responsive claim construction brief on February 18, 2021. ECF No. 280 ("Response"). Eko filed its reply claim construction brief on February 25, 2021. ECF No. 291 ("Reply"). Quibi filed its surreply claim construction brief on March 4, 2021. ECF No. 295 ("Surreply").

---

[1] All docket entry references in the remainder of this Order refer to the Quibi ECF.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:20-CV-02299-CAS (SKx) 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

The Court held a hearing on March 29, 2021. For the reasons stated herein, the Court adopts the constructions set forth below.

**II.    PATENT OVERVIEW**

**A. The '765 Patent**

The '765 Patent, issued on October 29, 2019, discloses "systems and methods for dynamically modifying a video state based on changes in user device properties."  See '765 Patent at 1:6-9.  Specifically, it "describes a 'smart video response' technique, in which video content (streaming or otherwise) can adapt in real-time, with targeted, customized, or other responsive content, to changes in properties associated with a user device, all without scaling, letterboxing, or other noted disadvantages of the prior art." Id. at 1:38-43.  Based on at least one device property (e.g., physical orientation, model, physical screen size, screen resolution, and window size), "a first state of the video is configured, and the video is presented according to the first state. During playback of the video, a change in one of the device properties is detected, and the video is seamlessly transitioned to a second state based on the change."  Id. at 1:49-53.

As relevant to this dispute, Claim 1 discloses:

1. A computer-implemented method comprising:
identifying one or more properties associated with a user device;
receiving **video from a first video presentation**;
receiving, **simultaneously** with the video from the first video presentation, **video from a second, different video presentation**;
configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;
presenting the video from the first video presentation according to the first state;
providing **a mapping** of video presentations **to media player window height ranges and media player window width ranges**; and
during playback of the video from the first video presentation:
determining that a media player window in which the video is playing **has been resized** to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
|----------|-------------------------|------|----------------|
|          | 2:20-CV-02250-CAS (SKx) |      |                |
| Title    | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
|          | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

determining that the second height is included in a particular one of the media player window height ranges;

determining that the second width is included in a particular one of the media player window width ranges;

evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range; and

in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change.

'765 Patent at 12:49-13:18 (emphasis added). Claims 2 through 9 depend from Claim 1. Claim 10 discloses a system for executing a method like that described in Claim 1. Claims 11 through 18 depend from Claim 10.

**B. The '220 Patent**

The '220 Patent, issued on December 3, 2013, is "directed to systems and methods for loading video content, and more particularly to systems and methods that load more than one video at the same time." See '220 Patent at 1:8-10. The invention sought to improve "the loading of videos" by providing a system to load more than one video at a time such that the video and audio would play seamlessly, and where multiple videos have multiple segments that are "standalone videos." Id. at 1:50-64. The disclosed system also sought to "provide systems and methods for loading videos that allow a user to create customized videos." Id. at 1:65-67.

As relevant here, Claim 1 discloses:

A system for facilitating the selective presentation of video content, wherein the video content is comprised of a **collection of segments**, the system comprising: a video loading manager for selectively determining a subset of the **collection of segments** to download, wherein the determination is based, at least in part, on a **download priority**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

'220 Patent at 8:4-10 (emphasis added). Claims 2 through 12 depend directly or indirectly from Claim 1. Claim 13 discloses a method for implementing a system like that disclosed in Claim 1. Claims 14 through 21 depend directly or indirectly from Claim 13.

### C. The '066 Patent

The '066 Patent, issued on September 17, 2019, discloses "A system for synchronizing audio and video of selectably presentable multimedia content includ[ing] a memory for storing a plurality of selectably presentable multimedia content segments." '066 Patent, Abstract.  "Each content segment defines a portion of one or more content paths and includes a decision period during which a user may select a subsequent content segment as the content segment is playing." Id.  The invention also includes "an assembly engine" for placing content segments into a content path, and a "configuration manager" to determine which audio and video file to play. Id.  An "audio engine" processes the audio file and a "video engine" synchronizes the video to the audio. Id. Regarding the "[s]electably presentable multimedia content," this "may include, for example, one or more separate multimedia content segments that are combined to create a continuous, seamless presentation such that there are no noticeable gaps, jumps, freezes, or other interruptions to video or audio playback between segments." Id. at 4:14-19.  To ensure "seamless transition[s]," the "audio and video streams are divided into individual fragments" that are "loaded and played at particular times to enforce synchronization" and "ensure[] that streams the remain synchronized while transitioning from one segment to another." '066 Patent at 5:22-36.

As relevant here, Claim 1 discloses:

A system comprising:
a memory for storing **a plurality of multimedia content segments**, each content segment defining a portion of **one or more content paths**, wherein a particular content segment comprises **a decision period** during which a subsequent content segment can be selected for playback as the particular content segment is playing;
**an assembly engine** for seamlessly assembling a subset of the content segments into a multimedia presentation comprising one of the content paths;
**a configuration manager** for determining an audio file and a video file to be played based on a selected subsequent content segment;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

**an audio engine** for: dividing the audio file into a plurality of audio samples, each audio sample comprising a timestamp indicating a time at which the audio sample should be played; and upon causing one of the audio samples to be played, updating a current playback time based on the timestamp of the played audio sample, wherein the current playback time comprises a time that is maintained separately from timestamps of the audio samples and identifies a most recently played audio sample; and
**a video engine** for synchronizing playback of the video file with playback of the audio file based on the current playback time.

'066 Patent at 12:21-48 (emphasis added). Claims 2 through 10 depend directly or indirectly from Claim 1. Claim 11 discloses a method for implementing the system disclosed in Claim 1.  Claims 12 through 20 depend directly or indirectly from Claim 11.

## III.    LEGAL STANDARD

Claim construction begins with an examination of the intrinsic evidence of record, including the patent claims, the specification, and, if in evidence, the prosecution history. Phillips v. AWH Corp., 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc). Courts first turn to "the words of the claims themselves, both asserted and nonasserted." Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1336 (Fed. Cir. 2006) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms" and "the context in which a term is used in the asserted claim can be highly instructive." Phillips, 415 F.3d at 1314. Claim language is generally interpreted consistently across different claims. Id.

"The claims, of course, do not stand alone," but instead "must be read in view of the specification, of which they are a part." Id. at 1315–17 (internal quotations omitted); see also Vitronics, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term"). It is improper, however, to read limitations from the written description into a claim. Tate Access Floors, Inc. v. Maxcess Techs. Inc., 222 F.3d 958, 966 (Fed. Cir. 2000) (citations omitted); see also Phillips, 415 F.3d at 1320 (quoting SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001)) (referring to reading a limitation from the written description into

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

the claims as "one of the cardinal sins of patent law"). Conversely, "an interpretation [which excludes a preferred embodiment] is rarely, if ever, correct and would require highly persuasive evidentiary support." <u>Vitronics</u>, 90 F.3d at 1583.

The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." <u>Vitronics</u>, 90 F.3d at 1582. "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." <u>Phillips</u>, 415 F.3d at 1317. Despite this, the prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." <u>Id.</u>

As a supplement to intrinsic evidence, courts also may also use extrinsic evidence, for example dictionaries, treatises, and expert or inventor testimony, to resolve ambiguities in the disputed claim terms. But "while extrinsic evidence can shed useful light on the relevant art … it is less significant than the intrinsic record in determining the legally operative meaning of claim language." <u>Phillips</u>, 415 F.3d at 1317-18 (internal citations omitted) (quoting <u>C.R. Bard, Inc. v. U.S. Surgical Corp.</u>, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical extrinsic evidence, such as dictionaries, encyclopedias, and technical treatises, may similarly be consulted to help determine the meaning of claim terms. <u>Phillips</u>, 415 F.3d 1322-23. But the Federal Circuit has cautioned that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." <u>Id.</u> at 1321.

When conducting claim construction, all evidence—both intrinsic and extrinsic—should be viewed from the perspective of a person of ordinary skill in the relevant art at the time the invention was filed. <u>Markman v. Westview Instruments Inc.</u>, 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), <u>aff'd</u>, 517 U.S. 370 (1996). When considering intrinsic and extrinsic evidence, "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." <u>Phillips</u>, 415 F.3d at 1324.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

To construe claim limitations, courts begin with a presumption that "claim terms are to be given their ordinary and customary meaning." Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1358 (Fed. Cir. 2017) (internal quotations omitted) (citing Aventis Pharm. Inc. v. Amino Chems. Ltd., 715 F.3d 1363, 1373 (Fed. Cir. 2013)). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." Phillips, 415 F.3d at 1321. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314.

The Federal Circuit recognizes two exceptions to the general rule that claim terms are given their ordinary and customary meaning as understood by a person of ordinary skill in the art in the context of the patent intrinsic record: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing Vitronics, 90 F.3d at 1580). To act as her own lexicographer, the patentee must "'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." Id. (quoting CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002)); Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1381 (Fed. Cir. 2008) (patentee must "clearly express an intent" to depart from the plain and ordinary meaning).

To effect a clear disavowal or disclaimer in the patent specification, the applicant must make clear "that the invention does not include a particular feature . . . even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." SciMed, 242 F.3d at 1341; see also Thorner, 669 F.3d at 1366. Similarly, during prosecution, a patent applicant can "make[ ] clear that the invention does not include a particular feature, or is clearly limited to a particular form of the invention." Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotations and citations omitted). If the plain language of the claim is to be narrowed, any disclaimer of a broader construction must be "clear and unmistakable." Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1329 (Fed. Cir. 2009); Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx)<br>2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL.<br>QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

## IV.    DISCUSSION

As an initial matter, the Court observes that both parties offer expert testimony on how to construe ordinary, non-technical language in the patents. The Court notes that, "'[e]xperts may be examined to explain terms of art, and the state of the art, at any given time,' but they cannot be used to prove 'the proper or legal construction of any instrument or writing.'" Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc., 574 U.S. 318, 332 (2015) (quoting Winans v. New York & Erie R. Co., 62 U.S. 88, 100 (1859)). Thus, where appropriate, the Court may reference expert testimony that meaningfully explains technical terms or the state of the art. The Court otherwise gives no weight to expert testimony that merely offers an opinion on the proper construction of a claim.

Pursuant to the Court's earlier order, the parties have raised three disputed claim limitations per patent.  The Court construes each disputed claim limitation below.

### A. "Video Presentation"

| Term | Patent/Claims[2] | Eko's Construction | Quibi's Construction |
|---|---|---|---|
| video presentation | '765 Patent, Claims 1, 10 | "visual media content displayed to a user on a user device and may have audio and/or other media associated with it" | "independent video presentation not comprising a region of a larger-dimensioned video" |

The parties' central dispute concerning this limitation is whether each claimed "video presentation" may be a portion or region of a single, larger video, *i.e.*, whether a single video may be comprised of multiple claimed "video presentations."

---

[2] Because the disputed terms appear throughout many of the claims, for ease of reference in this Order, the Court lists only the independent claims in which the disputed terms appear.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

Eko argues that plain and ordinary meaning applies, that is, "a video presentation simply refers to visual content displayed (or played, or presented) to a user on the user device." Opening Br. at 4. Eko argues that the neither the claim language, specification, nor prosecution history supports Quibi's "independent" video requirement. Id. at 4-5. Because the patent and file wrapper are "silent" regarding "how video from the two video presentations is transmitted or received," Eko concludes that "[t]hey *may* be separate files or streams, *or* they *may* be a part of a larger video that is itself never displayed to the user." Id. at 6 (emphasis added). Eko contends that Figures 4A-4D support the conclusion that "video presentation" includes "portions" of a larger video, but not the entire larger video. See id. (citing '765 Patent at 6:24-59 (regarding Figures 4A-4D, "[o]nly a portion of the video **400** is viewable by the user at any point in time during playback of the video"). Eko argues that Quibi's construction would read this embodiment out of the patent. Id. at 6. Eko also argues that, contrary to the Court's earlier ruling, dependent Claim 5 favors Eko's construction. Id. at 7. Eko contends that, according to Claim 5, "if the larger video is intended to be viewed as a whole by the user, then the result is not two different video presentations, but rather one video presentation and a region within that same video presentation." Id. Regarding the patent applicant's disclaimer concerning the "Kasai" reference, Eko argues that Kasai discloses a single video presentation "because the full zoomed-out video is meant to be viewed by a user." Id. at 9. In any event, Eko argues that, at worst, the proposed and later-rescinded amendment is ambiguous. Id.

Quibi argues that its proposed construction "is based verbatim on statements that Eko made regarding this term during prosecution." Response at 4. Quibi explains that, Claims 1 and 10 require receiving "a first video presentation" and a "second, different video presentation," terms that Eko added to overcome rejection based on Kasai by "assert[ing] that 'each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video.'" Id. at 5 (quoting Jacobs Decl., Ex. 1 at 1906-1907). Even if not viewed as a disavowal, Quibi argues that the prosecution history statements are nonetheless informative as to what the applicant understood the terms to mean. Id. at 7-8. Quibi maintains that its construction does not conflict with dependent Claim 5 or necessarily read out any embodiment. Id. at 8.

In reply, Eko argues that the specification makes clear that Figure 2 is two views of the same video, demonstrating that each video presentation can be a part of one larger

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | | |

video. Reply at 3 (citing '765 Patent at 5:17-21 ("referring to FIG. 2, a smartphone user watching a music video can seamlessly alternate between two distinct views of the video by switching between portrait and landscape modes"), 5:59-60, 6:24-59). Eko explains that, Figure 2 shows only the user view, whereas Figure 4 shows the zoomed-out view with a box drawn around what the user sees. Id. at 3. In support, Eko supplies "an illustrative music video frame," combining images from Figure 2 and adding additional images to create a new "music video" figure. Id. at 4.

In its surreply, Quibi asks the Court to reject Eko's new "illustrative music video frame," which was created by Eko's expert, because it improperly purports to illustrate "what is actually happening in the patent." Surreply at 2. Quibi explains that Figure 4 does not show the same thing as Figures 2 and 3, but rather introduces the "viewport" concept, which the patent explains is an "example" of a change to media playback that "can be" made "[i]n addition to changes in audio and video content, as described above [*i.e.*, in Figures 2 and 3]." '765 Patent at 6:14-26. Quibi contends that, "Rather than switching between two 'videos,' the viewport displays different regions of a single 'video' in response to a change in some device property. Surreply at 5; compare '765 Patent at 6:24-32 (viewport of Figure 4 setting a "viewable portion" of "the video **400**") with id. at 6:4-5 (resized window dimensions of Figure 3 determining "which of three different videos is presented").

In its PI Order, the Court rejected Eko's proposed claim scope as it relates to "video presentation" for three reasons: (1) construing each "video presentation" to be part of one stitched-together video was inconsistent with Eko's position during patent prosecution; (2) it was inconsistent with dependent Claim 5; and, (3) it was inconsistent with Eko's trade secret claim. Having reviewed the parties' detailed claim construction positions regarding this limitation, the Court affirms its prior interpretation.

First, as the Court explained in its PI Order, during prosecution of the '765 Patent, the applicant overcame an Office Action rejecting the application based on anticipation by Kasai; the applicant explained that Kasai "focuses on **a single video presentation**, and allow[s] a user to switch his viewing area among **regions** of that **single presentation**." See '765 Patent Prosecution History, ECF No. 280-2, Jacobs Decl., Ex. 1 at 64 (emphasis added). In contrast, Eko explained, the '765 Patent "seamlessly transition[s] to video from a **second**, **different presentation**." Id. at 64 (emphasis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

added); see also id. at 66-68, 70. Even if the Court declines to construe this averment as a clear disavowal, at minimum, the applicant's clear averment remains relevant to understanding claim scope. This is because, "Even where prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction" because "an applicant's repeated and consistent remarks during prosecution can define a claim term by demonstrating how the inventor understood the invention." See Personalized Media Communs., LLC v. Apple Inc., 952 F.3d 1336, 1340, 1345 (Fed. Cir. 2020).

The applicant's clear and repeated statements here explain that Kasai covers a single video presentation with the user switching between regions of that video presentation, whereas the '765 Patent covers two video presentations, "wherein each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video." Jacobs Decl., Ex. 1 at 82 (emphasis in original); see also id. at 87-88 (same); id. at 108 (retracting clarifying amendment). The Court finds unconvincing Eko's argument that the statements distinguishing Kasai during prosecution are immaterial because "Kasai relates to techniques that can be performed at a remote server to reduce bandwidth by allowing a user to view a whole scene in standard resolution, or zoom into a particular region in high definition," whereas the '765 Patent "relates to techniques that could be performed at the user device to seamlessly transition between two different video presentations." Opening Br. at 8. Notably, this is not how the applicant distinguished Kasai during prosecution. If each video could comprise a region of a larger-dimensioned video—at the user device in the '765 Patent and at a remote server in Kasai—the applicant could have explained this to the examiner, but did not.

Moreover, that Eko later withdrew this clarifying amendment does not change its relevance. Eko does not meaningfully address the authority on which the Court relied in the PI Order, or the authority on which Quibi relies in its briefing, to demonstrate that simply removing a proposed clarifying amendment cannot erase express representations. See, e.g., Greenliant Sys., Inc. v. Xicor LLC, 692 F.3d 1261, 1271 (Fed. Cir. 2012) ("But [applicant] is bound by the arguments that it made before the examiner and before the Board. It does not matter whether the examiner or the Board adopted a certain argument for allowance; the sole question is whether the argument was made."); Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 993-996 (Fed. Cir. 2003) ( "the fact that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

the prosecution shifted to a different focus does not blunt the impact of those remarks made to overcome the prior rejection"). The Federal Circuit has explained that, "The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent," and the Court finds that notice requirement pertinent here. See id. at 995 (quotations omitted).

Second, under the doctrine of claim differentiation, dependent Claim 5 supports the applicant's statement, that the first and second "video presentations" in the '765 Patent are independent videos presentations not each comprising a different region of one larger-dimensioned video. This is because Claim 5 discloses, "The method of claim 1, wherein configuring the first state of the video from the first video presentation comprises setting **a viewing region** of the video from the first video presentation to **a partial area of the video** from the first video presentation." '765 Patent at 13:33-37 (emphasis added).

To give meaning to the term "partial area of the video" in this dependent claim, the first video presentation and a second, different video presentation in Claim 1 cannot be construed to be partial areas of the same video. See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC., 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("limitations stated in dependent claims are not to be read into the independent claim from which they depend") (internal quotation marks omitted); see also 35 U.S.C. § 112(d) (a dependent claim must "specify a further limitation of the subject matter claimed"). Additionally, that the independent and dependent claims distinguish between a first and second video presentation on the one hand, *and* "a partial area of the video" on the other, suggests that "a first video presentation" and "second, different video presentation" (Claim 1), and "a viewing region of the video" (Claim 5), mean different things. See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

To overcome this finding, which the Court first made in its PI Order, Eko presents a new theory. Namely, referring to Figures 2, 3, and 4, Eko argues that, when a user may switch between cropped portions of a larger video presentation without seeing the video presentation in its entirety, those portions may be the first and second video presentations in Claim 1, whereas Claim 5 covers the scenario where a user may switch between viewing the entire video and a smaller portion thereof. Eko supports this theory with a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

new "music video" figure (created by its expert) that appears nowhere in the patent. Neither the claim language nor the specification support Eko's new theory.

The Court agrees with Quibi that nothing in the patent or its prosecution history suggests that a "video presentation" necessarily encompasses only what a user can see, and varies depending on a given video (*i.e.*, sometimes it includes an entire video and sometimes only portions of a video). The specification makes clear that Figures 2 and 3 on the one hand, and Figures 4A-4D on the other, do not depict the same thing. Figures 2 and 3 relate to different videos and Figures 4A-4D apply the "viewport" technique to different portions of one video.

| Figures 2 and 3 | Figures 4A-4D |
|---|---|
| As shown in FIG. 2, smartphone **200** is rotatable between a portrait mode A and a landscape mode B. . . . For instance, in one implementation, the rotation of the smartphone **200** from portrait mode A to landscape mode B results in a change in the state of the video presentation (in this example, *a change in the video and/or audio content*). Still referring to FIG. 2, a smartphone user watching a music video can seamlessly alternate between *two distinct views of the video* by switching between portrait and landscape modes. As depicted, when the smartphone **200** is positioned in portrait mode A, *video of the lead singer **210** is shown to the user*. Upon rotating the smartphone **200** to landscape mode B, the video changes to show the rest of the band **220**. . . . It should be appreciated that the present technique is not limited to two display modes (i.e., landscape and portrait). Rather, various combinations of audio, video, and/or other media content can be | In one example, a change in a property associated with a user device can result in a *change in the size and/or position of the viewport*. Referring to FIGS. 4A-4D, a video **400** of a family is provided to a user device **402**; however, *only a portion of the video **400** is viewable* by the user at any point in time during playback of the video **400**. The viewable portion is defined by the viewport **410**, which can be resized, rotated, or moved around about the video **400** during playback in response to change in a device property. In one implementation, the viewport is a mask layered over the video that includes a resizable transparent area allowing the user to see *a portion of the underlying video*. To reposition the viewport **410**, the mask can be moved with respect to the video **400** and/or the video **400** can be moved with respect to the mask. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

shown based on any rotation or positioning of a user device. For example, *a first video may be shown when in portrait mode*, *a second video* when changing to landscape mode by rotating the device counterclockwise, *a third video* when changing to landscape mode by rotating the device clockwise, *a fourth video* when tilting the device away from the user, *a fifth video* when tilting the device toward the user, *a sixth video* when laying the device flat, and so on.

'765 Patent at 4:64-65, 5:14-24, 5:35-46, 6:4-5 (emphasis added); see id. at 5:47-50 ("FIG. 3 depicts a concept similar" but "with a windowed media player **300** on a desktop computer;" depending on how a window is resized, one "*of three different videos* is presented") (emphasis added).

'765 Patent at 6:24-38 (emphasis added).



Fig. 2[3]



FIG. 4A

---

[3] Relatedly, during prosecution, to distinguish Kasai, the applicant relied on Figure 2 to show the "seamless[] transition to video from a second, different presentation." See Jacobs Decl., Ex. 1 at 64.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|----------|-----------------------------------------------------|------|----------------|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

Because these figures refer to two different things, the Court finds unpersuasive Eko's argument that Quibi's construction reads out of the patent the Figure 4 embodiments. These descriptions confirm the distinction between different video presentations (*e.g.*, the video changes from **210** to **220**; "three different videos"), and a portion of a video (*e.g.*, depicted through a viewport). In any event, as Quibi observes, if the claims cannot be read to cover the embodiments in Figures 4A-4D (*e.g.*, because those figures relate to the "configuring" step of Claim 1, or because they relate to Claim 5), "[t]he fact that claims do not cover certain embodiments disclosed in the patent is compelled when narrowing amendments are made in order to gain allowance over prior art." N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1345-46 (Fed. Cir. 2005).

Finally, as the Court explained in its PI order, to the extent that Eko's proposed construction is inconsistent with its trade secret claim, the Court rejects that proposed construction. See PI Order at 17.

For the reasons explained above, the Court construes "video presentation" to have the meaning explained by the applicant during prosecution of the '765 Patent: "each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video."

**B. "Resized"**

| Term | Patent/Claims | Eko's Construction | Quibi's Construction |
|------|---------------|--------------------|----------------------|
| Resized | '765 Patent, Claims 1, 10 | Plain and ordinary meaning, which is "changed in size" | "changed in size by an input device (not physically rotated)" |

Eko argues that its proposed construction is consistent with the claims and specification, whereas Quibi's construction reads out preferred embodiments. Opening Br. at 10. Eko explains that, "Claims 1 and 10 both expressly state that a media player window 'has been resized' when there is a 'change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width.'" Id. (quoting '765 Patent, Claims 1 & 10). Eko also relies on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

specification, which explains that, "In describing prior art systems, the patent notes that, upon rotation of a smartphone displaying media such as a video, the video is resized 'to fit the current screen properties.'" Id. at 11 (quoting '765 Patent at 4:64-5:5); see also '765 Patent at 8:50-56 (parallel tracks of a video may be included, wherein "each parallel track is mapped to one or more device properties, such as screen size, window size, or device orientation"); id. at 7:2-13 ("the device is rotated . . . the viewport **510b** is modified in size"). Based on the specification, Eko contends that a person of ordinary skill in the art would have understood that "resizing can be done by rotation *or* by using an input device." Opening Br. at 13.

Quibi asks the Court to adopt its observation from the PI Order, that "'it appears Quibi does not practice the claimed resizing of the media player window . . . . Quibi's application changes from landscape to portrait orientation based on device rotation (not window resizing).'" Response at 9 (quoting PI Order at 20). In support of its proposed construction, Quibi relies on the specification, which explains that, "Fig. 2 depicts a video state change responsive to a rotation of a user device," whereas "Fig. 3 depicts a video state change responsive to a window resizing." '765 patent at 2:26-29. With respect to Figure 3, Quibi notes that the specification explains that, "In this instance, rather than physically rotating or repositioning the user device, the user changes the window size or state (e.g., minimized, maximized, thumbnailed) of the media player **300** using an input device (e.g., mouse, keyboard, touchscreen, etc.)." '765 Patent at 5:50-54. Quibi explains that its proposed construction "tracks this disclosure." Response at 11. Quibi notes that the applicant relied on Figure 3 depicting window resizing (not Figure 2 depicting rotation) to overcome rejections. Id. Quibi also rejects Eko's reading-out-the-preferred-embodiments argument because, Quibi explains, the patent "has no preferred embodiments," just embodiments. Id. Quibi asks the Court to reject Eko's reliance on "resizing" with respect to an item on a phone screen (as opposed to the claimed media player window), and notes that rotate and resize do not share the same definition. Id. at 11-12.

In reply, Eko explains that, "[u]nder the express language of the claim, 'resized' requires only that the height and width 'change' from a first value to a second value, where the first and second values are different." Reply at 8. Eko reiterates that, the "resizing through rotation is described in the specification and shown in Figure 2." Id. at 9. Eko argues that Quibi's implied disavowal arguments do not meet the standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                   **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

required for excluding something from a claim term, especially where, in Eko's view, the specification simply uses "resize" and "rotate" as alternatives; and the applicant relied on Figure 3 as "illustrat[ive] only." Id. at 10.

In its surreply, Quibi argues that, "Eko's claim language is not broader than Figure 3 and not broad enough to include Figure 2." Surreply at 5. Quibi contends that "resized" must be tethered to Figure 3 because that figure explains "window resizing." Id. at 5-6. In support, Quibi argues that, "Figure 3 is the only description of resizing a media player window, describes exactly what this process entails, and contrasts it with Figure 2's device rotation." Id. at 6.

On the fully developed claim construction record before the Court, the Court agrees with Eko, that "resized" means simply "a change in size." Although the Court reached a contrary tentative conclusion in its PI Order, as Eko observes, a claim construction adopted during preliminary injunction proceedings is "tentative and is not binding on the district court in subsequent proceedings." Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp., 75 F. App'x 765, 774 (Fed. Cir. 2003) (referencing tentative claim construction adopted on an appeal from a preliminary injunction order) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).

The specification supports the conclusion that "resized" should not be limited to a change in size that occurs only from an input device, as Quibi suggests. The specification notes that, typically, when "a mobile device, such as a smartphone or tablet, is displaying a video, photograph, webpage, or the like, rotating the device between portrait and landscape results in a rotation of the item displayed on the device screen in order to maintain the orientation of the item while, in some cases, simultaneously resizing the item to fit to the current screen proportions. For example, *an image that occupies the entire device screen in landscape mode will retain its orientation when the device is rotated to portrait mode, but is resized so that the width of the image fits within the narrower width of the portrait screen*, resulting in mattes displayed above and below the image." '765 Patent at 4:66-5:10 (emphasis added). And taking this concept one step further, the present invention "provides further enhancements to the user's media viewing experience beyond simple rotation or resizing of images or videos," such as changing between different videos and different audio tracks. Id. at 5:11-34; see also, e.g., id. at 7:2-13 ("the device is rotated . . . the viewport **510b** is modified in size").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

The description of Figure 3 is not as limiting as Quibi suggests. Instead, it refers to use of the claimed invention on devices other than tablets or smartphones. "FIG. 3 depicts a concept similar to that shown in FIG. 2, with a windowed media player **300** on a desktop computer, laptop, or other user device supporting windowed applications. In this instance, *rather than physically rotating or repositioning the user device*, *the user changes the window size* or state (e.g., minimized, maximized, thumbnailed) of the media player **300** using an input device (e.g., mouse, keyboard, touchscreen, etc.)." '765 Patent at 5:47-54 (emphasis added). When read in its entirety, this description is not distinguishing between rotating and resizing as two distinct concepts, but rather distinguishes between how resizing occurs, *i.e.*, by rotating on a handheld device and by user input on a desktop or laptop computer.

Accordingly, for the reasons stated above, the Court construes "resized" to have its plain and ordinary meaning, which is "changed in size."

### C. "Media Player Window"

| Term | Patent/Claims | Eko's Construction | Quibi's Construction |
|---|---|---|---|
| media player window | '765 Patent, Claims 1, 10 | Plain and ordinary meaning, which is "a window of an application running on a device, such as a computer, smartphone, or tablet, that is capable of presenting (or playing) video content" | "a user-resizable rectangular portion of a screen in which media content is displayed" |

Eko seeks plain and ordinary meaning construction, which it contends "is consistent with how the term is used in the claims and specification." Opening Br. at 14. For example, Eko notes that the specification teaches that, "videos can be presented to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|----------|------------------------------------------------------|------|----------------|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

user using 'an application on a user device, such as a media player on a smartphone or tablet.'" Id. (quoting '765 Patent at 7:48-50). And, Eko notes, the patent "also refers to 'window size' as one of the properties of 'an application on a user device, such as a media player on a smartphone or tablet,' and includes examples of window size as properties in conjunction with orientation of handheld devices." Id. (citing '765 Patent at 7:48-55, 8:54-59).

Quibi notes that, "The dispute over 'media player window' is closely related to the 'resized' dispute because the terms appear in the same limitation: 'determining that a media player window in which the video is playing has been resized . . . .'" Response at 12 (quoting '765 patent, Claim 1). In support of its construction, Quibi notes that Figure 2 includes a long list of features of a smartphone **200**, but does not include a "window" as one such feature. Id. at 13. In contrast, Quibi relies on the use of "windowed applications" and "windowed media player **300**" in connection with Figure 3, which relates to using the invention on, *e.g.*, a desktop or laptop computer. Based on this distinction, Quibi argues that the "media player window" must be resizable by a user. Id. at 14.

In reply, Eko argues that Quibi's construction improperly limits the claim scope to a single embodiment, which would improperly limit the invention to desktop displays only. Reply at 12. Eko reiterates that, the specification supports its construction where Figure 6 "depicts one implementation of a method for providing adaptive and responsive video," and at "STEP 602, an application on a user device, *such as a media player on a smartphone or tablet*, identifies one or more properties associated with the device." Id. at 13 (quoting '765 Patent at 7:46-51). Eko notes further that the patent distinguishes between a "windowed media player" (a "windowed application" on a desktop device) and a "media player window" (a property of an application on a device such as a smartphone). Id. at 14 (citing '765 Patent at 4:55-63, 5:47-50, 7:46-61).

The Court agrees that the construction of this limitation is closely related to "resized," as construed above. Consistent with that construction, and reading the claims in light of the specification, the Court agrees with Eko that a "media player window" does not require user resizing. First, the specification explains that a user device such as a smartphone or tablet *includes* an application "such as a media player." '765 Patent at 7:48-51; see also id. at 4:65-5:2 ("In a typical mode of operation, when a mobile device, such as a smartphone or tablet, is displaying a video [or other item] . . . rotating the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

device between portrait and landscape results in a rotation of the item displayed on the device"). Second, the specification distinguishes the "windowed media player" in Figure 3. See id. at 5:48-50 (the "windowed media player" is found "on a desktop computer, laptop, or other user device supporting windowed applications"). Nothing about this embodiment suggests that the claimed "media player window" is limited to the properties of a "windowed media player," *i.e.*, a player running in a Windows-based application. The Court declines to limit the claims based on the embodiment depicted in Figure 3. See Phillips, 415 F.3d at 1320.

Accordingly, consistent with its construction of "resized" above, the Court construes "media player window" as having its plain and ordinary meaning, that is, "a generally rectangular area of an application in which media content is displayed."

### D. "Range"

| Term | Patent/Claims | Eko's Construction | Quibi's Construction |
| --- | --- | --- | --- |
| range | '765 Patent, Claims 1, 10 | Plain and ordinary meaning, which is "a set of possible values" | "plurality of possible values between upper and lower limits" |

Eko seeks plain and ordinary meaning construction, explaining that "range" "appears in the phrases 'media player window height ranges' and 'media player window width ranges,'" which Eko contends "simply refer[] to the set of possible values for the height and width of the media player window." Opening Br. at 15. Eko contends that "range" must mean more than "a plurality of possible values between two limits," because the patent discloses device properties other than window size (*e.g.*, model, screen size). Id. (citing '765 Patent at Claim 2 (properties selected from the group consisting of physical orientation, model, physical screen size, screen resolution, and window size), id. at 1:46-48, 4:39-64, 11:7-10). Eko argues that, "Many of these properties can be expressed as, or mapped to, ranges of window heights or widths that are not necessarily specified as a plurality of possible values between two limits." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

Quibi argues that "range" requires a plurality of possible values because "[a] fixed value, by definition, has only a single value, not a plurality of possible values." Response at 15 (citing PI Order at 20 ("Quibi's application changes from landscape to portrait orientation . . . based on fixed values (not ranges).")). Quibi argues this is correct because the specification "expressly contrasts 'fixed dimensions' with 'ranges.'" Id. at 15-16 (citing '765 patent, 5:65-6:1 ("In some implementations, instead of limiting the windowed media player **250** to fixed dimensions, ranges for window heights and/or widths can be defined and associated with differing media content."); id. at 5:57-58 (a "fixed window dimension" is a "defined height and width")). Quibi argues that the claim language also supports this construction, because "Claims 1 and 10 both recite 'determining that the second [height / width] is included in a particular one of the media player window [height / width] ranges," and "[t]he words 'included in' indicate that the ranges comprise multiple values." Id. at 16. Further, Quibi argues that Eko's reliance on Claim 2 is misplaced, because "The 'properties' recited in claim 2 are not used in claim 1's steps involving 'ranges'; they are used in an earlier step of 'configuring a first state of the video.'" Id. at 17.

In reply, Eko argues that "range" should not be limited to the examples shown in Table 1 and Figure 3 of the patent. Reply at 14. Eko also argues that Quibi's construction would include values that are not possible (e.g., resulting in fractions of pixels). Id. at 15. Eko contends that Quibi's construction should be rejected for the additional reason that it "reads out claim 6 because it precludes window size (e.g., window width and height) from being associated with an initial (and single) value or a (single) value to which those properties changed." Id. at 16 (citing '765 Patent at Claim 6 ("wherein the video from the first video presentation is associated with an initial value of the one of the properties, and wherein the video from the second video presentation is associated with a value to which the one of the properties changed").

In surreply, Quibi notes that "Eko does not contest that the specification expressly contrasts 'fixed dimensions' with 'ranges' and that every range in Table 1 is a plurality of values." Surreply at 10. Further, Quibi explains that, "Eko's argument that Quibi's construction 'reads out claim 6' is based on Eko's misreading of both claim 1 and claim 6." Id. "Claim 1 says that the mapping is used upon 'determining that a media player window in which the video is playing has been resized." Id. at 10-11. Eko did not respond to the contention that, "The device 'properties' are used in a different step of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                   **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) | Date | April 12, 2021 |
| | 2:20-CV-02250-CAS (SKx) | | |
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. | | |
| | QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

'configuring a first state of the video.'" Id. at 11. And Claim 6 "merely requires that some device property change from an initial value to another value and that two videos be associated with those values. It recites no limitation on the number of possible initial and changed values." Id. Moreover, Quibi argues that, because Table 1 reflects percentages of screen size, the ranges must be bounded by limits (*e.g.*, a window dimension could not be larger than 100% of screen size). Id.

In its PI Order, the Court noted that "ranges" exclude the concept of "fixed values" (*e.g.*, a landscape aspect ratio of 16:9 does not express a range). PI Order at 20. Having reviewed the parties' detailed claim construction positions regarding this limitation, the Court affirms its prior interpretation.

The specification distinguishes between a fixed dimension and a range. That is, "Different media content can be associated with each *fixed window dimension* (*defined height and width*)." '765 Patent at 5:57-58 (emphasis added). And, "In some implementations, instead of limiting the windowed media player **250** to fixed dimensions, *ranges for window heights and/or widths can be defined* and associated with differing media content. For example, assuming the height and width of a particular window can be individually resized to occupy between 5% and 100% of a screen, Table 1 indicates which of three different videos is presented depending on current window dimensions."

## TABLE 1

| Window Height Range | Window Width Range | Video |
|---|---|---|
| 5% to <50% | 5% to 100% | Video 1 |
| 50% to 100% | 5% to <25% | Video 2 |
| 50% to 100% | 25% to 100% | Video 3 |

Id. at 5:65-6:5.

Based on these definitions and illustrations, "range" in Claims 1 and 10 cannot mean "fixed dimension." Eko does not meaningfully dispute that a "range" must be bounded by limits. Because devices have limited screen size, the Court agrees that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

ranges must necessarily fall within upper and lower limits, such as the limits illustrated in Table 1.

The Court further agrees with Quibi that construing "range" to exclude fixed dimensions does not read out Claim 6. The "initial value" in Claim 6 refers to "configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device." See '765 Patent at Claims 1, 6. After configuring and presenting the video, only then does the invention "provid[e] a mapping of video presentations to media player window height ranges and media player window width ranges," and upon determining that the media player has changed size during playback, determines a new "range" for the new height and width, and seamlessly changes the video presentation accordingly. See id.

Accordingly, for the reasons stated above, the Court construes "range" as a "plurality of possible values between upper and lower limits."

### E. "Segment" and "Collection of Segments"

| Terms | Patent/Claims | Eko's Construction | Quibi's Construction |
|---|---|---|---|
| segment | '220 Patent Claims 1, 13 '066 Patent Claims 1, 11 | Plain and ordinary meaning, which is "a portion of video and/or audio content" | "standalone video" |
| collection of segments | '220 Patent Claims 1, 13 | Plain and ordinary meaning, which is "a collection of portions of video and/or audio content" | "a first segment of a video that is played and one or more subsequent segments" |

The parties dispute whether each "segment" is a portion of a video or an independent, *i.e.*, standalone, video. Eko argues that plain and ordinary meaning dictates that "segment" is a portion of a video. Opening Br. at 17. Eko explains that, "Claim 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx)<br>2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL.<br>QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

contemplates, for example, that a subset of the collection of segments can be downloaded according to a download priority," and in this context, the system "facilitate[es] the selective presentation of video content, and that video content is comprised of a collection of segments." Id. at 17-18; see '220 Patent at Abstract ("The interactive video player in operation creates in real-time a custom video that includes a plurality of video segments."); see also id. at 4:29-32 ("a first segment can be the first ten seconds of a video"). Although the patent states that, "a plurality of videos is loaded, each having a plurality of segments that are a standalone videos," '220 Patent at 1:61-64, Eko argues that "standalone videos" is meant to modify "plurality of segments," not just "segments." Opening Br. at 19. Eko concludes that, "'[s]tandalone videos' thus refers to the plurality of segments that make up each video, and does not mean that each segment must be a standalone video." Id.

Quibi notes that, at the preliminary injunction stage, the Court found Quibi's video was not comprised of Eko's "segments," and Quibi argues for a construction based on "how the '220 patent, incorporated by reference in the '066 patent, characterizes the word 'segment.'" Response at 18. Quibi observes that, "The Court took note of this language, explaining that Eko's 'invention sought to improve "the loading of videos" by providing a system . . . where multiple videos have multiple segments that are "standalone videos."'" Response at 18 (quoting PI Order at 10). Quibi argues that the Figures in the specification further support this construction. Id. at 19.

As to "collection of segments," the parties dispute whether a specific sequence is required. Eko argues that "collection" does not require a particular order because "the claims themselves require that the determination of any subset or order be set by a different claim limitation," e.g., Claim 1 of the '220 Patent recites that "a subset of the collection of segments" is selectively determined to be downloaded "based, at least in part, on a download priority." Opening Br. at 20-21; see also '220 Patent at Claim 2 (requiring segments to be organized by "decision points").

Quibi argues that the patent demonstrates that a "collection of segments" is "not a loose, unorganized group, but rather segments appended onto one another in sequential fashion." Response at 21. Quibi observes that Eko failed to address "the Court's conclusion that 'a collection of segments' does not exist where the 'video comprises a single download or stream.'" Id. (quoting PI Order at 21-22). Quibi argues further that construing "collection of segments" to begin with a first segment cures a later ambiguity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

problem in dependent claims that refer to "the first segment," even where no proper antecedent basis has been provided. Id. at 22. At the hearing, Quibi clarified that it does not believe "segment" is akin to an "independent movie" (*i.e.*, the claimed invention does not give the user a choice between watching, *e.g.*, The Sound of Music or Star Wars).

In its PI Order, in the context of analyzing likelihood of success of Eko's '220 Patent infringement claim, the Court rejected the contention that a single, stitched-together video could comprise the claimed "collection of segments." PI Order at 22. Now in the context of claim construction, having reviewed the parties' detailed claim construction positions regarding this limitation, which subsumes the additional disputed limitation "segment," in light of the claim language and the specification, the Court concludes that a "collection of segments" means multiple, standalone videos.

The '220 Patent is entitled "systems and methods for loading more than one video content at a time." The purpose of this invention is to give the user a choose-your-own-adventure video-watching experience. This is accomplished by an "interactive video player" that "creates in real-time a custom video that includes a plurality of video segments." See '220 Patent at Abstract. The invention accomplishes this by breaking video content into the claimed "segments," which together form a "collection of segments;" the system queues segments to download and play based on decisions made by the user. The patent depicts this process as follows.



See '220 Patent at Fig. 3 ("illustrating the differences between a regular video and a video of the present invention").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|----------|------------------------------------------------|------|----------------|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

The patent distinguishes this invention from "[c]urrent methods [that] load the entire video and just one video is provided." Id. at 1:41-43. The "present invention" is different because it "provide[s] systems and methods for loading more than one video at a time" and "provide[s] systems and methods for loading videos where *a plurality of videos is loaded, each having a plurality of segments that are standalone videos*." Id. at 1:52-53, 1:61-64 (emphasis added). The specification reiterates, "With the system of the present invention, a plurality of videos are loaded, *each having a plurality of segments that are a standalone video*. In one embodiment, a user downloads various segments and these are then selected as segments to be loaded. A custom download is created." Id. at 3:34-38 (emphasis added).

The specification makes clear that segments are "standalone videos." See id. at 1:41-43 ("segments that are standalone videos"). The Court disagrees with Eko's proposed construction because it would make the above-quoted portions of the specification grammatically incorrect; "standalone video(s)" corresponds with "segments" in these passages, the term does not correspond with "plurality" (*i.e.*, if standalone video referred to a plurality of segments, the specification would say "a plurality of segments that *is* a standalone video"). This construction stays true to the claim language, specification, and purpose of the invention.

The Court agrees with Quibi that a "collection of segments" must begin with a "first segment" and be followed by one or more subsequent segments. This is consistent with the claim language and the specification, including Figure 3. Although the choose-your-own-adventure style of decision points that determine download priority makes a non-linear path of segments possible, this construction reflects that because no set order is required for the subsequent segments. See, e.g., '220 Patent at Fig. 2 & 4:17-20 ("After pressing play the system plays a first segment, collect first user selection, then plays the second segment, collect the second user selection and plays the last segment."); id. at Fig. 3 & 4:42-47 ("In FIG. 3, the regular video is represented as a played video, downloaded video and remaining video to be downloaded. With the video of the present invention, a downloaded video from a played video is the first segment. A decision point exists after the first segment where it branches into two second segments with remaining video to download.").

Further, this construction alleviates the potential vagueness problem created by lack of antecedent basis for "the first segment" in dependent Claim 10. See, e.g., Slimfold

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx)<br>2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|----------|----------------------------------------------------|------|----------------|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL.<br>QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

<u>Mfg. Co. v. Kinkead Indus., Inc.</u>, 810 F.2d 1113, 1116 (Fed. Cir. 1987) (lack of antecedent basis may render claim invalid under 35 U.S.C. § 112). Dependent Claim 10 discloses, "The system of claim 7 further comprising a pre-loader module for starting downloading prior to the playing of *the* first segment." '220 Patent at Claim 10.

For the reasons explained above, the Court construes "segment" to mean "a standalone video," and "collection of segments" means "a first segment that is played and one or more subsequent segments."[4] That the applicant did not define "standalone video" in the specification—even though the term is used twice—does not make the term vague or confusing, but rather suggests that the applicant intended the term to carry its plain and ordinary meaning.

**F. "Content Paths"**

| Term | Patent/Claims | Eko's Construction | Quibi's Construction |
|------|---------------|--------------------|----------------------|
| content paths | '066 Patent<br>Claims 1, 11 | "two or more multimedia content segments" | "selectable sequences of two or more multimedia content segments" |

The parties dispute whether "content paths," *i.e.*, "two or more multimedia content segments," must be "selectable sequences." Eko argues that "selectable sequence" should not be added because Claim 1 already encompasses this concept. Opening Br. at 25 (citing '220 Patent, Claim 1 ("multimedia content segments, each content segment defining a portion of one or more content paths, wherein a particular content segment comprises a decision period during which a subsequent content segment can be selected for playback"). Eko also argues that adding selectable sequence adds ambiguity to the term by possibly requiring each content path to have *three* or more segments. <u>Id.</u> at 25.

In response, Quibi argues that, "[a] 'content path' is not just any two disconnected segments. Rather, as the word 'path' conveys, it is two (or more) segments in a

---

[4] At the hearing the parties agreed that, to comport with the purpose of the invention, "collection of segments" requires no set order for the subsequent segments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

sequence." Response at 23. Quibi argues that the specification supports this construction: "a content path is formed through a repeatable process in which a user 'select[s] the next content segment to view as the current segment is playing' and then the 'selected segment is seamlessly appended [] onto the currently playing content segment.'" Id. (quoting '066 Patent at 2:55-61). Quibi argues that this construction serves the purpose of the patent, "which is to provide 'systems and methods to synchronize audio for selectably presentable media content segments.'" Id. at 23-24 (quoting '066 Patent at 1:42-46).

The '066 Patent provides "[a] system for synchronizing audio and video of selectably presentable multimedia content [and] includes a memory for storing a plurality of selectably presentable multimedia content segments." '066 Patent at Abstract. "Each content segment defines a portion of one or more content paths and includes a decision period during which a user may select a subsequent content segment as the content segment is playing." Id. The invention recognized a "need for systems and methods to synchronize audio for selectably presentable media content segments, such that a synchronized, seamless transition in audio and video occurs between the end of one segment and the start of another." Id. at 1:42-46. Thus, in the invention, "Each content segment defines a portion of content paths and includes a decision period during which a user may select a subsequent content segment as the content segment is playing." Id. at 1:53-56. "Two or more combined segments form a seamless multimedia content path and there may be multiple paths that a viewer can take to experience a complete, start-to-finish, seamless presentation." Id. at 4:27-29. "Ultimately, the viewer arrives at a final segment, having traversed a complete multimedia content path." Id. at 5:3-5.

In its Tentative Claim Construction Order, the Court observed that no apparent material dispute existed between the parties' positions with respect to "content paths." Eko argued that the words "selectable" or "sequence" should not be added to the construction, in part because Eko observed that Claim 1 "already includes the concept of allowing a selection," thereby making "selectable sequence" "redundant and unnecessary." Opening Br. at 25. Quibi likewise observed that the word "path" already conveys, "two (or more) segments in a sequence." Response at 23. At the hearing, Quibi explained that a material dispute does exist as to this term. Specifically, Quibi argued that "content paths" should not be construed to encompass two *parallel* segments but rather, should be limited to segments that can be selected one after the other. Eko responded that "content paths" are *any* two or more combined segments that need not be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx)<br>2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL.<br>QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

"selectable," as illustrated in Figure 10 of the '220 Patent, which is incorporated by reference in the '066 Patent and shows that a user can go back and forth between parallel video tracks.

The specification makes clear that the purpose of this invention is user choice, offering a series of decision points seeking user selections that will determine the sequence of audio and video presented. See, e.g., '066 Patent at 4:34-38 ("[t]he segment that is played after a currently playing segment is determined based on the option selected"). Because the claim language, including the word "path," already implies a selectable sequence, the Court sees no need to add these words to its construction. See id., Claim 1 ("multimedia content segments, each content segment defining a portion of one or more content paths, wherein a particular content segment comprises a decision period during which a subsequent content segment can be selected for playback").

The '220 Patent does not change this analysis. The '066 Patent incorporates by reference the '220 Patent. See '066 Patent at 6:6-11. The Court observes that Figure 10 of the '220 Patent does not define a "content path." In any event, to the extent Figure 10 is useful, like the relevant claim language in the '066 Patent, Figure 10 relates to a user selecting a sequence of video segments. The '220 Patent provides a system for loading more than one video at a time. Specifically, the system "downloads a video and allows for the creation of multiple segments of video that can be linked together via branches." '220 Patent at 4:25-27. To facilitate user choice, the system "provides a jump feature" whereby "[i]n some videos[,] the user can jump to a different part of the tree [branches]." Id. at 7:11-13. For example, "if the character dies or the user wishes to skip a part, then the loader **12** downloads the destination part in order to prevent buffering on such a jump." Id. at 7:13-16. As depicted in Figure 10, "in some videos the user can move back and forth between two or more branches." Id. at 7:21-22. "Back and forth movement is achieved in the same manner. *The options always appear on the screen and the two videos are played simultaneously, and the loader **12** needs to download both parallel segments.*" Id. at 7:25-28 (emphasis added). Further, "[w]ith the present invention, the interactive nature of a video impacts the video's content and the user can control the video's path." Id. at 7:41-43.

Figure 10 depicts the claimed system with parallel directional branching options, adding to the linear directional branching options noted in Figure 3 above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                      **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) <br> 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|----------|------|------|------|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. <br> QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |



**FIG. 10**

The description of Figure 10 and Figure 10 itself make clear that, like the '220 and '066 Patents overall, Figure 10 involves selectable segments driven by user choice. In this example, the decision points allow a user to move either to another point on the same branch or to another point on a different (parallel) branch. The branching concept remains the same: movement along a content path of segments is controlled by a user selecting from among available options, with certain choices changing the branching path (*e.g.*, moving down to a parallel branch instead of along a linear branch). Nothing in the '220 Patent suggests that a "content path" in the '066 Patent is formed from *any* two content segments without regard to a set of predetermined decision points and user selections (or in the case of no user selection, a specific default content path). See '066 Patent at 4:58-61 (user has "an amount of time to make a selection (i.e., a decision period), after which, if no selection is made, a default segment will be automatically selected").

Accordingly, for the reasons stated above, the Court construes "content path" to mean "two or more multimedia content segments." In connection with this construction, because selectable sequence is implied in the remaining claim language, neither party may later argue in this litigation that Claim 1 does *not* disclose a sequence of content segments forming one or more content paths.[5]

---

[5] Specifically, Claim 1 discloses, "a memory for storing a plurality of multimedia content segments, each content segment defining a portion of one or more content paths, wherein a particular content segment comprises a decision period during which a subsequent content segment can be selected for playback as the particular content segment is playing." '066 Patent at Claim 1. In other words, a content path is made up of content

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-CV-02299-CAS (SKx) 2:20-CV-02250-CAS (SKx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | JBF INTERLUDE 2009 LTD, ET AL. v. QUIBI HOLDINGS LLC, ET AL. QUIBI HOLDINGS LLC, ET AL. v. INTERLUDE U.S., INC., ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court construes the disputed claim limitations as follows:

"video presentation" means "each of the first video presentation and the second video presentation is an independent video presentation not comprising a region of a larger-dimensioned video"

"resized" means "changed in size"

"media player window" means "a generally rectangular area of an application in which media content is displayed"

"range" means a "plurality of possible values between upper and lower limits"

"segment" means "a standalone video," and "collection of segments" means "a first segment that is played and one or more subsequent segments"

"content path" means "two or more multimedia content segments"

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
| Initials of Preparer | | | CMJ | |

---

segments, and each content segment gives the user a selection choice that determines which content segment is played next; the content path is not made up of an arbitrary plurality of segments.